**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS, | |
| Plaintiff, | |
| v.. | Case No. 4:23-cv-206-P |
| U.S. DEPARTMENT OF EDUCATION, *et al.*, | |
| Defendants. | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS OR TRANSFER**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND......................................................................................................... 2

   I.   Statutory And Regulatory Background...................................................... 2

   II.  The 2022 Rule ............................................................................................ 3

   III. This Lawsuit............................................................................................... 4

LEGAL STANDARDS ................................................................................................ 5

ARGUMENT ............................................................................................................... 6

   I.   The Northern District of Texas is an improper venue for this case.................. 6

      A.   No party resides in this District................................................... 7

      B.   No substantial part of the events and omissions giving rise to CCST's claims occurred in this district. ........................................ 9

      C.   Dismissal is appropriate............................................................... 15

   II.  In the alternative, the Court should transfer this case to a proper venue. .... 16

CONCLUSION........................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Am. Newspaper Pubs. Ass'ns v. U.S. Postal Serv.,*
 789 F.2d 1090, 1092 (5th Cir. 1986) ................................................................. 8, 14

*Ambraco, Inc. v. Bossclip B.V.,*
 570 F.3d 233, 238 (5th Cir. 2009) ........................................................................ 8

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,*
 571 U.S. 49, 56 (2013) ............................................................................................ 7

*Chapman v. Dell, Inc.,*
 No. 09-cv-7, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009)........................ 16

*Checki v. Webb,*
 785 F.2d 534, 538 (5th Cir. 1986) ....................................................................... 10

*Daniel v. Am. Bd. of Emergency Med.,*
 428 F.3d 408, 432–33 (2d Cir. 2005) ................................................................... 11

*DataTreasury Corp. v. First Data Corp.,*
 243 F. Supp. 2d 591, 593–94 & n.2 (N.D. Tex. 2003)............................................ 6

*Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen,*
 387 U.S. 556, 559 (1967) ........................................................................................ 8

*Dep't of Homeland Sec. v. New York,*
 140 S. Ct. 599, 600–01 (2020) ............................................................................. 18

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.,*
 618 F.3d 1153, 1166 (10th Cir. 2010) .............................................................. 9, 10

*ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC,*
 No. 15-cv-77, 2015 WL 1638179, at *4 (E.D. La. Apr. 13, 2015) ........................ 13

*Experian Info. Sols., Inc. v. FTC,*
 No. 3:00-cv-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) ............... 10

*Fla. Nursing Home Ass'n v. Page,*
 616 F.2d 1355, 1360 (5th Cir. 1980) ..................................................................... 7

*Garcia v. Acosta,*
 393 F. Supp. 3d 93, 109 (D.D.C. 2019)......................................................... 7, 9, 10

*Gray Cas. & Sur. Co. v. Lebas*,
No. 12-cv-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013) ............................ 13

*Hanby v. Shell Oil Co.*,
144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) ............................................................ 16

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625, 632 (5th Cir. 2022) ........................................................................... 19

*In re Radmax, Ltd.*,
720 F.3d 285, 288 (5th Cir. 2013) ........................................................................... 18

*In re Volkswagen of Am., Inc.*,
545 F.3d 304, 312 (5th Cir. 2008) ........................................................... 5, 6, 16, 17

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366, 1372 (11th Cir. 2003) ................................................................. 9, 15

*Lawson v. U.S. Dep't of Justice*,
527 F. Supp. 3d 894, 896 (N.D. Tex. 2021) ............................................................. 5

*McClintock v. Sch. Bd. E. Feliciana Par.*,
299 F. App'x 363, 366 (5th Cir. 2008) ................................................................. 5, 13

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*,
145 F.3d 1399, 1409–10 (D.C. Cir. 1998) .............................................................. 10

*Seville v. Maersk Line, Ltd.*,
53 F.4th 890, 894 (5th Cir. 2022) ................................................................. 15, 16, 18

*Sigoloff v. Austin*,
No. 4:22-cv-923-P, 2023 WL 2142982, at *1 (N.D. Tex. Feb. 21, 2023).. 5, 7, 13, 17

*Steen v. Murray*,
770 F.3d 698, 704 (8th Cir. 2014) ........................................................................... 13

*Tactacell, LLC v. Deer Mgmt. Sys., LLC*,
--- F. Supp. 3d ----, 2022 WL 3239196, at *3 (W.D. La. Aug. 10, 2022) ............... 11

