IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS,<br><br>               Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>               Defendants. | Case No. 4:23-cv-206-P |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS OR TRANSFER**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.    CCST's misconstruction of Section 1391(e)(1)(B) does not establish venue... 1

    II.    Under ordinary principles, this District is not a proper venue. .................... 5

    III.    At minimum, this case should be transferred. ............................................. 9

CONCLUSION................................................................................................................... 10

**INTRODUCTION**

This case should not be litigated any further in the Northern District of Texas. No party resides here. No substantial part of the events or omissions giving rise to CCST's claims occurred here. And the interests of justice and party convenience would be better served if this case were litigated in a judicial district with meaningful ties to CCST's claims. Accordingly, the case should be dismissed, or alternatively, transferred to a district with more substantial connections to CCST's claims.

None of CCST's arguments alters this conclusion. To keep this case in the Northern District, CCST proposes a novel venue rule for challenges to government action, but its rule runs headlong into contrary precedent. And while CCST details a smattering of burdens that it and its members expect to face when the Final Rule actually goes into effect, those anticipated burdens, to the extent they will be borne in this District, do not amount to a substantial part of the events or omissions that give rise to CCST's claims. CCST has other options for venue—namely the Western District of Texas and the District of Columbia—but it cannot press its claims here.

**ARGUMENT**

**I.    CCST's misconstruction of Section 1391(e)(1)(B) does not establish venue.**

As its principal defense to dismissal for lack of venue, CCST offers an interpretive gloss on 28 U.S.C. § 1391(e)(1)(B), purportedly derived from the reasoning of four district court decisions involving challenges to federal or state regulations. *See* Pl.'s Opp'n 1–7. Section 1391(e)(1)(B) makes venue proper in "a judicial district in which a substantial part of the events or omissions giving rise to

1

the claim occurred." CCST contends this provision establishes a categorical rule in government cases, providing venue to challenge agency regulations anywhere they impose burdens. *See id.* 1–2, 4. And in CCST's view, because the Final Rule will regulate schools, including some CCST member schools in this District, and because those schools will need to adjust certain practices to account for the new regulations, venue would be proper in this District under their interpretation. *See id.* 5–7.

CCST's construction of Section 1391(e)(1)(B) and the case law applying it is mistaken. In particular, the categorical rule CCST advances is flatly inconsistent with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–87 (1979). In that case, a Texas corporation brought suit in Texas against Idaho officials, challenging an Idaho statute that imposed restrictions on takeovers of companies with assets in Idaho. *Id.* at 175–77. Relying on the then-current version of 28 U.S.C. § 1391(b), which provided that a suit could be brought in a judicial district "in which the claim arose," the *Leroy* plaintiff argued, much like CCST does here, that its "claim arose" in Texas because the plaintiff proposed to engage in regulated commercial activity in Texas and would feel the consequent "impact" of Idaho's statute on that activity there. *Leroy*, 433 U.S. at 186.

In proceedings below, the Fifth Circuit actually had endorsed the plaintiff's reasoning in terms much like those CCST advances here. *Compare Great W. United Corp. v. Kidwell*, 577 F.2d 1256, 1272 (5th Cir. 1978) ("The regulatory activities by the Idaho officials had their restraining effect at the corporate headquarters of Great Western in Dallas. This was a sufficient act to make venue proper in the Northern

2

District of Texas."), *with* Pl.'s Opp'n 6–7 (claiming that the Final Rule will impose burdens on "Lincoln Technical Institute in Grand Prairie, located in Tarrant County," and that "[t]hese burdens are enough to establish proper transactional venue in this district"). But the Supreme Court reversed, finding that the plaintiff's "contacts" fell "far short" of establishing a sufficient connection between the "claim" and the Northern District of Texas. *Leroy*, 433 U.S. at 186. A contrary conclusion, the Court explained, would have subjected Idaho officials to "suit in almost every district in the country," and left venue "entirely in the hands of plaintiffs"—a result "inconsistent with the underlying purpose" of Section 1391. *Id.* Because the relevant actions (the enactment and enforcement of the Idaho statute) had been "taken in Idaho by Idaho residents," the claim had "only one obvious locus—the District of Idaho." *Id.* at 185.[1] Given the holding and reasoning of *Leroy*, CCST's blanket claim that "a substantial part of the events or omissions giving rise to the claims take place where an unlawful rule imposes its burdens," Pl.'s Opp'n 2, is untenable.

