**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS, <br><br>          Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as the Secretary of Education, <br><br>          Defendants. | No. 1:23-cv-00433-RP |

**BRIEF OF AMICI CURIAE PUBLIC CITIZEN AND
PROJECT ON PREDATORY STUDENT LENDING
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Rebecca Eisenbrey (TX 24097646)
Project on Predatory Student Lending
769 Centre Street, Ste 166
Jamaica Plain, MA 02130
(617) 390-2669

Wendy Liu (*pro hac vice* motion pending)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amici Curiae*

May 17, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... ii

INTERESTS OF AMICI CURIAE............................................................................................ 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

I.     Statutory Framework ................................................................................................... 2

II.    Regulatory History...................................................................................................... 4

      A.   The 1994 Rule .................................................................................................. 4

      B.   The 2016 Rule .................................................................................................. 6

      C.   The 2019 Rule .................................................................................................. 8

      D.   The 2022 Rule .................................................................................................. 9

ARGUMENT............................................................................................................................ 12

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Asadi v. G.E. Energy (USA), LLC*,
   720 F.3d 620 (5th Cir. 2013) ................................................................. 13

*Chamber of Commerce of United States of America v. U.S. Department of Labor*,
   885 F.3d 360 (5th Cir. 2018) ............................................................. 13, 16

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) ................................................................. 15

*Legacy Community Health Services, Inc. v. Smith*,
   881 F.3d 358 (5th Cir. 2018) ................................................................. 13

*Rainbow Gun Club, Inc. v. Denbury Onshore, LLC*,
   760 F.3d 405 (5th Cir. 2014) ................................................................. 13

*Ramos-Portillo v. Barr*,
   919 F.3d 955 (5th Cir. 2019) ................................................................. 13

*Ross v. Blake*,
   578 U.S. 632 (2016) ............................................................................. 13

*Vara v. DeVos*,
   2020 WL 3489679 (D. Mass. June 25, 2020) ................................... 5, 6, 17

**Federal Statutes**

20 U.S.C., ch. 28, subch. IV, part D ............................................................. 3

20 U.S.C. § 1070 ..................................................................................... 2, 3

20 U.S.C. § 1087 ......................................................................................... 4

20 U.S.C. § 1087b ..................................................................................... 18

20 U.S.C. § 1087c ....................................................................................... 3

20 U.S.C. § 1087d ....................................................................................... 3

20 U.S.C. § 1087e. ............................................................. 3, 4, 13, 14, 15, 16, 18

20 U.S.C. § 1087j ....................................................................................... 3

20 U.S.C. § 1094 ................................................................................................ 3

20 U.S.C. § 1098d–f ........................................................................................... 3

Higher Education Amendments of 1992, Pub. L. 102–325, 106 Stat. 817 ............................ 15, 16

Student Loan Reform Act of 1993, Pub. L. 103–66, 107 Stat. 351 ................................ 4

**Federal Notices, Regulations, and Rules**

Current Regulations:

16 C.F.R. § 433.2 ................................................................................................ 18

34 C.F.R. § 685.214 ........................................................................................... 12
34 C.F.R. § 685.300 ........................................................................................... 12
34 C.F.R. § 685.401 ....................................................................................... 10, 11
34 C.F.R. § 685.402 ........................................................................................... 11
34 C.F.R. § 685.406 ........................................................................................... 11
34 C.F.R. § 685.407 ........................................................................................... 11
34 C.F.R. § 685.409 ....................................................................................... 11, 12

Historical Regulations:

34 C.F.R. § 685.206 (1994) ............................................................................... 5
34 C.F.R. § 685.213 (1994) ............................................................................... 6

34 C.F.R. § 685.206 (2016) ............................................................................... 7
34 C.F.R. § 685.214 (2016) ............................................................................... 7
34 C.F.R. § 685.222 (2016) ............................................................................... 7
34 C.F.R. § 685.300 (2016) ............................................................................... 7

34 C.F.R. § 685.205 (2019) ............................................................................... 8
34 C.F.R. § 685.206 (2019) ............................................................................ 8, 9
34 C.F.R. § 685.214 (2019) ............................................................................... 9

U.S. Department of Education, Notice of Proposed Rulemaking, Federal Direct Student Loan
    Program, 59 Fed. Reg. 42646 (Aug. 18, 1994) ........................................................... 4

U.S. Department of Education, Final Rule, William D. Ford Federal Direct Loan Program,
    59 Fed. Reg. 61664 (Dec. 1, 1994) .................................................................... 4, 5

U.S. Department of Education, Notice, Office of Postsecondary Education,
    60 Fed. Reg. 37768 (July 21, 1995) ................................................................. 17, 18

U.S. Department of Education, Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39330 (June 16, 2016) ................................... 4

U.S. Department of Education, Final Regulations, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926 (Nov. 1, 2016) ................................. 6, 7, 17, 18

U.S. Department of Education, Final Rule, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49788 (Sept. 23, 2019) ................. ...................... 8, 9, 16

U.S. Department of Education, Final Regulations, Institutional Eligibility Under the Higher Education Act of 1965, as Amended, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 65904 (Nov. 1, 2022) .......................................... 9, 10, 11, 12, 16

