IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as the Secretary of Education,<br><br>                Defendants. | Case No. 1:23-cv-00433-RP |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE EXPERT DECLARATION**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

    I.    At The Preliminary Injunction Stage, The Departments' Objections To Ms. Jones's Testimony Pertain (At Most) To The Weight Of The Testimony, Not Its Admissibility. 5

    II.   Even Assuming Defendants' Objections Pertain To Admissibility Under *Daubert*, They Misapply The Law And Misunderstand Ms. Jones's Testimony. .................................... 7

        A.  Ms. Jones is undoubtedly qualified under *Daubert* to testify to the impact of borrower defense regulations on higher education institutions. ................................... 7

        B.  Ms. Jones's testimony about the effect of borrower defense regulations on higher education institutions satisfies *Daubert*. ....................................................... 8

CONCLUSION ....................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Comput. Assocs. Int'l v. Quest Software, Inc.*,
  333 F. Supp. 2d 688 (N.D. Ill. 2004) ........................................................................................6

*Half Price Books, Recs., Mags., Inc. v. Barnesandnoble.com, LLC*,
  No. CIV.A. 302CV2518-G, 2003 WL 23175432 (N.D. Tex. Aug. 15, 2003) ..........................6

*Miller v. City of Cincinnati*,
  709 F. Supp. 2d 605 (S.D. Ohio 2008) ....................................................................................6

*Pipitone v. Biomatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002) ....................................................................................................7

*Sweet v. Cardona*,
  No. 3:19-cv-03674-WHA (N.D. Cal.) ............................................................................. *passim*

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
  806 F. Supp. 2d 942 (W.D. Tex. 2011) ............................................................................1, 5, 6

*United HealthCare Ins. Co. v. AdvancePCS*,
  No. 01-CV-2320, 2002 U.S. Dist. LEXIS 28262 (D. Minn. Mar. 1, 2002) ..............................6

## INTRODUCTION

Diane Jones has "worked extensively on issues relating to the implementation and administration of the Department's regulations regarding borrower defense." Those are not her words in this case; those are her words when the Department itself put Ms. Jones forward to testify as to how its borrower defense regulations worked and would affect regulated parties in *Sweet v. Cardona,* while she was serving as the Principal Deputy Under Secretary, Delegated the Functions and Duties of the Under Secretary, in charge of borrower defense regulations. CCST offers her testimony in this case for the exact same reason: to explain how the Department's borrower defense regulations will affect higher education institutions and their students. These are the same institutions that Ms. Jones regulated as a Department official and at which she has worked during her thirty-year career in higher education. It would be surprising were Ms. Jones able to testify to that subject in defense of the Department, but not against it. Yet, that is the Department's position here.

To reach this result, the Department's Motion ignores the law, misapplies established principles, and fundamentally misunderstands Ms. Jones's testimony.[1] First, the Department mistakenly assumes (without citing a single precedent) that *Daubert* applies in full at the preliminary injunction stage. Yet, courts in this District, in this Circuit, and across the country routinely do not apply *Daubert* as strictly, or even at all, to experts offered at the preliminary injunction stage. *See, e.g.*, *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 956 (W.D. Tex. 2011) (Sparks, J.), *vacated in part on other grounds*, 667 F.3d 570 (5th

---

[1] The Department could have avoided this fundamental misunderstanding had it complied with the local rules and this Court's "meet-and-confer" requirement. *See* W.D. Tex. LCvR 7(G). That failure is yet another reason—beyond its legal and factual errors—to deny the Department's motion.

1

Cir. 2012); *see infra* Section I.  Tellingly, the Department does not cite a single case excluding an expert under *Daubert* at the preliminary injunction stage.  If there were any legitimate objections to Ms. Jones's testimony (which there are not), they would not be pursuant to *Daubert*.

