**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

CAREER COLLEGES & SCHOOLS OF TEXAS,

Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION *et al.*,

Defendants.

Case No. 23-cv-433-RP

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO EXCLUDE EXPERT DECLARATION**

## INTRODUCTION

The purpose of any witness testimony—whether expert or lay—is to furnish the court with information that is "helpful to . . . determining a fact in issue." Fed. R. Evid. 701(b); *accord* Fed. R. Evid. 702(a) (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). And when a witness seeks to offer an expert opinion—and thereby purports to have "specialized knowledge [that] will help the trier of fact"—that witness must base her opinion on "sufficient facts or data" and demonstrate that she "has reliably applied [reliable] principles and methods to the facts of the case." Fed. R. Evid. 702. The Jones Declaration fails to satisfy these basic requirements: it offers legal and factual conclusions without reference to any particular facts, principles, or methods on which those conclusions are based. Thus, even under a "relaxed" application of the rules of evidence at this stage, *Pendergest-Holt v. Certain Underwriters at Lloyd's of London & Arch Specialty Ins. Co.*, No. 09-cv-3712, 2010 WL 3359528, at *4 (S.D. Tex. Aug. 23, 2010), the Court should exclude the Jones Declaration as unhelpful and plainly inadmissible.[1]

### I. The Rules of Evidence Are Applicable to Preliminary Injunction Proceedings

Although "at the preliminary injunction stage, the procedures in the district court are less formal," and a court "may rely on otherwise inadmissible evidence, including hearsay evidence," the Federal Rules of Evidence remain relevant and applicable. *See Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993); *see also University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The preliminary and often hasty nature of such proceedings does not suggest, as CCST would have it, that the Court must throw the evidence rulebook out the window. Rather, the Court has discretion to exclude improper or unhelpful evidence at the preliminary injunction stage—a proposition that CCST

[1] Defendants regret overlooking Local Rule CV-7(G)'s requirement to meet and confer about the instant motion. CCST was not prejudiced by this oversight, as it had already filed the contested declaration, and it has now had the opportunity to explain why it opposes the requested relief. Accordingly, notwithstanding the absence of a pre-motion conference between the parties, the Court should consider Defendants' motion on its merits and grant the relief requested.

does not dispute. *See generally, e.g.*, 11A Charles Alan Wright & Arthur Raphael Miller, Federal Practice and Procedure § 2949 (3d ed. 2023) ("[I]nasmuch as the grant of a preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight *when it is thought advisable to do so* in order to serve the primary purpose of preventing irreparable harm before a trial can be had." (emphasis added)); *see also, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (where "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings," the "dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding" (internal quotation marks omitted)); *Pendergest-Holt*, 2010 WL 3359528, at *4 (although "typically the rules of evidence are relaxed in the . . . preliminary injunction setting," the court "applies the rules of evidence as they are intended, namely, to permit only reliable information into the record and thereby enable the Court to make the necessary preliminary but crucial 'in fact' determination[s]"); *Concepts in Prod., LLC v. Joiner*, No. 17-cv-118, 2018 WL 3419269, at *3 n.5 (N.D. Miss. July 13, 2018) ("declin[ing] to consider" proffered testimony because "[w]hile the rules of evidence are more relaxed at the preliminary injunction stage, the value of such testimony was (and is) negligible").

The Federal Rules of Evidence remain especially relevant at this stage with respect to expert opinions, which are always subject to a higher standard than lay opinions in the ordinary course. District courts in this and other circuits thus regularly engage in *Daubert* analyses when deciding motions to exclude or strike at the preliminary injunction stage. *See, e.g.*, *Mueller Supply Co., Inc. v. JNL Steel Components, Inc.*, No. 21-cv-036-H, 2022 WL 1199212, at *2–12 (N.D. Tex. Mar. 8, 2022) (engaging in full *Daubert* analysis in ruling on motion to exclude expert testimony at preliminary injunction stage); *Huntwise, Inc. v. Higdon Motion Decoy Sys., Inc.*, No. 10-cv-3281, 2010 WL 5146525, at *2–4 (E.D. La. Dec. 13, 2010) (same, as to motion to strike); *Healthpoint, Ltd. v. Stratus Pharms., Inc.*, No. SA-00-CA-