*Trois v. Apple Tree Auction Ctr., Inc.*,
882 F.3d 485, 493 (5th Cir. 2018) ........................................................................... 13

*Trujillo v. Garland*, No. 22-cv-23980,
2023 WL 2374445, at *6 (S.D. Fla. Mar. 6, 2023) ................................................... 7

*Turentine v. FC Lebanon II LLC*,
No. 3:22-CV-01625-M, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022) ....... 11

iii

*Woodke v. Dahm,*
   70 F.3d 983, 987 (8th Cir. 1995) ............................................................... 11

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.,*
   982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) ........................................ 11

**Statutes**

20 U.S.C. § 1070 ................................................................................................. 2

20 U.S.C. § 1087(c)(1) ...................................................................................... 2

20 U.S.C. § 1087d(a)(6) ................................................................................... 2

20 U.S.C. § 1087e(a)(1) .................................................................................... 2

20 U.S.C. § 1087e(h) ......................................................................................... 2

20 U.S.C. § 10887dd(g)(1) ............................................................................... 2

28 U.S.C. § 124(d)(1) ........................................................................................ 8

28 U.S.C. § 1391(c)(2) ...................................................................................... 8

28 U.S.C. § 1391(e) ....................................................................................... 1, 6

28 U.S.C. § 1391(e)(1) ...................................................................................... 6

28 U.S.C. § 1404(a) .................................................................................. passim

28 U.S.C. § 1406 ................................................................................................ 1

28 U.S.C. § 1406(a) .......................................................................................... 19

**Other Authorities**

Tex. Comptroller of Public Accounts, Taxable Entity Search,
   https://mycpa.cpa.state.tx.us/coa/search.do ......................................... 8

Wright & Miller, Federal Practice & Procedure (4th ed. 2022) ............... 13, 15, 18

**Rules**

Fed. R. Civ. P. 41(b) ........................................................................................ 16

Federal Rule of Civil Procedure 12(b)(3) ............................................. 5, 8, 19

**Regulations**

Final Rule with Request for Comments, Student Assistance General Provisions,
82 Fed. Reg. 6253 (Jan. 19, 2017) ................................................................. 3

Final Rule,
87 Fed. Reg. 65,904 (Nov. 1, 2022) ........................................................ 3, 4

Final Rule, Student Assistance General Provisions, Federal Family Education Loan
Program, and William D. Ford Federal Direct Loan Program,
84 Fed. Reg. 49,788 (Sept. 23, 2019) ........................................................ 3

Final Rule, Student Assistance General Provisions, Federal Perkins Loan Program,
Federal Family Education Loan Program, William D. Ford Federal Direct Loan
Program, and Teacher Education Assistance for College and Higher Education
Grant Program,
81 Fed. Reg. 71,926 (Nov. 1, 2016) .......................................................... 3

## INTRODUCTION

Career Colleges and Schools of Texas (CCST), a trade association representing for-profit higher education institutions, claims to be injured by the Department of Education's latest amendments to regulations governing the federal student loan programs.  In a 300-plus paragraph complaint, it has raised complex claims based on the Constitution, the Administrative Procedure Act, and the Higher Education Act.

Whatever the merits of CCST's allegations, one thing is clear at the outset: venue is not proper in this District.  CCST does not reside in this District.  Nor does any Defendant.  And CCST has not identified any event or omission that occurred in the Northern District of Texas to give rise to its claims.  CCST's decision to forum shop by filing in the Northern District will unnecessarily tax the resources of this Court and should not be countenanced.

Under 28 U.S.C. § 1391(e), the proper court for this pre-enforcement challenge to a Department of Education regulation is either the United States District Court for the District of Columbia, where the challenged regulations were developed and promulgated and where Defendants reside, or the Austin Division of the Western District of Texas, where CCST resides.  Because this District is not an appropriate venue, the case should be dismissed or transferred to one of those proper districts pursuant to 28 U.S.C. § 1406.  Alternatively, this action should be transferred under 28 U.S.C. § 1404(a), because factors of convenience and the interests of justice counsel in favor of transfer.