*Leroy* aside, even the four cases that CCST identifies as supporting its construction of Section 1391(e)(1)(B) cannot bear the weight placed on them. None comes close to articulating the bright-line rule CCST seeks to avail itself of here. For

---

[1] That Congress amended Section 1391 in 1990 does not change the Court's analysis. That amendment clarified that venue *can* be proper in multiple districts. *Compare Leroy*, 433 U.S. at 178 n.8 (quoting the pre-amendment statute), *with* 28 U.S.C. § 1391(b)(2). But *Leroy*'s analysis expressly did not turn on "whether [the pre-amendment statute] adopt[ed] the occasionally fictive assumption that a claim may arise in only one district." *Leroy*, 443 U.S. at 184–85. And even following the 1990 amendments, venue must be based on events or omissions that have "occurred" in the forum district. No accepted understanding of that word permits an event or omission to "occur" everywhere its effects are felt, as CCST's interpretation would allow.

3

example, the court in *Udeobong v. Hawkins* simply focused its analysis "on the chain of events that led up to and includes the claim at issue rather than a narrow focus on the actions of the defendant." No. CIV.A. H-08-1833, 2009 WL 7326072, at *2 (S.D. Tex. Feb. 19, 2009). Because that chain of events included a number of government activities in the forum district, including correspondence sent to the plaintiff in the district and collateral litigation of underlying matters involving the plaintiff, the court's finding of venue properly accounted for more than just alleged burdens. *Id.*

Likewise, this Court's decision in *Umphress v. Hall*, 479 F. Supp. 3d 344 (N.D. Tex. 2020), rested on far more than the injurious effects of a challenged regulation. There, in a case concerning enforcement of the Texas Code of Judicial Conduct, the Court found venue based on concrete actions taken by the plaintiff judge within this District that created an acute threat of sanction from defendants. In particular, the Court noted that the plaintiff judge had performed 12 opposite-sex weddings within this District while simultaneously refusing to perform same-sex weddings, that the defendants had taken steps publicly to discipline a judge for substantially similar conduct elsewhere in Texas, and that the plaintiff could be subject to discipline based on each of the 12 weddings he had officiated here. *See id.* at 346, 352. In this case, CCST has identified no similarly concrete nexus between the Final Rule and any actions by or injuries to CCST or its members in this District. *See* Defs.' Br. 12–15.

*Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015), is no more helpful to CCST. There, the issue of venue was not even briefed by the parties, and it is not clear from the opinion's drive-by findings what informed the court's venue

4

analysis.  Such thin reasoning and the unique context of that case, which involved emergency proceedings brought by state governments to enjoin a regulation that would have required them, as employers, to (in their understanding) violate state laws restricting recognition of same-sex marriages, make *Texas* highly distinguishable from this case.  Finally, in *Farmland Dairies v. McGuire*, 771 F. Supp. 80 (S.D.N.Y. 1991), the court sustained venue based on specific activities of the plaintiffs that triggered statutory and regulatory financial consequences.  Such an ongoing and concrete legal consequence is not presented in this case.

## II.     Under ordinary principles, this District is not a proper venue.

Beyond its faulty theory of venue in cases involving agency action, CCST fails to establish that the Northern District of Texas is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" under the ordinary principles courts use to assess venue.[2]

As Defendants have explained, prime among those principles is the idea that a court's analysis should center on the defendant's conduct.  *See Turentine v. FC Lebanon II LLC*, No. 3:22-CV-01625-M, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022); *see also Leroy*, 433 U.S. at 183–84 (explaining that "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial").  Attacking a strawman, CCST criticizes

---

[2] Plaintiffs dispute that it is their burden to show venue.  *See* Pl.'s Opp'n 4. But as the Fifth Circuit has found, once a defendant has raised venue as an issue, the plaintiff is "required to come forward with evidence showing venue is proper." *Perez v. Pan Am. Life Ins. Co.*, 70 F.3d 1268, 1995 WL 696803, at *2 (5th Cir. 1995).