**Other Authorities**

*Defend*, Webster's II New Riverside University Dictionary (1994) ............................................. 14

*Defense*, Black's Law Dictionary (6th ed. 1990) ........................................................................ 14

Federal Trade Commission Opinion Letter, May 3, 2012, https://www.ftc.gov/system/files/documents/advisory_opinions/16-c.f.r.part-433-federal-trade-commission-trade-regulation-rule-concerning-preservation-consumers-claims/120510advisoryopinionholderrule.pdf ...................................................................... 18

H.R. Rep. No. 103-111 (1993) ..................................................................................... 16, 18

Project on Predatory Student Lending at the Legal Services Center of Harvard Law School, Comment Letter on Proposed Rule (Aug. 2, 2018), *available at* https://www.regulations.gov/comment/ED-2018-OPE-0027-0011. ................................... 5, 17

Master Promissory Note, Direct Subsidized Loans and Direct Unsubsidized Loans, William D. Ford Federal Direct Loan Program, OMB Form No. 1845-0007 (exp. July 31, 2022), *available at* https://studentaid.gov/sites/default/files/Sub_Unsub_MPN_508-en-us.pdf ....... 19

U.S. Department of Education, *FY 2022 Annual Report* (2023), https://www2.ed.gov/about/reports/annual/2022report/fsa-report.pdf ....................................... 3

**INTERESTS OF AMICI CURIAE**

Amici curiae are two organizations that, among other things, advocate for the interests of student borrowers. Amici submit this brief to support the Department of Education's Borrower Defense Rule, which implements borrowers' statutory entitlement to relief from loan debt due to misconduct by predatory schools.

Public Citizen is a nonprofit consumer advocacy organization with members in all 50 states. Public Citizen appears on behalf of its members before Congress, administrative agencies, and the courts on a wide range of issues involving protection of consumers and workers, public health and safety, and maintaining openness and integrity in government. Public Citizen submitted comments in the Department of Education's 2022 rulemaking at issue here.

The Project on Predatory Student Lending is a nonprofit organization whose mission is to remove barriers to education, training, and occupation for individuals by representing the legal interests of students against predatory practices in higher education and student lending. Since 2012, the Project has represented over one million students across the country, winning landmark cases to protect borrower rights, recover money owed, and cancel fraudulent debt. The Project submitted comments in the Department of Education's 2022 rulemaking at issue here.

**INTRODUCTION**

The Higher Education Act provides students who have been harmed by predatory schools with a defense against repayment of their federal student loan debt, known as a "borrower defense" to repayment. This defense against repayment is vital to ensuring that student borrowers are not saddled with insurmountable debt in exchange for educational programs of little or no value. The borrower defense process is particularly important in light of revelations that some for-profit

colleges and universities have misled and deceived vulnerable students, causing them to take out federal student loans to attend programs without value.

In November 2022, the Department of Education finalized its current rule on borrower defense. The 2022 Rule amends the Department's prior regulations to improve its administration of the borrower defense process and the ability of eligible borrowers to access relief. Five months later, plaintiff Career Colleges & Schools of Texas (CCST) moved to preliminarily enjoin implementation of the rule. Contrary to CCST's assertions, the 2022 Borrower Defense Rule has nothing to do with the Biden Administration's student debt relief plan, and it is not a "breathtaking" assertion of authority. Instead, in the 2022 Rule, the Department exercised its expressly delegated authority to promulgate regulations governing borrower defense to repayment, as the Department has done multiple times over nearly three decades. Indeed, many of the provisions challenged by CCST are not new to the 2022 Rule. Like the prior versions of the Department's borrower defense rule, the 2022 Rule permits the Department to provide relief based on the borrower's assertion of the defense to repayment in an "affirmative" claim—that is, before any loan default. As explained below, the plain meaning of the statutory text supports the availability of borrower defense relief based on such claims. Because CCST is not likely to succeed on the merits of its claims, its motion for preliminary injunction should be denied.

## BACKGROUND

### I.    Statutory Framework

Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070 *et seq.*, is the largest stream of federal postsecondary education funding. Under Title IV, the Secretary of Education is empowered "to assist in making available the benefits of postsecondary education to eligible students . . . in institutions of higher education." *Id.* § 1070(a). To that end, Congress directed the

2

Secretary to "carry out programs to achieve [this] purpose[]," *id.* § 1070(b), including the William D. Ford Federal Direct Loan Program (Direct Loan Program), which allows students who attend participating schools to obtain direct loans from the federal government. 20 U.S.C., ch. 28, subch. IV, part D. The Direct Loan Program is the largest Title IV program; in 2022 alone, more than $83 billion in aid was disbursed to students under this program. U.S. Dep't of Ed., *FY 2022 Annual Report* 15 (2023), https://www2.ed.gov/about/reports/annual/2022report/fsa-report.pdf.