Second, the Department claims that Ms. Jones does not satisfy *Daubert* because she lacks the requisite expertise (notwithstanding the Government's prior reliance on her to testify about such matters) and offers simply legal conclusions without any basis in fact.  This argument fundamentally misunderstands Ms. Jones's testimony.  Ms. Jones is testifying to the effects of the Department's regulations on the higher education institutions that she regulated as a Senate-confirmed official and in which she served over her thirty-year career in higher education.  Those effects, which are highly relevant to the "irreparable harm" element for a preliminary injunction, depend on a review of the regulations themselves (hence her discussion of them in the declaration, which is not a forbidden "legal conclusion") and on an understanding of higher education institutions.  Given her background as regulator and regulated, it is hard to fathom a person more qualified to provide this testimony than Ms. Jones.  Nor is there anything unusual about the facts and methodology underlying this type of testimony in an administrative law case. *See id.*

## BACKGROUND

Diane Jones has worked in higher education for thirty years.  *See* Dkt. No. 25, App-3—4. She served at four different types of higher education institutions, including career education institutions like CCST's member schools in this case, a community college, a four-year public institution, and an Ivy League University.  *Id.* at App-4.  During the Bush Administration, she served as Senate-confirmed Assistant Secretary for Postsecondary Education and as Principal Deputy Under Secretary, Delegated the Functions and Duties of the Under Secretary, during the Trump Administration.  *Id.* at App-3. Critically, Ms. Jones was responsible for assessing the broad,

2

nation-wide effects of borrower defense regulations like those in this case. *Id.*  Based on that experience alone, Ms. Jones has extensive knowledge regarding how borrower defense regulations affect higher education institutions and their students.

Indeed, the Department put forth Ms. Jones to explain to the court in *Sweet v. Cardona* the Department's regulatory efforts regarding borrower defense regulations, including how those regulations differed over time, how they affected institutions and students, and how the Department went about changing the regulations.[2]  Nominally aimed at explaining the Department's delay in processing various borrower defense applications, the twelve-page declaration in *Sweet v. Cardona* describes how Ms. Jones "worked extensively on issues relating to the implementation and administration of the Department's regulations regarding borrower defenses," *id.* at 2, how the 2016 borrower defense regulations "did not reflect an appropriate balance of the responsibilities of the agency to protect taxpayers, and borrowers and to hold institutions accountable" and had "significantly changed the rules for considering borrower defense claims," *id.* at 3-4, how various courts had ruled on the 2016 regulations, *id.* at 3-4, 7, and how the Department "inform[ed] institutions of higher education of their responsibilities" under the various regulations, *id*. at 5, among other issues.

The Department relied heavily on this declaration in *Sweet v. Cardona*.  It defended Ms. Jones and her declaration against plaintiffs' motion to exclude it in that case.  *See* Partial Opp'n to Pls.' Mot. to Suppl. and Complete the Administrative R. and Exclude Defs.' Decls., *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal. Jan. 16, 2020), ECF No. 75.  The Department cited

---

[2] *See* Decl. of Diane Auer Jones, *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal. Nov. 14, 2019) (the "*Sweet* Litigation"), ECF No. 56-3.  For the Court's convenience, a true and correct copy of the declaration filed by the Department in the *Sweet* Litigation and obtained from N.D. Cal. court's PACER system is attached to this Response as <u>Exhibit A</u>.

Ms. Jones's declaration twenty-three times in its motion for summary judgment, *see* Defendants' Notice of Motion and Motion for Summary Judgment, *id.*, ECF No. 63, on issues ranging from the legal status of court cases, *id.* at 4, 9, 19-20, and how the Department's regulations on borrower defense claims work in practice, *id.* at 5, 20, to how the borrower defense regulations have differed over time, *id.* at 10, the use of Department resources, *id.* at 10-12, 20, 23, and how the borrower defense regulations affect student and institutional interests, *id.* at 9, 21-22.