726-PM, 2002 WL 34364150, at *5 n.17, *8 n.20 (W.D. Tex. Feb. 4, 2002) (explaining that the court "entered *Daubert* findings" at preliminary injunction hearing as to two proffered expert testimonies). And the district court opinion in *Lakey*, on which CCST heavily relies, *see* Pl.'s Opp'n to Defs.' Mot. to Exclude at 5–6, ECF No. 63, does not hold otherwise; rather, the *Lakey* court explained the "relative evidentiary laxity" that applies at the preliminary injunction stage and concluded, in its discretion, that proffered expert declarations by physicians were "properly read and considered by the Court." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 956 (W.D. Tex. 2011), *vacated in part on other grounds*, 667 F.3d 570 (5th Cir. 2012). Even in circuits that have (unlike the Fifth Circuit) stated more broadly that the Federal Rules of Evidence may not apply during preliminary injunction proceedings, courts apply the *Daubert* standard to proffered expert evidence, which is appropriately subject to greater scrutiny than the hearsay affidavits that are often submitted in support of preliminary injunction motions. *Compare, e.g.*, *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (stating that generally the rules of evidence do not apply at preliminary injunction stage), *with Warner v. Gross*, 776 F.3d 721, 734 (10th Cir.) (holding that district court properly "performed its gatekeeper role" and "applied the correct standards" under *Daubert* in ruling on objection to expert testimony in preliminary injunction proceedings), *aff'd sub nom. Glossip v. Gross*, 576 U.S. 863 (2015), *and Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 900 (10th Cir. 2016) (holding that district court did not abuse its discretion in striking plaintiffs' expert declarations proffered in support of preliminary injunction in APA case because the experts "simply 'disagree[d] with the [government's] experts' and thus were not properly considered").

The Court thus may properly consider the admissibility of the Jones Declaration under the Federal Rules of Evidence notwithstanding the preliminary stage of this litigation. *Cf. Glossip*, 576 U.S. at 890 (finding no abuse of discretion in district court's *Daubert* ruling on proffered expert at preliminary injunction hearing).

## II. The Jones Declaration Does Not Satisfy Federal Rule of Evidence 702

Under Federal Rule of Evidence 702, a qualified expert may testify if the court is satisfied that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In its opposition, CCST does not refer to even one of these four requirements—and for good reason: the Jones Declaration satisfies none of them, as Defendants' motion demonstrated.

**1.** In opposition, CCST argues that the Jones Declaration should be admitted as an expert declaration because the Department "previously proffered her testimony" as a "fact witness" in *Sweet v. Cardona*, No. 19-cv-3674, 2022 WL 16966513 (N.D. Cal. Nov. 16, 2022), and that "[l]ike the Department in *Sweet v. Cardona*, CCST offers Ms. Jones's testimony to explain how borrower defense regulations work and affect institutions and students." Pl.'s Opp'n at 4, 7; *see id.* at 9 ("[The Jones Declaration] is no different from what Ms. Jones did for the Department in *Sweet v. Cardona*, where she analyzed changes in the borrower defense regulation in order to explain how those regulations worked."). As an initial matter, Jones' testimony in *Sweet* as a fact witness about the Department's delay in adjudicating borrower defense claims, provided as a then–Department official, is of course a different question from whether her testimony as an expert in this case satisfies Rule 702.

But more than that, Jones's testimony here does not do what CCST claims it does. First, it does not "explain how borrower defense regulations work." *Id.* at 4. Instead, it presents Jones' own characterizations and criticisms of certain aspects of the 2022 Rule without a single reference to the language of the criticized provisions. *See, e.g.*, Jones Decl. ¶ 26 (asserting in conclusory fashion that the 2022 Rule's "definitions for substantial misrepresentation or omission" will make schools "liable for an inadvertent and innocent misstatement," without citing or stating the relevant definitions, much

less applying those definitions to any factual circumstances); *id.* ¶ 29 (making conclusory assertions about the 2022 Rule's "group claim process" without citing, referencing, or quoting any specific provisions of the Rule, or explaining why she thinks they will have the effect she describes).

Second, the declaration does not "show" how borrower defense "regulations affect schools." Pl.'s Opp'n at 4. Instead, Jones largely offers unsupported conclusions and predictions. For example, CCST cites the Jones Declaration for its sweeping assertion that "CCST Schools will necessarily expend substantial time and financial resources into undertaking efforts to conform their conduct, recordkeeping activity, and compliance efforts, and abandoning longstanding business plans to build new and upgrade or consolidate existing schools, all in an effort to mitigate the risk of" harm under the 2022 Rule. Pl.'s Br. in Support of Mot. for Preliminary Inj. at 23, ECF No. 24 (citing paragraph 8 of the Jones Declaration and paragraphs 16–20 of the Arthur Declaration). But in the cited paragraph of the Jones Declaration, Jones offers only the vague and conclusory statement, "It was during my work at a proprietary institution that I came to understand just how difficult and costly it is for schools to respond to a significant change in regulations. That burden is all the greater in the case of the New Rule, which imposes impossible expectations on schools[.]" Jones Decl. ¶ 8. *See also, e.g.*, *id.* ¶ 37 (referring to what she believes is the "Department's complete disregard for the extensive studies and well-accepted findings during prior administrations" but citing no such "studies" or "findings"); *id.* ¶ 39 (claiming that "[p]rospective students and potential employers often incorrectly view the fact of borrower defense claims as an indication of substandard education" without factual or even anecdotal support).

In the few places where Jones offers examples that may be construed as an attempt to apply her understanding of the 2022 Rule to hypothetical circumstances, she again fails even to cite, much less explain, the provisions of the Rule that she is characterizing. *See, e.g.*, Jones Decl. ¶¶ 30–33 (claiming that the closed-school provisions will result in "undeserved financial liability" for schools

attempting to change locations or open new locations in the "best interests of students," but failing to state what those provisions actually say and why she believes they would lead to her projected incongruous results).