**BACKGROUND**

## I. Statutory and Regulatory Background

Under Title IV of the Higher Education Act of 1965 (HEA), 20 U.S.C. § 1070 *et seq.*, post-secondary schools may enter into Program Participation Agreements (PPAs) with the Department of Education, which allow students at those schools to receive federal grants and loans that pay for their cost of attendance. The HEA provides significant latitude to the Department in setting the terms of PPAs. In particular, the Secretary of Education is authorized to include terms that he "determines are necessary to protect the interests of the United States and to promote the purposes of" the federal student loan programs. 20 U.S.C. § 1087d(a)(6).

The HEA also sets certain statutory conditions on the Department's operation of the federal student loan programs. One condition requires the Secretary to discharge a borrower's loan liability when that borrower is "unable to complete the program in which such student is enrolled due to the closure of the institution." 20 U.S.C. § 1087(c)(1); *see also* 20 U.S.C. § 1087e(a)(1); 20 U.S.C. § 10887dd(g)(1). Another allows student loan borrowers to obtain relief from their repayment obligations in other circumstances, requiring the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan" made under the Direct Loan program. 20 U.S.C. § 1087e(h). Over the last decade, substantial growth in the amount of outstanding federal student loan debt and an exponential increase in the number of "borrower defense" claims based on institutional misconduct have caused the Department, on multiple occasions, to make significant updates to its regulations governing borrower

defense claims and federal student loan programs more broadly. *See* Final Rule, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 71,926 (Nov. 1, 2016); Final Rule with Request for Comments, Student Assistance General Provisions, 82 Fed. Reg. 6253 (Jan. 19, 2017); Final Rule, Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788 (Sept. 23, 2019).

## II. The 2022 Rule

The Department made the latest round of these updates through a final rule published on November 1, 2022. *See* Final Rule, 87 Fed. Reg. 65,904 (Nov. 1, 2022). The Final Rule amends the regulations governing three federal student loan programs: the Direct Loan Program, the Perkins Loan Program, and the Federal Family Education Loan Program. *See id.* Each of the Final Rule's amendments are set to take effect on July 1, 2023. *See id.*

While the Final Rule makes numerous changes to those programs' regulations, three amendments are at issue in this case. First, the Final Rule provides an expanded definition of the "acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan," as well as updated procedures for adjudicating whether a borrower's defense to repayment has been established. *See id.* at 65,904–05. Second, the Final Rule imposes certain conditions on the receipt of federal Title IV funds, including that participating schools limit the use of certain arbitration and class action waiver provisions and make certain

notifications and disclosures regarding their use of mandatory arbitration.  *See id.* at 65,905.  Third, the Final Rule expands borrower eligibility for an automatic loan discharge in circumstances where the borrower is unable to complete a program due to their school's closure, and it eliminates prior provisions applying to situations in which a borrower reenrolls in another program.  *See id.*  In the Department's view, these amendments (in conjunction with others not at issue in this case) "will bring greater transparency and clarity and improve the administration of Federal student financial aid programs to assist and protect students, participating institutions, and taxpayers."  *See id.* at 65,904.

## III.  This Lawsuit

Plaintiff CCST is an Austin-based board of trade representing for-profit institutions of higher education across Texas.  *See* Compl. ¶ 10.  It filed this case on February 28, 2023—four months after the Final Rule was published—to challenge the Final Rule's provisions relating to borrower defense claims, the use of class action and arbitration clauses in contracts between borrowers and their schools, and the discharge of borrowers' repayment obligations when their school closes.  *See id.* ¶¶ 267–303.  The complaint names two federal Defendants—the Department of Education and its Secretary, Miguel Cardona, in his official capacity—both of which are based in the District of Columbia.  The only basis CCST asserts for venue is that "a substantial part of the events or omissions giving rise to [its] claims occurred in the Northern District of Texas."  Compl. ¶ 14.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss any action that is brought in an improper venue. *Lawson v. U.S. Dep't of Justice*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021). "Once a defendant raises improper venue, the plaintiff has the burden to prove that venue is proper." *Sigoloff v. Austin*, No. 4:22-cv-923-P, 2023 WL 2142982, at *1 (N.D. Tex. Feb. 21, 2023); *see also Lawson*, 527 F. Supp. 3d at 896 (adopting this rule as "the better approach"). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir. 2008) (noting that the choice between dismissal and transfer is discretionary).

Even if venue is proper, "a district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (internal quotation omitted). If so, a court must consider the convenience of the parties and witnesses by evaluating certain private and public interest factors, none of which are given dispositive weight. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315 (citations, quotations, and alterations

5

omitted).  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.* (citations, quotations, and alterations omitted).  "[T]he interest of justice" is an independent factor in the analysis that incorporates considerations of judicial economy and fairness.  *See DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593–94 & n.2 (N.D. Tex. 2003).