5

Defendants' position as treating "only the district where the *defendant's* conduct takes place [as] relevant," and excluding any consideration of "the location of a plaintiff's activities [or] the place where burdens are imposed on a plaintiff." Pl.'s Opp'n 8. But that is not Defendants' argument. Rather, Defendants have emphasized that the "court's *focus* must be on relevant activities of the defendant in the forum [district], not on the effect of those activities on the plaintiff in the forum [district]." *Steen v. Murray*, 770 F.3d 698, 704 (8th Cir. 2014); *see also* Defs.' Br. 11–12. The Fifth Circuit's venue jurisprudence reflects that principle. *See McClintock*, 299 F. App'x at 365 ("Venue also cannot lie *simply* because a plaintiff continues to experience the psychological effects of an injury in a particular place." (emphasis added)). And because, even now, CCST fails to identify *any* allegedly wrongful acts or omissions committed by Defendants in this District, the Court should determine that the Northern District is not a proper venue.

CCST contends that failing to recognize venue for its claims in this District would undermine the congressional purposes underlying venue. *See* Pl.'s Opp'n 9. In particular, CCST argues that Congress has expanded venue for suits against federal officials to "allow plaintiffs to challenge agency actions *without* having to litigate in the District of Columbia." *See, e.g.*, Pl.'s Opp'n 9.[3] That was indeed one of Congress's purposes when it first enacted Section 1391(e)(1)(B) in 1962. But as the supporting

---

[3] Of course, CCST does not *have* to litigate in the District of Columbia—it is expressly permitted to bring its suit in the district in which it maintains its principal place of business, and in any other district where a substantial part of the events and omissions underlying its claims occurred. But it has not done so here.

6

Senate Report makes clear, Congress's aim was to allow those affected by federal "administrative determinations . . . made not in Washington but in the field," particularly regarding "problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights," to challenge those determinations locally rather than in the national capital. S. Rep. No. 87-1992 (1962), 1962 U.S.C.C.A.N. 2784, 2786.  There is no evidence that Congress intended to eliminate the longstanding practice of litigating significant national policy decisions in the jurisdiction where those decisions are made.

The 1990 amendments likewise left undisturbed the nexus between a claim and a judicial district required to establish proper venue.  Congress clarified that multiple districts potentially could be found to present proper venues for a claim. *See* H.R. Rep. 101-734, 1990 U.S.C.C.A.N. 6860, 6869.  But the amended language did not newly suggest that venue could be premised on the plaintiff's own contacts with the forum district alone.  To the contrary, the amended language ("events or omissions giving rise to the claim") made more explicit what *Leroy* had already found implied in the pre-amendment version of the statute—that the venue inquiry should ordinarily focus on the allegedly wrongful conduct of the defendant.  In any event, "[t]he requirement of venue . . . is not one of those vague principles which, in the interests of some overriding policy, is to be given a 'liberal construction,'" *Leroy*, 443 U.S. at 184 (quoting *Olberding v. Ill. Cent. R.R. Co.,* 346 U.S. 338, 340 (1953)), and CCST's policy concerns about the limits on venue should be addressed to Congress, not the courts.