Since Title IV's enactment in 1965, Congress has directed the Secretary to ensure that schools receiving Title IV funds meet various eligibility and participation requirements. For example, to be eligible for Title IV funds, schools must execute "program participation agreements" (PPAs) with the Secretary that require that schools comply with the Title IV statutes, implementing regulations, and applicable state laws. 20 U.S.C. §§ 1094, 1087c(a). The Secretary is authorized to include terms in these agreements that the Secretary "determines are necessary to protect the interests of the United States and to promote the purposes of" the Direct Loan Program. *Id.* § 1087d(a)(6). Further, the Secretary is directed to "prescribe such regulations as may be necessary" to ensure that participating schools are financially responsible. *Id.* § 1094(c)(1). The Secretary is also authorized to levy civil penalties on schools found to have engaged in misrepresentations. *Id.* § 1094(c)(3)(B).

Title IV also authorizes the Secretary to discharge debts incurred from Title IV loans for various reasons. For example, borrowers with certain income levels or employment, or who have served in the military, may have their Title IV loan amounts discharged or deferred by the Secretary. *See, e.g.*, *id.* §§ 1098d–f, 1087j, 1087e(f).

In addition, Congress authorized the Secretary's discharge of Title IV loan amounts based on actions by the Title IV-participating school attended by the student borrower. First, since the

3

inception of the Direct Loan Program in 1993, Congress has directed the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part." Student Loan Reform Act of 1993, Pub. L. 103–66, 107 Stat. 351 (codified at 20 U.S.C. § 1087e(h) (the borrower defense statute)). This statute also provides for the Secretary's refund of money that the borrower already paid in repayment of the loan—specifying that "in no event may a borrower recover from the Secretary" more than "the amount such borrower has repaid." *Id.* Second, the Secretary is authorized to discharge Title IV loans when a student is "unable to complete the program in which such student is enrolled due to the closure of the institution." 20 U.S.C. § 1087(c)(1) (the closed school discharge statute).

## II.     Regulatory History

### A.  The 1994 Rule

In 1994, following the establishment of the Direct Loan Program, the Department promulgated regulations explaining the circumstances where a borrower "may request that the Secretary exercise his long-standing authority to relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school." Notice of Proposed Rulemaking, Federal Direct Student Loan Program, 59 Fed. Reg. 42646, 42649 (Aug. 18, 1994). The 1994 regulations implemented both the borrower defense statute, 20 U.S.C. § 1087e(h), and the closed school discharge statute, 20 U.S.C. § 1087(c)(1). *See* Final Rule, William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61664 (Dec. 1, 1994) (1994 Rule). Although initially intended only to serve as a placeholder, the 1994 Rule remained in place for two decades. *See* Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program,

and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39330, 39335 (June 16, 2016).

*Borrower defense.* Under the 1994 Rule, borrowers could assert, "as a defense against repayment, any act or omission of the school attended by the [borrower] that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1) (1994). The defense could be invoked in a range of proceedings, including, "but [] not limited to," "[t]ax refund offset proceedings," "[w]age garnishment proceedings," "[s]alary offset proceedings," and "[c]redit bureau reporting proceedings." *Id.* The 1994 Rule provided a framework for the Department to "adjudicate[e] claims by borrowers that have a defense against repayment of a loan." 59 Fed. Reg. 61664, 61671. If the borrower's defense against repayment was successful, the borrower's obligation to repay the loan was discharged. 34 C.F.R. § 685.206(c) (1994).

The 1994 Rule did not contain an express provision stating whether borrowers were permitted to assert the defense to repayment before the loan was in default (affirmative claims), or if the defense to repayment was available only in post-default collection proceedings (defensive claims). The Department's practice, however, was to discharge or reduce loan obligations in both circumstances. *See Vara v. DeVos*, 2020 WL 3489679, at *4 (D. Mass. June 25, 2020) (citing examples where the Department granted affirmative claims under the 1994 Rule); Project on Predatory Student Lending at the Legal Services Center of Harvard Law School, Comment Letter on Proposed Rule (Aug. 2, 2018), *available at* https://www.regulations.gov/comment/ED-2018-OPE-0027-0011.

*Closed school discharge.* The 1994 Rule also set criteria for closed school discharges. The rule provided for the discharge of loans if the student "did not complete the program of study for which the loan was made because the school at which the . . . borrower (or student) was enrolled

5

closed." 34 C.F.R. § 685.213(a)(1) (1994). The rule defined "school" as the "main campus or any location or branch," *id.* § 685.213(a)(2)(ii), and the school's "closure date" as "the date that the school ceases to provide educational instruction in all programs, as determined by the Secretary," *id.* § 685.213(a)(2)(i).

### B.  The 2016 Rule

The 2015 collapse of Corinthian Colleges and revelations of widespread misconduct by Corinthian led to a surge of borrower defense claims. *See* Final Regulations, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926, 76047 (Nov. 1, 2016) (2016 Rule). The Department's experience with these claims highlighted difficulties in application and interpretation of the 1994 Rule and "the lack of clarity" surrounding the procedures that apply for borrower defense. *Id.* The Department therefore amended its borrower defense regulations "to establish a more accessible and consistent borrower defense standard and clarify and streamline the borrower defense process to protect borrowers and improve the Department's ability to hold schools accountable for actions and omissions that result in loan discharges." *Id.* at 75926. The rule was promulgated in November 2016 and took effect in October 2018. *See Vara*, 2020 WL 3489679, at *6. The 2016 Rule had several key parts, only some of which are described here.