Like the Department in *Sweet v. Cardona*, CCST offers Ms. Jones's testimony to explain how borrower defense regulations work and affect institutions and students. Ms. Jones explained that "[i]t was during my work at a proprietary institution that I came to understand just how difficult and costly it is for schools to respond to a significant change in regulations." App-4. She further explained that the Department's new rule would make it difficult to see "how a school can practicably comply with such a standard, without altogether prohibiting staff and faculty from engaging in open dialogue." App-8. She also stated proprietary schools "do not have the financial means or other resources to withstand the massive liability to which they are undoubtedly exposed" by the Department's new rule and that "if the New Rule is permitted to take effect on July 1, 2023, we will see numerous schools forced to close, unable to defend themselves or their reputations in the face of mass borrower defense claims and an all-or-nothing approach to loan forgiveness." App-10. Although Ms. Jones's declaration for CCST, like her declaration for the Department, discusses the substance of various borrower defense regulations, CCST relied on it to show how the regulations affect schools. *See* Dkt. No. 24, at 7 (citing Ms. Jones in Background Section to establish harm to schools); 22-24 (citing Ms. Jones in discussion of harm). Notably, nowhere does CCST argue that the final rule is unlawful because Ms. Jones says so.

**ARGUMENT**

The motion to exclude the declaration of Ms. Jones (the "Motion") rests on flawed legal premises and misunderstandings of Ms. Jones testimony. First, the Motion mistakenly assumes (without citing any precedent) that *Daubert* applies in full at the preliminary injunction stage. Second, the Motion misunderstands that Ms. Jones is testifying to the immediate harms of the regulation, not its unlawfulness per se.

**I.   At The Preliminary Injunction Stage, The Departments' Objections To Ms. Jones's Testimony Pertain (At Most) To The Weight Of The Testimony, Not Its Admissibility.**

As Judge Sparks explained in *Lakey*, "[a]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Lakey*, 806 F. Supp. 2d at 956, (quoting *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993). "One reason for this relative evidentiary laxity is because '[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Id*. (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "'Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Id*. "In short, '[a] party ... is not required to prove his case in full at a preliminary-injunction hearing.'" *Id*.

In light of these standards, courts in this district, in this circuit, and across the country routinely do not apply *Daubert* as strictly or even at all to experts offered at the preliminary injunction stage. *See Lakey*, 806 F. Supp. 2d at 956; *Half Price Books, Recs., Mags., Inc. v. Barnesandnoble.com, LLC*, No. CIV.A. 302CV2518-G, 2003 WL 23175432, at *1 (N.D. Tex. Aug. 15, 2003) (Fish, C.J.); *Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 620 (S.D. Ohio

2008), *aff'd* 622 F.3d 524 (6th Cir. 2010) ("in deciding the motion for preliminary injunction, the Court finds it unnecessary to strike Weaver's affidavit under Federal Rule of Evidence 702."); *Comput. Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 693 (N.D. Ill. 2004) ("At this stage of the litigation defendants' motion to strike is largely unnecessary as they have the opportunity to challenge or rebut the opinions presented in Hubel's report."); *United HealthCare Ins. Co. v. AdvancePCS*, No. 01-CV-2320, 2002 U.S. Dist. LEXIS 28262, at *18 (D. Minn. Mar. 1, 2002) ("In the context of hearings on Motions for a Preliminary Injunction, it is even more apparent that Daubert, Kumho, and Rule 702 do not require the striking of this Affidavit.").

The decision in *Lakey* is instructive. There, plaintiffs offered three declarations from medical doctors in support of their motion for a preliminary injunction. The defendants moved to strike the declarations for failure to satisfy *Daubert*. The court held that "[t]hese arguments lack merit." 806 F. Supp. 2d at 956. In light of the law discussed above that preliminary injunction procedures are "less formal," the court concluded that the declarations "were properly read and considered by the Court at this stage." *Id.*

The Department does not cite any contrary authority. Indeed, the Department does not cite a single case that excludes an expert under *Daubert* at the preliminary injunction stage, let alone that excludes such an expert regarding irreparable harm in an administrative law challenge. Instead, the Department cites summary judgment or final judgment stage cases in far-flung substantive contexts, from air crashes and medical malpractice to 1983 claims against police and copyright infringement.