Finally, CCST bizarrely contends that Defendants seek to "impose an impossible standard" by pointing out Jones's failure to provide "facts forming a basis for her opinions" and asserts that "[i]t does not matter that she does not . . . provide some sort of a 'principle or method.'" Pl.'s Opp'n at 10 (citing no authority). But that is precisely what Rule 702 requires: that "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and provides the application of those "principles and methods to the facts of the case." Fed. R. Evid. 702. CCST cannot sidestep every basic requirement for a proffered expert opinion by relying on the preliminary nature of the litigation and the fact that Jones previously testified *as a fact witness* about Department policies underlying a different rule when she served as a Department official.

Ultimately, the Jones Declaration consists of little more than unsupported characterizations of the 2022 Rule and ipse dixit regarding its predicted effects on higher education institutions in general (not CCST member schools in particular). Even under the most "relaxed" application of Rule 702, *Pendergest-Holt*, 2010 WL 3359528, at *4, it does not come close to satisfying the requirements for admission of expert testimony, and the Court would be well within its discretion to reject it at this stage. *See LeBlanc ex rel. Est. of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 98 (5th Cir. 2010) ("[W]hile '[t]rained experts commonly extrapolate from existing data[,] nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" (quoting *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997)); *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) ("[I]n reviewing expert opinion evidence, we look to the basis of the expert's opinion, and not the bare opinion alone." (internal quotation marks omitted)).

**2.** CCST further maintains that Jones is a qualified expert, but it does not attempt to clarify what exactly Jones is purporting to be an expert in.[2] CCST asserts that Jones is qualified to testify on "exactly the topic for which the Department previously proffered her testimony" in *Sweet*. Pl.'s Opp'n at 7. But there, the Department proffered her testimony, as a then-employee, on the Department's federal student aid priorities in 2018–2019 and development of a new methodology for determining the amount of relief for successful borrower defense claims, all for the purpose of explaining the Department's delay in issuing borrower defense decisions at the time. ECF No. 63-1, at 4; *see* Defs.' Mot. for Summ. J. at 5, 9–12, 20–23, *Sweet*, No. 19-cv-3674 (N.D. Cal. Dec. 5, 2019), ECF No. 63 (attached as Ex. 1) (citing Jones Declaration for that purpose). Her declaration here, by contrast, discusses a 2022 Rule that was developed and promulgated after she was no longer an employee of the Department. She is not, therefore, qualified to speak to the Department's apparent unspoken "intent[]" in amending the 2019 rule, Jones Decl. ¶ 24, nor to counter the Department's own expertise on its new rule.

Moreover, it is not "a dangerous self-aggrandizement" for the Department to contend that an outside expert cannot "supplant" the Department's expertise as to its own policies. Pl.'s Opp'n at 8. To the contrary, federal courts consistently acknowledge that it is inappropriate for litigants to offer expert testimony intended to supplant or counter an agency's expertise as to its own policies, particularly in the context of an APA case. *See, e.g.*, *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) (emphasizing deferential standard of review under the APA and explaining that "an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an

[2] CCST claims that Defendants were "[u]nable to cite a single case to support the argument that Ms. Jones cannot be qualified based on her experience alone," Pl.'s Opp'n at 7, but Defendants acknowledged that "experience alone may in some circumstances suffice to qualify an expert witness," Defs.' Mot. to Exclude at 6. For the reasons Defendants provided, those circumstances are not present here.

original matter, a court might find contrary views more persuasive"); *State of Cal. By & Through Brown v. Watt*, 712 F.2d 584, 606 (D.C. Cir. 1983) ("It is not [the court's] function to resolve disagreements among the experts or to judge the merits of competing expert views . . . . Our task is the very limited one of ascertaining that the choices made by the [agency] were reasonable and supported by the record.").

CCST's continual references to Jones's testimony as a fact witness in *Sweet*, when she was an employee and representative of the Department, and its insistence that she is playing the same role here, expose the inappropriate nature of her proffered declaration. *See* Pl.'s Opp'n at 3–4, 7–9. It is in fact not "surprising," *id.* at 1, that an individual may properly testify as an agency employee about actions the agency has taken during her employment but that she may not later testify as an "expert" against that agency about actions it took after she left its employ. The proffered testimony is exactly the kind of "evidence" that is not "appropriate given the character and objectives of the injunctive proceeding" in this APA case. *Dixon*, 835 F.2d at 558.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude the proffered expert declaration of Diane Jones.[3]

Dated: May 26, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Christine L. Coogle*
CHRISTINE L. COOGLE (D.C. #1738913)

[3] For the same reasons, Defendants will object to Jones's appearance as a live witness at the forthcoming hearing on May 31, 2023. *See* Pl.'s Witness List for May 31, 2023 Preliminary Injunction Hearing at 2, ECF No. 65.

CODY T. KNAPP
R. CHARLIE MERRITT
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 880-0282
christine.l.coogle@usdoj.gov

*Counsel for Defendants*