## ARGUMENT

The Court should dismiss this case because the Northern District of Texas is not an appropriate venue for CCST's claims.  Short of dismissal, the Court should transfer the case to the District of Columbia or to the Austin Division of the Western District of Texas, where venue would be proper.  Even if the Northern District of Texas were technically a proper venue for this case, transfer would still be appropriate based on factors of convenience and the interest of justice.

## I.  The Northern District of Texas is an improper venue for this case.

Venue for civil actions brought against federal officers or agencies is governed by 28 U.S.C. § 1391(e).  That provision makes venue proper "in any judicial district in which" one of three conditions is satisfied: "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  Because the Northern District of Texas does not meet any of the three statutory

conditions, "the case must be dismissed or transferred." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) (citing 28 U.S.C. § 1406(a)).

### A.   No party resides in this District.

Section 1391(e)'s provisions for venue based on the residence of the parties are inapplicable in this case, and CCST does not argue otherwise. With respect to Section 1391(e)(1)(A), that is because Defendants reside outside this District. The "residence" of a federal defendant for purposes of venue "is where the official duties are performed." *Sigaloff*, 2023 WL 2142982, at *3; *see also Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981). And each of the Defendants here performs its official duties in the District of Columbia. *See, e.g.*, Summons Returns, ECF No. 8, at 2, 8 (noting Defendants' offices are at 400 Maryland Avenue SW, Washington, D.C. 20202). That some agency employees or offices might operate from other locations makes no difference to this analysis. *See, e.g.*, *Trujillo v. Garland*, No. 22-cv-23980, 2023 WL 2374445, at *6 (S.D. Fla. Mar. 6, 2023) (rejecting "any contention that the operations of the Miami regional offices are sufficient to establish that the relevant federal officers reside in the Southern District of Florida"); *Garcia v. Acosta*, 393 F. Supp. 3d 93, 109 (D.D.C. 2019) ("Although the Department maintains a regional office in Chicago, neither the Secretary of Labor nor the Department of Labor 'resides' in the Northern District of Illinois; both are, instead,

residents of the District of Columbia."). Thus, the District of Columbia is where Defendants reside.

CCST also resides elsewhere, so venue similarly cannot be based on Section 1391(e)(1)(C). CCST's principal place of business is in Austin, Texas. *See, e.g.*, Civil Cover Sheet, ECF No. 1-1 (listing "Travis" as CCST's "county of residence"); Tex. Comptroller of Public Accounts, Taxable Entity Search, https://mycpa.cpa.state.tx.us/coa/search.do (showing CCST mailing and office addresses are in Austin (input Texas taxpayer ID number 17428039550)).[1] Austin falls within the Austin Division of the Western District of Texas. *See* 28 U.S.C. § 124(d)(1) (listing Travis County). And that is the only judicial district in which CCST can be deemed to reside. *See* 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, *only* in the judicial district in which it maintains its principal place of business[.]" (emphasis added)). CCST's allegations about the residences of its member schools and their students and employees, *see, e.g.*, Compl. ¶¶ 10, 18–20, do not undermine that conclusion. *See Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen*, 387 U.S. 556, 559 (1967) (reasoning that venue "should be determined by looking to the residence of the association itself rather than that of its individual members"); *Am. Newspaper Pubs. Ass'ns v. U.S. Postal Serv.*, 789 F.2d 1090, 1092 (5th Cir. 1986) (rejecting the

---

[1] "[U]nder . . . Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

"suggestion that the location of a trade association member may be imputed to the association for venue purposes"). Because CCST resides only in the Austin Division of the Western District of Texas, Section 1391(e)(1)(C) does not authorize venue in this District.

> **B.  No substantial part of the events and omissions giving rise to CCST's claims occurred in this District.**

That leaves Section 1391(e)(1)(B). Invoking that provision, CCST asserts that venue is proper because "a substantial part of the events or omissions giving rise to [its] claims occurred in the Northern District of Texas." Compl. ¶ 14. But that conclusory allegation alone does not make venue proper, and the complaint fails to allege that any material events or omissions giving rise to CCST's claims (much less a substantial part of them) actually occurred in this District.