7

Even if CCST could theoretically establish venue without identifying any concrete wrongful acts or omissions taken by Defendants in this District, its allegations in this case would still be insufficient to make venue proper. The harms CCST alleges that it and its members face are *future* harms. *See, e.g.*, Pl.'s Opp'n 6 (noting what its members and their employees "will be required" to do and are "likely" to be subject to). But as the text of Section 1391(e)(1)(B) makes clear, only events which have "*occurred*"—that is, are in the past—may form the basis for venue in this District. *See United States v. Wilson,* 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). Thus, as the Seventh Circuit has observed, "[t]o base a venue determination on the possibility of some future administrative ruling [would] approach[] the question backwards." *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 268 (7th Cir. 1978). And even where CCST *does* reference (at least implicitly) certain past conduct, *see, e.g.*, Pl.'s Opp'n 5 ("schools in this district teach students, maintain records, train staff, receive Title IV funds, advertise, and recruit new students"), that conduct involves activities far afield from those that would give rise to the claims they now raise concerning a federal agency's policymaking process. *Cf. Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005) (providing examples of proper nexus between the events in the chosen forum and the nature of plaintiffs' claims).[4] None of CCST's allegations amount to a "substantial part of the events or omissions" giving rise to its claims. *See Steen*, 770

---

[4] Plaintiffs' do not bring a breach of contract claim, so they cannot base venue on the locus of performance for contracts with Defendants. *Cf.* Pl.'s Opp'n 10–11.

8

F.3d at 704 (affirming that "an event does not 'give rise to the claim' simply because the alleged wrongful conduct would have been impossible without the event").[5]

### III. At minimum, this case should be transferred.

As Defendants have explained, the solution to the venue problem in this case is dismissal. *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) ("Where venue is improper, the district court should generally dismiss the case."). But even if the Court were to disagree about the propriety of dismissal or the availability of venue in this District, it should still enter a transfer order pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a), as appropriate.

As to discretionary transfer under Section 1404(a), CCST is correct that, in APA cases, many courts have found the private-interest convenience factors to be neutral. *See* Pl.'s. Opp'n 14. But the public-interest factors do favor transfer here, as this case, which CCST apparently intends for the Court to treat as an urgent matter, is clearly better suited to be heard in another venue. *See Sigoloff v. Austin*, No. 4:22-cv-923-P, 2023 WL 2142982, *4 (N.D. Tex. Feb. 21, 2023). To justify remaining in the Northern District, CCST leans heavily on the "respect" that is sometimes accorded to

---

[5] CCST appears to argue, without authority, that venue rules are somehow relaxed when an organization asserts (as-yet untested here) associational standing. *See* Pl.'s Opp'n 12. That contention makes little sense in light of the very different purposes served by the judge-made doctrine of associational standing and the congressionally imposed limits on venue. In any event, a finding of venue as to claims brought on behalf of CCST members would not establish venue for claims CCST asserts in its own right. *See Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013) (venue must be established "as to . . . each claim"); *see also* Compl. ¶¶ 22–23 (discussing harms to CCST itself). And because CCST has failed to produce proof that its members have engaged in past activities that might plausibly give rise to claims in this district, the parties' disagreement on this issue is a moot point.

9

a plaintiff's choice of forum. *See, e.g.*, *id.* at 14. But such deference is unavailable where, as here, the plaintiff has selected a venue where it does not reside and which lacks any significant relationship to the claims. *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). At minimum, the interests of justice, particularly the need to discourage future forum shopping, outweigh any reflexive deference CCST might otherwise receive. *See Seville*, 53 F.4th at 894.

*     *     *

CCST's gambit here—filing in an improper venue (or at least a questionable one) and then, in the midst of briefing on venue, moving for a preliminary injunction—is just the latest example of calculated gamesmanship by savvy litigants hoping to score a quick nationwide injunction in a district with no material connection to the underlying claims. These tactics impair the fair and orderly process of justice and needlessly tax the judicial system; they should not be indulged. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J., concurring). So the Court should either dismiss this case outright, or transfer it to CCST's home district in the Western District of Texas or to Defendants' home district (which is also the district with an overwhelming factual relationship to CCST's claims) in the District of Columbia.

## CONCLUSION

The Court should grant Defendants' motion to dismiss for lack of venue and deny all other motions as moot. Alternatively, the Court should transfer this case to the United States District Court for the Western District of Texas or to the District of Columbia, leaving all further proceedings for the transferee court.

10

Dated: April 14, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ Cody T. Knapp
CHRISTINE L. COOGLE
CODY T. KNAPP (NY #5715438)
R. CHARLIE MERRITT
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for Defendants*