***Substantive borrower-defense standard****:* Whereas the 1994 Rule tied a borrower's defense to state law, the 2016 Rule provided that a borrower had a defense to repayment if (1) her school "made a substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower" attended or took out a Direct Loan, (2) her school "failed to perform its obligations under the terms of a contract with" her, or (3) the borrower obtained a "nondefault,

favorable contested judgment [against her school] based on State or Federal law." 81 Fed. Reg. 75926, 76083 (34 C.F.R. § 685.222(b)–(d) (2016)).

   ***Borrower-defense claim procedure.***   In the 2016 Rule, the Department codified its longstanding practice that borrowers could raise a defense to repayment in both affirmative and defensive claims. *See id.* at 75956; 34 C.F.R. § 685.206(c) (2016). The regulations also addressed the evidentiary standards that borrowers needed to satisfy, and the process by which claims would be adjudicated. *See id.* at 76083 (34 C.F.R. § 685.222(a)(2) (2016)).

   ***Recoupment from schools.*** The 2016 Rule codified the Department's practice, "from the inception of the Direct Loan Program," of recouping funds from schools that were "liable for losses incurred through borrower defenses." *Id.* at 75931; 34 C.F.R. § 685.206 (2016). The 2016 Rule set a limitations period for the Secretary's initiation of recoupment proceedings, 81 Fed. Reg. 75926, 76080 (34 C.F.R. § 685.206(c)(3) (2016)), though it provided that no limitations period applied if the school received notice within a certain time frame, *id.* (34 C.F.R. § 685.206(c)(4) (2016)).

   ***Predispute arbitration clauses and class action waivers.*** The 2016 Rule added requirements to PPAs that prohibited participating schools from invoking predispute arbitration agreements and predispute class action waivers with respect to any part of a borrower defense claim. *Id.* at 76087 (34 C.F.R. § 685.300(e)–(f) (2016)).

   ***Closed school discharges.*** The 2016 Rule retained the same definitions for "closure date" and "school" provided in the 1994 Rule. However, the 2016 Rule updated the procedures for obtaining closed school discharges. *See id.* at 76081 (34 C.F.R. § 685.214 (2016)). In addition, it provided "automatic" loan discharges for certain borrowers who did not re-enroll in a Title IV-participating institution, without need for the borrower to file an application. *Id.* (34 C.F.R. § 685.214(c)(2) (2016)).

### C.  The 2019 Rule

In 2019, the Department changed the rules applicable to borrower defenses to repayment and closed school discharges again. *See* Final Rule, Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49788 (Sept. 23, 2019) (2019 Rule). Again, some of these changes are described here.

***Substantive borrower-defense standard****:* The 2019 Rule created a new federal standard that limited relief to situations where a borrower was "financially harmed" by a "misrepresentation." *Id.* at 49926 (34 C.F.R. § 685.205I(2) (2019)). The rule defined "misrepresentation" as a:

> statement, act, or omission by an eligible school to a borrower that is false, misleading, or deceptive; that was made with knowledge of its false, misleading, or deceptive nature or with a reckless disregard for the truth; and that directly and clearly relates to enrollment or continuing enrollment at the institution or the provision of educational services for which the loan was made.

*Id.* at 49927 (34 C.F.R. § 685.205(e)(3) (2019)).

***Borrower-defense claim procedure.*** The 2019 Rule made several changes to the procedure by which borrowers could seek borrower defense relief, including by imposing new evidentiary requirements and eliminating provisions allowing the Department to adjudicate claims on a group-wide basis. *See id.* at 49799–800; 34 C.F.R. § 685.206(e)(3)–(4), (8) (2019). Notably, the Department declined to restrict the availability of relief to post-default defensive claims, as it had initially proposed. *See* 84 Fed. Reg. 49788, 49796. Rather, the Department acknowledged that it had approved affirmative claims since the 1994 Rule, and it emphasized its "broad statutory authority" "to establish the procedures for receipt and adjudication of borrower claims—including the type of proceeding through which the Department may consider such a claim." *Id.* In addition, the Department explained that requiring a defaulted loan for a borrower defense claim would result in "negative consequences for the borrower" because it would incentivize borrowers to default. *Id.*

***Recoupment from schools***. Like the 2016 Rule, the 2019 Rule provided that the Secretary could initiate proceedings to recoup from schools the loan amounts discharged due to a successful borrower defense claim. *Id.* at 49929 (34 C.F.R. § 685.206(e)(16) (2019)). The 2019 Rule, however, amended the limitations period to five years from the date of the Secretary's decision on the borrower defense claim. *Id.*

***Predispute arbitration clauses and class action waivers.*** The 2019 Rule loosened conditions on the use of forced arbitration clauses and class action waivers, allowing participating schools to rely on such clauses but requiring certain disclosures by the schools. *See id.* at 49788, 49839–46.