In sum, at the preliminary injunction stage, the Department's motion simply is not ripe. To the extent the Department's arguments should be considered at all (and, indeed, they should not

be), they go to the weight that this Court should give Ms. Jones's testimony, not to whether it should be excluded.

## II. Even Assuming Defendants' Objections Pertain To Admissibility Under *Daubert*, They Misapply The Law And Misunderstand Ms. Jones's Testimony.

Even assuming some sort of *Daubert* test should be applied at this point, Defendants' two arguments for excluding Ms. Jones fail.  They misapply the law and also fundamentally misunderstand the nature of her testimony.

### A. Ms. Jones is undoubtedly qualified under *Daubert* to testify to the impact of borrower defense regulations on higher education institutions.

The Department argues (contrary to its prior declaration on behalf of Ms. Jones) that Ms. Jones does not have "the requisite expertise to testify in this case." Mot. at 5-6.  Yet it is well established in this circuit that "the text of Rule 702 expressly contemplates that an expert may be qualified *on the basis of experience*." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (emphasis added).  Here, Ms. Jones is able to testify as to how the borrower defense regulations that she applied while in government and that were applied to her institutions over the course of her career might work and affect regulated parties.  That is exactly the topic for which the Department previously proffered her testimony, based on what was then "extensive" experience. *See supra* at 2-3.  To be sure, the Department purported to claim she testified as a fact witness on that prior occasion (although her testimony there, like here, included the intricacies of various legal cases and regulations).  Yet it is hard to see how what the Department previously supported as "extensive" experience is now somehow "limited political experience," Motion at 6, nor how the Department can ignore Ms. Jones's professional history.

Unable to cite a single case to support the argument that Ms. Jones cannot be qualified based on her experience alone, *see* Motion at 5-6 (citing only generalities from a treatise), the Department erects two straw men arguments.  First, the Department protests that Ms. Jones

7

"purports to be an expert in the relevant federal laws," when she is not a lawyer. *Id.* at 6. But she was not a lawyer when the Department had Ms. Jones testify about the function and practice of the borrower defense framework in *Sweet v. Cardona*. More fundamentally, Ms. Jones does not proclaim to be a legal expert but rather an expert in the effect of borrower defense regulations on higher education institutions of the sort that she both regulated and worked at.

Second, the Motion protests that Ms. Jones's expertise cannot supplant the Department's "expertise . . . as to its own policies." Mot. at 6. That is either a misunderstanding of Ms. Jones's testimony or a dangerous self-aggrandizement. As to the former, Ms. Jones is testifying to the harms that the Department's regulation will impose, not the Department's policy judgments. As to the latter, to the extent that the Department is asserting that Ms. Jones cannot testify to the harm of the Department's regulations because that is within the competence only of Department officials, that assertion would be contrary to any meaningful judicial review.

B. Ms. Jones's testimony about the effect of borrower defense regulations on higher education institutions satisfies *Daubert*.

The Department also takes issue with Ms. Jones's testimony itself. But here it completely misunderstands Ms. Jones's testimony. Ms. Jones is testifying about the harm of the Department's borrower defense regulations on higher education institutions. As Ms. Jones explained, and as is apparent from any fair reading of her declaration, her opinions are (and in fact must be) based on her review of the Department's borrower defense regulations and an application of those regulations to higher education institutions based and her extensive knowledge and experience of those institutions and their behavior. *See* Dkt. No. 25 at App-5. This is the same type of testimony that Judge Sparks accepted in *Lakey*. There, the doctors testified that they had "reviewed House Bill No. 15" in order to ascertain its "requirements," and then, based on their medical experience with abortion practice in medicine, testified that it would could cause doctors to act "to the