CCST's failure to draw any meaningful connection between its claims and the Northern District of Texas is, in part, a natural function of the type of claims asserted and the acts and omissions underlying them. *Cf. Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (describing examination of the plaintiff's claims and underlying events as the first step in assessing venue under Section 1391(e)(1)(B)); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (asking first "[w]hat acts or omissions by [the defendant] "gave rise" to [the plaintiff's] claim?"). The central concern of CCST's claims is the promulgation of new and allegedly unlawful regulations governing the federal student loan programs. But the promulgation and the decisionmaking processes that led up to it all took place in Washington, D.C. *Cf. Garcia*, 393 F. Supp. 3d at 109 (denying motion to transfer in

9

part because challenged regulation "was promulgated in the District of Columbia, and, if modified, will be modified here as well"); *see also Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409–10 (D.C. Cir. 1998) (noting that venue for review of agency rules is most widely available in the District of Columbia).

Moreover, the Final Rule has not yet taken effect, and so it has not been applied to any person or entity within this District. *See Experian Info. Sols., Inc. v. FTC*, No. 3:00-cv-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) (adopting findings and recommendation) (venue was not proper in the Northern District of Texas where plaintiff's claim involved a pure question of law about an agency rule rather than any enforcement action taken within the district). Put simply, because the Final Rule is not directed in any meaningful way at the Northern District of Texas or any CCST members here, CCST's claims about it also have no substantial factual relationship to this District. *Cf. Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) (venue was proper in district that was the site of the "intentional initiation of the whole affair" at issue in the case); *Garcia*, 393 F. Supp. 3d at 109 (finding alternative venue would be improper under Section 1391(e)(1)(B) in part because "there is no reason to believe that the challenged policy and practice will apply to farms located in the [alternative district] with any greater frequency than anywhere else in the United States").

To the extent that CCST offers any factual allegations at all to support venue in this District, those allegations do not involve "substantial 'events material to those claims [that] occurred' in the forum district." *Emps. Mut.*, 618 F.3d at 1166. "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry,

10

determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (quoting *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 432–33 (2d Cir. 2005)). But to qualify as substantial, "material acts or omissions within the forum [must] bear a close nexus to the claims." *Tactacell, LLC v. Deer Mgmt. Sys., LLC*, --- F. Supp. 3d ----, 2022 WL 3239196, at *3 (W.D. La. Aug. 10, 2022).

"[I]n determining whether or not venue is proper, the Court looks to the defendant's conduct and where that conduct took place." *Turentine v. FC Lebanon II LLC*, No. 3:22-CV-01625-M, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022) (quotation and alterations omitted). But of the complaint's seven paragraphs that plead venue-related facts, none concerns wrongful acts or omissions committed by Defendants in this District. Nor is there any allegation that events that occurred in this District motivated Defendants to adopt the Final Rule. And even if CCST's own activities were to be considered for purposes of venue, there are no allegations in the complaint connecting those activities with its claims such that they would arise in this District. *See, e.g.*, Compl. ¶ 23 (describing how CCST joined a comment letter concerning the Final Rule); *see also* App'x at 001, 006 (noting comment letter was authored in Arlington, Virginia). Under these circumstances, a finding that venue is appropriate in this District would be inconsistent with the purposes of the venue statutes. *See Woodke v. Dahm*, 70 F.3d 983, 987 (8th Cir. 1995) (because the purpose

11

of venue statutes is to protect defendants, "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff").

Far from identifying any relevant conduct by Defendants within this District, the bulk of CCST's allegations focus on the residence and activities of various nonparties. *See, e.g., id.* ¶ 15 (stating that "Texas is home to 2.9 million student loan borrowers," and that a significant number of those borrowers reside in this District); *id.* ¶ 16 (stating that Texas is "home to approximately 346 institutions of higher learning that participate in the Direct Loan Program"); *id.* ¶ 17 (stating that a significant number of those institutions that participate in the Direct Loan Program and will be subject to the challenged rule "are present in this District"); *id.* ¶ 18 (stating that CCST's "member schools that reside in this District . . . will suffer concrete injury from the Final Rule"); *id.* ¶ 19 (stating that a "large number of students and graduates of CCST member schools . . . reside in this District"); *id.* ¶ 20 (discussing employment and educational activity by certain CCST member schools); *id.* ¶ 21 (discussing potential impacts on communities in the Northern District of Texas if CCST member schools close or reduce their services).[2]  Allegations about nonparties have no "operative significance" to CCST's claims, and so they are