***Closed school discharges***. The 2019 Rule employed the same definitions of "closure date" and "school" that are set forth in the prior rules, but it revised some of the procedures governing closed school discharges. For example, it cut back the prior rule's provision of "automatic" closed school discharges, without the submission of an application by the borrower, by limiting the provision of automatic discharges to schools that closed between November 2013 and July 2020. *See id.* at 49848 (34 C.F.R. § 685.214(c)(3)(ii) (2019)).

### D.  The 2022 Rule

In November 2022, the Department finalized a new rule with an effective date of July 1, 2023. Final Regulations, Institutional Eligibility Under the Higher Education Act of 1965, as Amended, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 65904 (Nov. 1, 2022) (2022 Rule). With limited exceptions, the Rule applies to all borrower defense claims pending on or received on or after the Rule's effective date. *Id.* at 65904. The 2022 Rule has several key provisions.

*Substantive borrower-defense standard.* The 2022 Rule jettisoned the 2019 Rule's narrow standard of "misrepresentation." Instead, the 2022 Rule provides a defense to repayment where, to a borrower's "detriment," a school committed "actionable act[s] or omission[s]," defined as any of the following: (1) "a substantial misrepresentation . . . that misled the borrower"; (2) "a substantial omission of fact"; (3) breach of contract with the student; (4) "aggressive and deceptive recruitment conduct or tactics"; or (5) (i) an adverse judgment or (ii) final Secretarial action based on the conduct described in categories (1)–(4). *Id.* at 66068–69 (34 C.F.R. § 685.401(b)(1)–(5)). Under the 2022 Rule, a borrower will not need to show a school's intent or knowledge to mislead, as was required under the 2016 Rule. *See id.* at 65921.

In addition, for borrowers requesting the Secretary's reconsideration of claims involving loans disbursed prior to July 1, 2017, the 2022 Rule maintains the preexisting standard that applied to those loans. *See id.* at 66069 (34 C.F.R. § 685.401(c)). Under that standard, which was set forth in the 1994 Rule, borrowers have a defense to repayment if the school's conduct "would give rise to a cause of action against the school under applicable State law." *Id.*

*Borrower-defense claim procedure.* Like all preceding iterations of the rule, the 2022 Rule permits the Department's consideration of both affirmative and defensive claims asserting the defense to repayment. *See id.* at 65914. For example, the 2022 Rule provides that the Department may award different forms of relief, including a specific kind of relief "[f]or borrowers in default" as well as other kinds of relief that do not require a defaulted loan (e.g., cancelling "all amounts owed to the Secretary" and "[r]eimburs[ing] . . . all payments previously made"). *Id.* at 66068 (34 C.F.R. § 685.401(a)). In addition, the Rule's substantive standard permits borrowers without defaulted loans to invoke the defense to repayment. *Id.* (34 C.F.R. § 685.401(b) (providing that a

borrower "with a balance due on a covered loan" has a defense to repayment "if at any time" the Department concludes the standard is satisfied)).

The 2022 Rule, however, amended the process for the Department's adjudication of claims, including by imposing a deadline for the Secretary's decision on a borrower defense claim, *see id.* at 66072 (34 C.F.R. § 685.406(g)), and by permitting reconsideration of the Secretary's decision on specified grounds, *id.* (34 C.F.R. § 685.407). In addition, the 2022 Rule restored the ability for the Department to adjudicate claims on a group-wide basis. *See id.* at 66069–70 (34 C.F.R. § 685.402), 66071–72 (34 C.F.R. § 685.406(b)). For group claims, the 2022 Rule provides that if the Department determines that one member of the group may have a successful claim, then there is a "rebuttable presumption" that the circumstances giving rise to the successful claim are also applicable to "each member of the group." *Id.* at 66071 (34 C.F.R. § 685.406(b)(2)).

For borrowers who attended closed schools and otherwise establish a claim to relief, the 2022 Rule also provides a "rebuttable presumption" that those borrowers have suffered "detriment" warranting borrower defense relief. *Id.* at 66069 (34 C.F.R. § 685.401(e)).

***Full discharge of successful claims.*** The 2022 Rule provides that for all borrower defense claims that are approved, remaining loan balances will be discharged in full and amounts paid to the Department will be refunded. *Id.* at 66068 (34 C.F.R. § 685.401(a) (defining "[b]orrower defense to repayment")).

***Recoupment from schools.*** The 2022 Rule provides additional clarity on the process for the Department's recoupment proceedings against schools, including by specifying conditions where the Secretary "may choose not to collect from the school," *id.* at 66072 (34 C.F.R. § 685.409(a)(2)), and expressly tethering the school's liability in a recoupment action to the borrower defense standard in effect at the time of the school's misconduct, *id.* (34 C.F.R.

§ 685.409(b)); *see also id.* at 65915 ("Institutions will only be subject to recoupment actions for claims that would be approved under the standard in place at the time the act or omission occurred."). In addition, the 2022 Rule increases the limitations period for recoupment actions to six years "after the borrower's last date of attendance" at the school, except in certain circumstances where the limitations period "will not apply" at all. *Id.* at 66072–73 (34 C.F.R. § 685.409(c)(1)–(2)).