8

detriment of patients." Grimes Declaration ¶ 11, *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, No. 1:11-cv-00486-SS (W.D. Tex. June 30, 2011), ECF No. 18-2; *see* Lyerly Declaration ¶ 15, *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, No. 1:11-cv-00486-SS (W.D. Tex. June 30, 2011), ECF No. 18-3 (similar). Here, Ms. Jones is testifying that she "reviewed" the Department's borrower defense regulations before forming opinions, based on her knowledge and experience, that those regulations would injure those institutions by causing them to act in certain ways.

Ignoring this established mode of testimony, the Department first criticizes Ms. Jones by invoking the uncontestable proposition that an expert should offer more than legal conclusions. *See* Mot. at 3-4. The fundamental flaw in this argument is that Ms. Jones does not offer testimony as to whether the Department's regulations violate the APA. Instead, she opines on the effect of the regulations on institutions. That is not the same, for the same reason that the likelihood of success and irreparable harm elements for a preliminary injunction are not co-extensive.

To be sure, to testify to the effects of the regulation, Ms. Jones must describe the regulation and how, as the Department puts it, the current regulation "compares to the 2019 borrower-defense rule." Motion at 3. As a result, her testimony describes changes in due process protections, substantive standards, and procedures, most of which directionally harm schools by exposing them to more liability. But that is no different from what the doctors did in *Lakey*, where they had to describe changes in Texas law, and in fact described it as more restrictive in its requirements, in order to opine on the law's effects on regulated parties. It also is no different from what Ms. Jones did for the Department in *Sweet v. Cardona*, where she analyzed changes in the borrower defense regulation in order to explain how those regulations worked. *See supra* at 2.

9

Next, the Department offers that Ms. Jones does not provide "facts forming a basis for her opinions" and does not include any "specific facts pertaining to any particular schools." Mot. at 4-5. Here, the Department simply misunderstands her testimony and imposes an impossible standard. Ms. Jones's declaration sets out in stunning detail—much to the criticism of the Department in other parts of its argument—an understanding of the substantive requirements of the borrower defense regulations and how higher education institutions will react to those requirements, by changing practices, closing campuses, or other behaviors. *See supra* at 2-5. It does not matter that she does not describe her opinions at the level of particular schools, *i.e.*, that School X will take Y step, or that she does not provide some sort of a "principle or method" to identify particular schools taking particular steps. Mot. at 4. Perhaps that would be required were Ms. Jones providing a class certification opinion intended to identify whether and which class members are harmed in similar ways. But it is no more necessary for her opinion in this case to be appropriate than it was for the doctors in *Lakey* to have to name individual doctors and patients whose behavior would be affected by the Texas law or to annunciate a "principle or method" by which those doctors could be identified.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude Ms. Jones should be denied.

Dated: May 22, 2023

| | |
|---|---|
| /s Philip Vickers | /s Allyson B. Baker |
| Philip Vickers | Allyson B. Baker (*pro hac vice*) |
| Texas Bar No. 24051699 | Stephen Kinnaird (*pro hac vice*) |
| Katherine Hancock | Michael Murray (*pro hac vice*) |
| Texas Bar No. 24106048 | Sameer P. Sheikh (*pro hac vice*) |
| CANTEY HANGER LLP | Tor Tarantola (*pro hac vice*) |
| 600 West 6th Street, Suite 300 | PAUL HASTINGS LLP |
| Fort Worth, TX 76102 | 2050 M Street NW |
| pvickers@canteyhanger.com | Washington, DC 20037 |
| (817) 877-2800 | allysonbaker@paulhastings.com |
| | (202)-551-1830 |

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2023, a true and correct copy of the foregoing document was served upon all counsel of record in this action via the Court's CM/ECF system.

/s Allyson B. Baker
Allyson B. Baker

*Attorney for Plaintiff CCST*