---

[2] Even though CCST purports to bring this suit "on behalf of its members," Compl. ¶ 24, those members are not named parties here. And for purposes of venue, only those events and omissions giving rise to the claims of named parties matter. *See Abrams Shell v. Shell Oil Co.*, 343 F.3d 482 (5th Cir. 2003); *cf. Harvard v. Inch*, 408 F. Supp. 3d 1255, 1261 (N.D. Fla. 2019) ("In a class action, 'the analysis of where a substantial part of the events took place . . . looks to the events concerning the named plaintiffs' claims, not all of the class members' claims.'" (quoting 2 Newberg on Class Actions § 6:36 (5th ed.))).

irrelevant to determining venue under Section 1391(e)(1)(B).  *Sigoloff*, 2023 WL 2142982, at *2; *see also id.* at *2 n.1; *Gray Cas. & Sur. Co. v. Lebas*, No. 12-cv-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013); *accord Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (finding error where district court "d[id] not recognize the distinction between the facts giving rise to the two separate claims pleaded" and "looked outside the specific events giving rise" to each of them).

Similarly, to the extent that CCST's allegations include speculation that the Final Rule will harm residents of the Northern District, including CCST member schools, that speculation counts for little.  Even assuming that the Final Rule will harm those entities, under Section 1391(e)(1)(B), it is not sufficient to point out that a "defendants' wrongful conduct caused effects there."  *Steen v. Murray*, 770 F.3d 698, 704 (8th Cir. 2014); *see also McClintock*, 299 F. App'x at 365 ("Venue also cannot lie simply because a plaintiff continues to experience the psychological effects of an injury in a particular place.").  That is so for good reason:  If the economic effects of a defendant's actions, standing alone, could establish venue in a particular district, there would have been little reason for Congress to distinguish between venue at a plaintiff's residence and venue where a claim arises.  *See, e.g.*, Wright & Miller, Fed. Prac. & Proc. § 3806 (4th ed. 2022) (endorsing view that "suffering economic harm within a district is not by itself sufficient to warrant transactional venue there . . . because otherwise venue almost always would be proper at the place of the plaintiff's residence"); *ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC*, No. 15-cv-77, 2015 WL 1638179, at *4 (E.D. La. Apr. 13, 2015).

Finally, CCST cannot establish venue here by relying on its members' participation in the federal student loan programs and any effects the Final Rule may have on them as a result. To be sure, CCST members' participation in federal student loan programs is a background fact of some relevance to this case; without it, CCST likely would have little interest in the Final Rule. But "an event does not 'give rise to [a] claim' simply because the alleged wrongful conduct would have been impossible without the event." *Steen*, 770 F.3d at 704. And relying on the effects CCST members might experience from the Final Rule would be tantamount to basing venue on the residence of those nonparties, which is impermissible. *See Am. Newspaper Pubs. Ass'ns*, 789 F.2d at 1092.

The fact that some limited number of CCST members may be located within this District and participate in federal student loan programs clearly has no substantial bearing on the complaint as a whole. The complaint asserts facial challenges against entire portions of the Rule, regardless of their application to any particular institution of higher education, and the mere presence of some CCST member schools in this District does not, for this case, meaningfully differentiate those members from the majority of other CCST members elsewhere in Texas, nor from the vast number of institutions and borrowers nationwide who also participate in federal student loan programs and might be impacted by the Final Rule in the same ways. Accordingly, the mere fact that some CCST member schools in this District receive Title IV funds, standing alone, should play no role in the Court's

14

venue analysis.  *See Jenkins Brick*, 321 F.3d at 1373 ("Facts [that] do not have a close

nexus with the cause of action" are "irrelevant").

> ### C.    Dismissal is appropriate.

When a court determines that a case has been filed in an improper venue, it

"should generally dismiss the case."  *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894

(5th Cir. 2022).  "But the court retains discretion to transfer [the case] to a proper

venue if such a transfer would serve 'the interest of justice.'"  *Id.* (quoting 28 U.S.C.

§ 1406(a)).  "Among the relevant considerations for determining whether transfer is

in the interest of justice, courts examine the plaintiff's reasons for filing suit in the

improper district in the first place and ask whether the 'plaintiff's belief that venue

was proper was in good faith and reasonable.'"  *Id.* (quoting Wright & Miller, Fed.