   ***Pre-dispute arbitration clauses and class action waivers.*** The 2022 Rule restores the prohibitions on the use of pre-dispute mandatory arbitration agreements and class action waivers that had existed under the 2016 Rule. *See id.* at 66066–67 (34 C.F.R. § 685.300(e)–(f)).

   ***Closed school discharges***. The 2022 Rule defines "school" as "a school's main campus or any location or branch of the main campus," *id.* at 66060 (34 C.F.R. § 685.214(a)(2)(ii)), as did the prior rules. In addition, like the previous rules, the 2022 Rule provides that the school's "closure date" is "determined by the Secretary" and pegs that date to when "the school ceased to provide educational instruction." *Id.* (34 C.F.R. § 685.214(a)(2)(i)). The 2022 Rule, however, amends the definition of "closure date" to mean the "earlier of": "the date . . . that the school ceased to provide educational instruction in programs in which most students at the school were enrolled," or (ii) "a date . . . that reflects when the school ceased to provide educational instruction for all of its students." *Id.*

   The 2022 Rule also restores the 2016 Rule's process for the automatic closed-school discharge of a loan without a borrower application. *Id.* at 66060–61 (34 C.F.R. § 685.214(c)).

## ARGUMENT

   CCST's motion for a preliminary injunction should be denied. Although amici believe that the Department should prevail on every prong of the test for preliminary injunction, this brief

addresses only the first prong: CCST is not likely to prevail on the merits of its claims that the 2022 Rule exceeds the Department's authority under the Higher Education Act. The Department's regulations providing relief based on both affirmative and defensive claims reflect the plain and unambiguous meaning of the statutory text.

"Statutory interpretation . . . begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). If the "statutory text is plain and unambiguous," the court "must apply the statute according to its terms." *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 622 (5th Cir. 2013) (citation omitted). In such circumstances, "the intent of Congress is clear, and 'that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress.'" *Chamber of Com. of United States of Am. v. U.S. Dep't of Lab.*, 885 F.3d 360, 369 (5th Cir. 2018). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Asadi*, 720 F.3d at 622 (citation omitted); *see also Ramos-Portillo v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019) (similar). "If the statute is unambiguous, then the 'judicial inquiry is complete.'" *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 374–75 (5th Cir. 2018). If the statutory text, however, is ambiguous, the court may "consider the relevant legislative history to shed light on the intent of Congress." *Rainbow Gun Club, Inc. v. Denbury Onshore, LLC*, 760 F.3d 405, 410 (5th Cir. 2014).

**A.** The Higher Education Act unambiguously authorizes the Secretary to entertain assertions of the defense to repayment whenever the borrower is repaying the loan, regardless of whether the loan has defaulted. The statute directs the Secretary to define "which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan." 20 U.S.C § 1087e(h). The statute does not contain any language limiting the circumstances where

the defense is available. Rather, the statute's plain language recognizes a defense that can be raised any time a borrower seeks to avoid "repayment of a loan." *Id.*

Contrary to CCST's assertion, the phrase "defense to repayment" does not require an "adversarial proceeding"; a defense to repayment may be asserted outside the confines of an administrative proceeding to collect a defaulted student loan. According to dictionaries from around the time when the statute was enacted, the term "defense" means a substantive basis to discharge a legal obligation. For example, Black's Law Dictionary defines "defense" in the context of a commercial instrument (similar to the promissory notes at issue in this context) as "a legally recognized basis for avoiding liability either on the instrument itself or on the obligation underlying the instrument." *Defense*, Black's Law Dictionary (6th ed. 1990). Similarly, Webster's dictionary defines "defend" as "[t]o contest (a legal action *or claim*)." *Defend*, Webster's II New Riverside University Dictionary (1994) (emphasis added). Thus, under the ordinary meaning of the statutory text, when a borrower contests liability on a debt owed under her student loan, she is "assert[ing] . . . a defense to repayment of a loan."

The "except" clause of the statutory provision confirms that Congress contemplated the assertion of borrower defenses in contexts other than post-default collection proceedings. After providing that the borrower may assert "a defense to repayment of a loan," the statute places a cap on the borrower's recovery. Specifically, the statute provides that "a borrower may assert . . . a defense to repayment of a loan . . . *, except that* in no event may a borrower recover from the Secretary, *in any action arising from or relating to a loan* made under this part, an amount in excess of the amount such borrower has repaid on such loan." 20 U.S.C. § 1087e(h) (emphases added). By recognizing that a borrower defense may be invoked in "any action arising from or relating to a loan," *id.*, Congress provided that such defenses could be invoked, not only in collection

proceedings, but in *any* actions relating to a loan. A construction of the statute limiting the borrower defense to collection proceedings would render superfluous the "or relating to" language of the statute because collection proceedings are always actions "arising from" a loan. *Cf. Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 294 (5th Cir. 2020) ("One of the most basic interpretive canons is that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (cleaned up and citation omitted)).