Prac. & Proc. § 3827 (4th ed. 2021)).

Although the Court has discretion to transfer this case to an appropriate venue

(namely, the District of Columbia or the Western District of Texas), the interest of

justice favors dismissal here.  By all appearances, CCST is a well-resourced litigant

represented by competent, experienced counsel.  It surely selected this venue—rather

than its home district in Austin, or the District of Columbia where its lead counsel

are located—intentionally.  And when asked to consent to transfer to either the

District of Columbia or the Western District of Texas, CCST opted to oppose transfer,

necessitating the present motion and the associated expenditures of party and

judicial resources.  Given all that, there is little justification for this Court to provide

CCST a second bite at the apple.  *See* Wright & Miller, Fed. Prac. & Proc. § 3827

("[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the

plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged."); *accord Seville*, 53 F.4th at 894 (discussing dismissal as a means to discourage similar conduct).  In addition, dismissal will cause minimal (if any) prejudice:  CCST can refile in another district of its choice where there is no venue problem.  *See* Fed. R. Civ. P. 41(b).[3]

## II. In the alternative, the Court should transfer this case to a proper venue.

Even if the Court determines that this District is an appropriate venue, it should exercise its discretion to transfer the case to the District of Columbia or to the Austin Division of the Western District of Texas under 28 U.S.C. § 1404(a).

"[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege" by authorizing courts to "prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *Volkswagen*, 545 F.3d at 313.  "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g.*, *Chapman v. Dell, Inc.*, No. 09-cv-7, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'" (quoting *Icon Indus.*

---

[3] When it refiles, CCST can perfect service on Defendants, which it has not yet done.

*Controls Corp. v. Cimetrix, Inc.,* 921 F. Supp. 375, 383–84 (W.D. La. 1996))). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *Volkswagen*, 545 F.3d at 313.

The private factors that guide the Section 1404 analysis all favor transfer here or are neutral. *See id.* at 315. The Final Rule was developed and promulgated in Washington, D.C., each of the Defendants resides there, and the administrative record will be compiled there. *See id.* at 316. Further, the United States District Court for the District of Columbia has substantial "familiarity dealing with cases in which Defendants are named." *Sigoloff*, 2023 WL 2142982, at *3. To the extent that CCST's convenience is at issue, its principal place of business is in Austin, and so transfer to the Western District of Texas likely would be more convenient.

The public interest factors strongly favor transfer as well. First, as the Court has recently recognized, this District "has a very busy docket, with little capacity to hear cases better suited in another venue." *Id.* at *4. Second, the public interest factor that recognizes there can be a "local interest in having localized interests decided at home" weighs heavily in favor of transfer out of this District. *See Volkswagen*, 545 F.3d at 316. The District of Columbia "will have a significant interest in adjudicating cases involving Defendants since [their] offices are in [that] jurisdiction." *Sigoloff*, 2023 WL 2142982, at *4. And CCST is plainly at home in Austin, where its principal office is located. Moreover, none of the Defendants resides in this District. It would be an abuse of discretion to "deny[] transfer where only the

17

plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (footnotes omitted).

Finally, even if the convenience factors did not clearly favor transfer—which they do—"the interest of justice," 28 U.S.C. § 1404(a), alone would justify transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (collecting cases).  Not only is there no public interest in having this matter litigated in this District, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of forum-shopping were left unchecked.  *See Seville*, 53 F.4th at 894.  As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (mem.) (Gorsuch, J., concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions).  Allowing this lawsuit to proceed unchecked would only encourage continued gamesmanship by litigants outside the Northern District, further clutter the Court's busy docket with emergency motions and expedited proceedings, and leave this Court with even less time and fewer resources to devote to the resolution of local disputes.

In short, this is exactly the sort of case where other venues—particularly the U.S. District Court for the District of Columbia—"have a greater 'stake' in the

litigation" than this District.  *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317–18).  Accordingly, the Court should transfer this case, either to the District of Columbia or to the Austin Division of the Western District of Texas.

## CONCLUSION

The Northern District of Texas is not an appropriate venue for CCST's claims, so the Court should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, this case should be transferred to the District of Columbia or to the Austin Division of the Western District of Texas under either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

Dated: March 18, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Cody T. Knapp*
CHRISTINE L. COOGLE
CODY T. KNAPP (NY #5715438)
R. CHARLIE MERRITT
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for Defendants*

19