Providing useful context to the meaning of "defense to repayment" in subsection (h), other subsections of section 1087e set forth the terms governing the borrower's "repayment" of a loan. *See, e.g.*, 20 U.S.C. § 1087e(b)(9) ("Repayment incentives"); *id.* § 1087e(d) ("Repayment plans"); *id.* § 1087e(e) ("Income contingent repayment"). Those subsections make clear that "repayment" includes the borrower's ongoing repayment of a loan and is not limited to repayment following loan default. For example, the statute's provision for loan "[r]epayment plans" identifies five kinds of repayment plans, *id.* § 1087e(d)(1)(A)–(E), as well as "[a]lternative repayment plans" provided on a "a case by case basis," *id.* § 1087e(d)(4), before containing a specific provision governing "[r]epayment after default," *id.* § 1087e(d)(5). The statutory reference to "defense to repayment" is not qualified or cabined to "repayment after default," and can be invoked prior to default.

The history and purpose of the statute confirm the text's plain meaning. The year before Congress enacted the borrower defense provision, it used the phrase "defense[] against repayment" in the Higher Education Amendments of 1992. There, Congress directed the Secretary to conduct a "[s]tudy of the impact of fraud-based defenses on the Federal Family Education Loan Program." Higher Education Amendments of 1992, Pub. L. 102–325, § 1403(a), 106 Stat. 817. That study was to include, among other things:

> (1) an analysis of statutory, regulatory, and case law regarding the use of fraud-based *defenses against repayment* of such loans; (2) an estimate of the total number

of borrowers filing for relief from repayment of such loans using a fraud-based
defense and amount of such loan principal involved; (3) an estimate of such loan
principal relieved annually through fraud-based defenses.

*Id.* (emphasis added).  The phrase "borrowers filing for relief from repayment . . . using a fraud-based defense" clearly contemplates the borrower's assertion of the defense in "affirmative" claims, because the borrower's "filing for relief" is an affirmative invocation by the borrower of the defense. *Id.* § 1403(a)(2).

When Congress enacted the borrower defense provision the following year in the Student Loan Reform Act of 1993, it employed a near-identical phrase, requiring the Secretary to establish regulations providing for "defense[s] to repayment." 20 U.S.C. § 1087e(h). Because "Congress is presumed to have acted against a background of shared understanding of the terms it uses in statutes," *Chamber of Com. of United States of Am.*, 885 F.3d at 373, Congress's use of the phrase "defense to repayment" incorporates the same meaning as the analogous phrase in the Higher Education Act Amendments, which encompassed assertions of the defense in affirmative claims.

In addition, Congress's purpose in making "loan repayment . . . less burdensome" and thereby "encourag[ing] students to seek postsecondary education" supports the statute's plain meaning—and the 2022 Rule. H.R. Rep. No. 103-111, at 107 (1993). Congress intended to provide borrowers with "flexibility in managing their student loan repayment obligations," *id.* at 112, including by providing repayment plans that "would likely discourage defaults," *id.* at 107. Restricting the borrower defense to post-default collection proceedings would run contrary to this purpose by incentivizing borrowers to default on their loans so as to trigger the availability of the defense, resulting in "negative consequences for the borrower." 84 Fed. Reg. 49788, 49796; *see also* 87 Fed. Reg. 65904, 65914 (requiring loan default is "illogical" because it "would place borrowers in an unfair situation of either intentionally defaulting in the hopes that a claim is successful or repaying a loan that potentially should be discharged," and it would "inadvertently

hurt[]" schools required to "keep their default rates below certain thresholds established in statute and regulations").

**B.** In every iteration of the borrower defense rule, across multiple administrations, the Department has construed the statute to include affirmative claims. As a district court explained when it held that the Department was required to process affirmative claims under the 1995 Rule:

> Education's 1995 interpretation . . . provides that Direct Loan borrowers "may present [their] arguments to . . . the Department during the collection process," not just during debt collection proceedings. 60 Fed. Reg. 37,768, 37,770 (July 21, 1995). Since then, Education has repeatedly "explained [that] the Direct Loan borrower defense regulations were intended to . . . allow[ ] borrowers to assert both claims and defenses to repayment, without regard as to whether such claims or defenses could only be brought in the context of debt collection proceedings." 81 Fed. Reg. 75,926, 75,956 (Nov. 1, 2016) (noting that this interpretation was first "explained by the Department in 1995" shortly after the borrower defense regulation was initially promulgated). Just last year, the agency reiterated this interpretation.

*Vara*, 2020 WL 3489679, at *4 (alterations, but not omissions, in original).

Likewise, "[i]n October 1998, the Department applied the borrower defense regulation affirmatively to reduce the loan obligations of borrowers who were owed money by a closed school." Project on Predatory Student Lending at the Legal Services Center of Harvard Law School, *supra*, at 2 (attaching documentation of the Department's acceptance of affirmative claims). In 2000, 2001, and 2003, the Department's Office of General Counsel recommended the discharge of Direct Loans based on affirmative claims submitted by borrowers. *Id.* (same); *see also Vara*, 2020 WL 3489679, at *4. And in 2016, the Department granted "full loan discharges" to approximately 3,850 borrowers who attended the American Career Institute based on an affirmative application submitted by the Massachusetts Attorney General's office. *Vara*, 2020 WL 3489679, at *6. Notably, in light of the Department's longstanding practice, Congress has amended

20 U.S.C. § 1087e numerous times without substantively disturbing the borrower defense provision set forth in subsection (h).[1]

Moreover, the Department's authority is confirmed by Congress's directive that Direct Loan program loans shall "have the same terms, conditions, and benefits" as Federal Family Education Loan program (FFEL) loans. 20 U.S.C. § 1087b(2); *see also* H.R. Rep. No. 103-111, at 119; 81 Fed. Reg. 75926, 75956 (citing 60 Fed. Reg. 37768, 37769–70). Although new FFEL loans are no longer issued, the FFEL master promissory note provides that any lender holding a student loan is "subject to all the claims and defenses that [the borrower] could assert against the school with respect to [the] loan." 81 Fed. Reg. 75926, 75956 (quoting FFEL master promissory note provision). This loan term "was adapted from a similar contract provision . . . known as the Holder Rule, required by the Federal Trade Commission (FTC) in certain credit contracts." *Id.* at 75956 n.25.[2] Under the Holder Rule, a consumer can assert a seller's misconduct in both defensive and affirmative claims, with "no limits on a consumer's right to an affirmative recovery other than limiting recovery to a refund of monies paid under the contract." FTC Opinion Letter, May 3,

---

[1] *See, e.g.*, Pub. L. 117-200, Oct. 11, 2022, 136 Stat. 2219; Pub. L. 116-259, Dec. 23, 2020, 134 Stat. 1163; Pub. L. 116-91, Dec. 19, 2019, 133 Stat. 1192; Pub. L. 115-245, Sept. 28, 2018, 132 Stat. 3105; Pub. L. 114-328, Dec. 23, 2016, 130 Stat. 2160; Pub. L. 113-28, Aug. 9, 2013, 127 Stat. 506; Pub. L. 112-141, July 6, 2012, 126 Stat. 979; Pub. L. 112-25, Aug. 2, 2011, 125 Stat. 266; Pub. L. 111-152, 124 Stat. 1078; Pub. L. 111-39, July 1, 2009, 123 Stat. 1946; Pub. L. 110-315, Aug. 14, 2008, 122 Stat. 3089, 3234, 3261; Pub. L. 110-84, Sept. 27, 2007, 121 Stat. 791, 795, 800; Pub. L. 109-171, Feb. 8, 2006, 120 Stat. 160, 162 to 164; Pub. L. 107-139, Feb. 8, 2002, 116 Stat. 9; Pub. L. 107-314, Dec. 2, 2002, 116 Stat. 2580; Pub. L. 106-554, Dec. 21, 2000, 114 Stat. 2763, 2763A-49; Pub. L. 105-244, Oct. 7, 1998, 112 Stat. 1652, 1715 to 1717; Pub. L. 105-178, June 9, 1998, 112 Stat. 498.

[2] The Holder Rule, 16 C.F.R. § 433.2, requires that sellers include in consumer credit contracts the following notice: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder" (formatting modified).

2012, https://www.ftc.gov/system/files/documents/advisory_opinions/16-c.f.r.part-433-federal-trade-commission-trade-regulation-rule-concerning-preservation-consumers-claims/120510advisoryopinionholderrule.pdf. The Department has consistently construed the FFEL provision the same way. *See, e.g.*, 81 Fed. Reg. 75926, 75956 (citing Dep't of Ed., Dear Colleague Letter Gen 95-8 (Jan. 1995)). Given Congress's directive that FFEL and Direct Loans have the same terms, conditions, and benefits, the Department's interpretation of the borrower-defense statute as likewise encompassing affirmative claims is reasonable.

The contractual provisions governing Direct Loans also support the Department's authority to issue the 2022 Rule. The Direct Loan Master Promissory Note states, under the heading "Discharge (having your loan forgiven)," "[if] you meet certain conditions, as described below, we may discharge (forgive) some or all of your loans." Master Promissory Note, Direct Subsidized Loans and Direct Unsubsidized Loans, William D. Ford Federal Direct Loan Program, OMB Form No. 1845-0007 (exp. July 31, 2022), at 12, *available at* https://studentaid.gov/sites/default/files/Sub_Unsub_MPN_508-en-us.pdf. One of those conditions, under the subheading "[b]orrower defense to repayment," provides that the Department "may discharge all or a portion of your loan if your school did something or failed to do something related to your loan or to the educational services that the loan was intended to pay for." *Id.* at 13. No additional condition requires the loan to have defaulted for it to be "discharge[d]" or "forgive[n]." *Id.*

The Department's statutory authority to issue the 2022 Borrower Defense Rule is thus well supported by the text, purpose, and history of the statute and the agency's implementation of it. CCST's argument on the merits is thus unlikely to succeed.

## CONCLUSION

For the foregoing reasons, CCST's motion should be denied.

Dated: May 16, 2023

Respectfully submitted,

*/s/ Rebecca C. Eisenbrey*
Rebecca Eisenbrey (TX 24097646)
Project on Predatory Student Lending
769 Centre Street, Ste 166
Jamaica Plain, MA 02130
(617) 390-2669

Wendy Liu (*pro hac vice* motion pending)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Amici Curiae*