**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

CAREER COLLEGES & SCHOOLS OF
TEXAS,

                         Plaintiff,

        v.

U.S. DEPARTMENT OF EDUCATION *et al.*,

                     Defendants.

Case No. 23-cv-433-RP

**DEFENDANTS' BRIEF
<u>IN SUPPORT OF THEIR MOTION TO DISMISS IN PART</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    The Closed-School-Discharge Regulations ............................................................2

    II.    CCST's Claims Against The Closed-School-Discharge Regulations ....................4

    III.    Preliminary-Injunction Proceedings ......................................................................7

    IV.    Subsequent Proceedings On Appeal .......................................................................9

LEGAL STANDARD ..........................................................................................................10

ARGUMENT .......................................................................................................................11

    I.    CCST Lacks Standing To Challenge The Closed-School-Discharge Provisions. .............11

    II.    CCST's Claims Against The Closed-School-Discharge Provisions Are Not Ripe. ...........17

CONCLUSION ....................................................................................................................19

## INTRODUCTION

In denying CCST's motion for a preliminary injunction against the 2022 Final Rule based on the absence of irreparable harm, this Court noted that CCST's allegations of harm from the Rule's provisions concerning closed-school discharges were particularly attenuated.  *CCST v. U.S. Dep't of Educ.*, No. 1:23-CV-433-RP, 2023 WL 4291992 (W.D. Tex. June 30, 2023).  Among other things, the Court noted that "*any* concrete harm that CCST's members might suffer from the closed school discharge provisions remains several steps away." *Id.* at *7 (emphasis added).  The Court also rejected CCST's reliance on "[m]ere 'uncertainty' about what the Rule actually requires" to show how its membership was harmed by the closed-school-discharge provisions.  *Id.*  And with respect to the limited evidence CCST had produced concerning the impact of those provisions on its members, the Court found that the alleged impacts were not actually traceable to the closed-school-discharge provisions.  *Id.*

For substantially similar reasons, the Court should now dismiss CCST's claims against the Rule's closed-school-discharge provisions for lack of jurisdiction.  CCST has failed to establish any cognizable injury to itself or one of its members that is also fairly traceable to the closed-school-discharge provisions and redressable in this case.  Even if CCST could technically surmount that hurdle somehow, its challenges to the closed-school-discharge provisions would remain premature and, therefore, unripe.  Whatever their merits, CCST's claims against the closed-school-discharge provisions are best adjudicated another day, by a party with a more concrete stake in the litigation. [1]

---

[1] Defendants maintain their arguments that the Court also lacks jurisdiction to reach the merits of CCST's various claims against the Rule's borrower-defense provisions because CCST lacks standing to raise those claims and because those claims are unripe.  *See* Defs.' PI Br., ECF No. 56, at 8–15.  Nevertheless, Defendants recognize the Court's conclusion that, at this early stage in the litigation, CCST has made a sufficient showing that one of its members would likely have a cognizable injury from at least some of the borrower-defense provisions due to their alleged expenditures of "time conducting 'preparatory activities' to ensure compliance with the Rule and mitigate future liability." *Career Colleges & Sch. of Tex.*, 2023 WL 4291992, at *5 (W.D. Tex. June 30, 2023).  Defendants do not

1

## BACKGROUND

### I.        The Closed-School-Discharge Regulations[2]

The Higher Education Act of 1965 (HEA) generally requires the Department of Education to "discharge [a] borrower's liability on [a] loan" where the borrower "is unable to complete the program in which such student is enrolled due to the closure of the institution."   20 U.S.C. § 1087(c)(1) (applicable to Federal Family Education Loans); *see also* 20 U.S.C. § 1087dd(g)(1) (specifying the same for Perkins Loans); 20 U.S.C. § 1087e(a)(1) (stating that, "[u]nless otherwise specified in this part, [Direct Loans] made to borrowers under this part shall have the same terms, conditions, and benefits, and be available in the same amounts, as [FFEL Loans] made to borrowers").  In situations where a borrower's liability on a loan is discharged based on the closure of a school, the HEA also requires the Department to "subsequently pursue any claim available to such borrower against the institution and its affiliates and principals or settle the loan obligation pursuant to the financial responsibility authority." 20 U.S.C. § 1087(c)(1) (referring to authorities described in 20 U.S.C. § 1099c(c)); 20 U.S.C. § 1087e(a)(1) (providing for Direct Loans to be made under the same terms and conditions).  To comply with these statutory directives, the Department has long maintained regulations that permit the Secretary to determine the date of a school's closure, establish certain conditions for borrowers' eligibility for discharge, and require borrowers' cooperation in administrative proceedings to recoup the cost of closed-school discharges. *See, e.g.*, *William D. Ford Federal Direct Loan Program*, 59 Fed. Reg. 61664, 61701 (Dec. 1, 1994).

---

seek to relitigate that preliminary conclusion here.  Instead, Defendants anticipate that they will reassert those jurisdictional arguments at the summary judgment stage, when CCST "can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (cleaned up).

[2] Because the Court has already carefully reviewed the general statutory and regulatory background to this case in its preliminary-injunction opinion, Defendants do not repeat that background here.  Instead, Defendants summarize only the specific regulatory provisions at issue in the present motion.

In the 2022 Final Rule at issue in this case, the Department amended its closed-school-discharge regulations.  Among other things, the Department amended the regulatory provision that establishes the school-closure date that the Secretary uses to determine a borrower's eligibility for discharge.  *See* 2022 Final Rule, 87 Fed. Reg. 65904, 65966 (Nov. 1, 2022).  That provision, now codified at 34 C.F.R. § 685.214(a)(2)(i), establishes that "[i]f a school has closed, the school's closure date is the earlier of: the date, determined by the Secretary, that the school ceased to provide educational instruction in programs in which most students at the school were enrolled, or a date determined by the Secretary that reflects when the school ceased to provide educational instruction for all of its students."  That provision only impacts the determination of a school's closure date, not the fact of closure.  As the Department explained, this "establish[es] a closure date for a school that has ceased overall operations," not a "school that has remained open," and also "protect[s] against a situation where an institution could intentionally keep a single, small program open long enough to avoid the [eligibility] window, otherwise denying closed school discharges to borrowers."  87 Fed. Reg. at 65966.  The Department also amended the closed-school-discharge regulations to standardize the eligibility window for all borrowers, and to provide for discharges under certain circumstances one year after a school's closure.  *See id.*; *see also, e.g.*, 34 C.F.R. § 685.214(c)(1) ("If the Secretary determines based on information in the Secretary's possession that the borrower qualifies for the discharge of a loan under this section, the Secretary discharges the loan without an application or any statement from the borrower 1 year after the institution's closure date if the borrower did not complete the program at another branch or location of the school or through a teach-out agreement at another school, approved by the school's accrediting agency and, if applicable, the school's State authorizing agency.").  The Department's goal in making these amendments was to "improve access to closed school loan discharges for borrowers who are unable to complete their programs due to the closure of their institution."  87 Fed. Reg. at 66004.

Of relevance here, the 2022 Final Rule notably did not amend the regulatory provisions that authorize recoupment of closed-school-discharge amounts. Those provisions continue to provide that "[t]he Secretary may require the repayment of funds and the purchase of loans by the school if the Secretary determines that the school is liable as a result of . . . [t]he school's actions that gave rise to a successful claim for which the Secretary discharged a loan, in whole or in part, pursuant to," among others, the closed-school-discharge regulations. 34 C.F.R. § 685.308(a)(3). The Rule also left intact the Department's longstanding approach to seeking recoupment of closed-school-discharge amounts: "In requiring a school to repay funds to the Secretary . . . , the Secretary follows the procedures described in 34 CFR part 668, subpart H." *Id.* § 685.308(b); *compare* 34 C.F.R. § 685.308(b) (effective July 1, 2020) (providing the same); 34 C.F.R. § 685.308(b) (1995) (same). Those recoupment procedures, which are the same as those that apply to "a final audit determination or a final program review determination arising from an audit or program review of the institution's participation," 34 C.F.R. § 668.111(a), set out an extensive administrative process for review of the Department's initial determination that a school is liable for the discharged amount, allowing for the submission of evidence and briefing, a formal hearing, the issuance of a written decision by a hearing officer, and appeals to the Secretary (both interlocutory and post-decision). *See* 34 C.F.R. §§ 668.113–122, 668.124. Only after a final decision by the Secretary or hearing officer does the Department "take steps to collect the debt at issue or otherwise effect the determination that was subject to the request for review." 34 C.F.R. § 668.123. And "[a]ny such collections efforts are subject to judicial review." *Cal. Ass'n of Private Postsecondary Schs. v. DeVos* ("*CAPPS*"), 344 F. Supp. 3d 158, 182 (D.D.C. 2018); *see also* 2016 Rule, 81 Fed. Reg. 75926, 75960 (acknowledging that final decisions under 34 CFR part 668, subpart H are "reviewable under section 706 of the" Administrative Procedure Act).

## II.   CCST's Claims Against the Closed-School-Discharge Regulations

CCST's complaint purports to advance three claims against the Rule's amendments to the

closed-school-discharge regulations, formally distinguished based on their source within the APA. *See* Compl. ¶¶ 294–303. Thus, CCST first contends that the closed-school-discharge provisions, as amended, are "in excess of statutory authority, jurisdiction, and limitations," and otherwise "not in accordance with law." *See id.* ¶ 297 (count seven of the complaint, citing 5 U.S.C. § 706(2)(C)). Second, CCST argues that the amended provisions are arbitrary and capricious. *See id.* ¶ 299 (count eight of the complaint, citing 5 U.S.C. § 706(2)(A)). And third, CCST alleges that the amended closed-school-discharge regulations violate the Constitution. *See id.* ¶ 302 (count nine of the complaint, citing 5 U.S.C. § 706(2)(B)).

That formal sorting elides the numerous distinct claims CCST asserts against various aspects of the closed-school-discharge regulations. For example, CCST's constitutional "claim" appears to subsume at least three distinct due process challenges: one to the absence of any limitations period in 34 C.F.R. § 685.214 on providing closed-school discharges to borrowers; another against the use of the longstanding procedures in 34 CFR part 668, subpart H to assess and recoup institutional liabilities for closed-school discharges, pursuant to 34 C.F.R. § 685.308(a)(3); and a third against the closure-date regulation in 34 C.F.R. § 685.214(a)(2)(i), which (allegedly) authorizes closed-school discharges and recoupment from schools that have not yet closed. *See, e.g.*, Compl. ¶ 302 ("The Final Rule's provisions concerning closed school loan discharges violate the Due Process Clause of the U.S. Constitution because schools [have] inadequate procedural protections for defending against application or recoupment actions, particularly where the Secretary decides what constitutes a school closure."); *id.* ¶ 260 (claiming that "the Final Rule fails to provide any procedural protections for institutions (or their affiliates or principals) . . . to allow them to present evidence to defend against an application or recoupment."); *id.* (asserting "unfair[ness]" and "a violation of the due process rights" of schools "where the Secretary is empowered to pursue "closed" school discharges against schools that remain open"). Similarly, CCST's arbitrary-and-capricious challenge encompasses distinct claims

that "[t]he Department arbitrarily failed to consider" how certain closures may enhance "the overall health of the institution, its faculty, and its students" when adopting the amended closed-school-discharge regulations, *id.* ¶ 258, and that the regulations, as amended, "arbitrarily allow[] discharges even where there is no causal connection between a student's decision to withdraw from school and a school's closure," *id.* ¶ 259.  And CCST's statutory-authority claim comprises no fewer than six theories of liability, variously asserted against at least five aspects of the regulations concerning closed schools.  *See, e.g., id.* ¶ 252 (challenging 34 C.F.R. § 685.214(a)(2)(i)'s provision for determining the "closure date" of a closed school as inconsistent with the HEA); *id.* ¶ 256 (asserting that the closed-school-discharge provisions are "improperly retroactive"); *id.* ¶ 259 (claiming that permitting borrowers who withdrew from a school within 180 days of that school's closure date to qualify for closed-school discharges, as provided for in 34 C.F.R. § 685.214(d)(1)(i)(B) and 34 C.F.R. § 685.214(g)(1), violates the HEA); *id.* (alleging that the amended closed-school-discharge provisions "allow[] discharges even where there is no causal connection between a student's decision to withdraw from school and a school's closure"); *id.* ¶¶ 261–262 (contending that the HEA does not authorize the Department to seek to recoup closed-school discharges of liability on Direct Loans from principals and affiliates of a closed school); *id.* ¶¶ 261, 265–266 (purporting to challenge provisions in 34 C.F.R. § 685.409(a) that, in situations involving a closed school, permit recoupment of borrower-defense discharges from persons affiliated with the school).

Exemplifying how CCST's complaint tends to muddle the issues it raises, CCST's challenge to the Department's statutory authority to recoup discharges from persons affiliated with a closed school pursuant to 34 C.F.R. § 685.409(a) does not actually relate to the Rule's amendments to the Department's closed-school-discharge regulations.  *But see id.* ¶ 261 (asserting this claim in a section of the complaint titled "The Closed School Discharge Provisions Violate the Statute and Due Process").  Instead, it concerns one of the provisions allowing for the recoupment of amounts discharged or

reimbursed to borrowers for claims approved under the amended borrower-defense regulations.  *See* 34 C.F.R. § 685.409(a) (cross-referencing 34 C.F.R. § 685.406, which addresses the "[a]djudication of borrower defense applications").  It is therefore more properly categorized as one of CCST's claims concerning the Rule's provisions regarding borrower defenses to repayment.  *Cf.* Compl. ¶¶ 267–282 (listing 34 C.F.R. § 685.409 as one of the amended borrower-defense regulations CCST challenges).  Nevertheless, given CCST's characterization of the claim and the similar jurisdictional problems it presents, Defendants address this claim through the instant motion.

## III.    Preliminary-Injunction Proceedings

CCST previously sought a preliminary injunction against implementation of the Rule as a whole, based in part on its challenges to the closed-school-discharge provisions.  *See* Pls.' PI Motion, ECF No. 23.  With respect to the closed-school-discharge provisions, CCST emphasized its claim that 34 C.F.R. § 685.214(a)(2)(i) adopts an unlawful standard for determining a school's date of closure.  *See* Pls.' PI Br., ECF No. 24, at 20.   CCST also continued to conflate various borrower-defense regulations addressing situations in which the relevant school has closed with the Rule's closed-school-discharge provisions.  *See, e.g.*, Pls.' Reply Br., ECF No. 64, at 21 (arguing that 34 C.F.R. § 685.401(e), which establishes a rebuttable presumption in favor of borrower-defense relief where the borrower attended a closed school shown to have committed actionable acts or omissions that caused that borrower detriment, is *ultra vires* and arbitrary and capricious).

Following briefing and an extensive evidentiary hearing, the Court denied CCST's motion for a preliminary injunction.  *See Career Colleges & Schools of Tex. v. U.S. Dep't of Educ.*, No. 1:23-CV-433-RP, 2023 WL 4291992, at *1 (W.D. Tex. June 30, 2023).

In its preliminary-injunction opinion, the Court first considered whether CCST had carried its burden to show that "standing is likely to obtain in the case at hand."  *Id.* at *4 (quotation omitted).  The Court noted that "CCST's member schools are among the objects of the regulation at issue," that

two CCST member schools had represented that they have conducted "'preparatory activities' to ensure compliance with the Rule and mitigate future liability," and that those schools had alleged that the Rule "broadens the kinds of school actions that can give rise to a borrower defense claim (and potentially recoupment)" so as to "require at least some degree of preparatory analysis, staff training, and reviews of existing compliance protocols." *Id.* at *5. Based on those considerations, the Court concluded that CCST had made a sufficient showing that at least one of its member schools would likely have standing to challenge the Rule. *See id.*

Notwithstanding its conclusion as to associational standing, the Court then concluded that CCST had not met its burden to make the showing of irreparable harm required to justify preliminary injunctive relief. *See id.* at *5–10. In general, the Court emphasized "the remoteness of any recoupment liability" for CCST members given that "several events would have to occur first," including the exhaustion of an administrative review process and an opportunity to seek judicial review. *Id.* at *6; *see also id.* (noting that "there is no concrete evidence that any CCST member school faces . . . a threat of recoupment for any discharged loans"). And while CCST claimed that its members would face forward-looking compliance costs, the Court saw no "concrete indication" that the Rule imposes "more than a de minimis burden in comparison to the schools' pre-existing compliance expenses." *Id.* at *9.

The Court was even more emphatic in the portions of its opinion that directly addressed CCST's claims of harm from the Rule's closed-school-discharge provisions. As the Court explained, "*any* concrete harm that CCST's members might suffer from the closed school discharge provisions remains several steps away." *Id.* at *7 (emphasis added). And while CCST had asserted that, based on their understanding of the closed-school-discharge provisions, its member schools were abandoning plans to build, expand, or consolidate certain facilities or programs, the Court found that CCST had not supported those allegations with adequate detail nor explained how its members'

actions would be traceable to the closed-school-discharge provisions in the first place. *See id.* Indeed, the Court noted that the testimony of one witness at the evidentiary hearing "confirmed" that changes in planning by that witness's institution were "motivated by [a] desire to 'conserve . . . funds.'" *Id.* Thus, the Court determined that CCST could not establish harm based on "[m]ere 'uncertainty' about what the Rule actually requires" rather than any changes made by the Rule to the closed-school-discharge regulations. *Id.* Finally, the Court found CCST's claims of harm from the closed-school-discharge provisions were particularly speculative given the Department's "intention to provide further guidance on the 'closed school' definition." *Id.*

## IV.    Subsequent Proceedings on Appeal

Shortly before this Court denied CCST's motion for a preliminary injunction, CCST filed an original action in the Fifth Circuit, *see In re Career Colleges*, No. 23-50489 (5th Cir.), and requested an administrative stay of the Rule as well as an injunction pending appeal. *See* Notice of Emergency Motions, ECF No. 73. Thereafter, following this Court's denial of the preliminary-injunction motion, CCST filed a notice of appeal. *See* Notice of Appeal, ECF No. 75. The Fifth Circuit then issued a 21-day administrative injunction limited to CCST and its member schools and set a briefing schedule for any renewed motion for an injunction pending appeal. *See* Order of June 30, 2023, ECF No. 77.

One week later, without first applying for relief to this Court, *see* Fed. R. App. P. 8(a)(1), CCST filed a renewed motion for an injunction pending appeal with the Fifth Circuit. *See* Motion, Case No. 23-50491, Dkt. No. 12 (5th Cir. July 7, 2023). That motion was fully briefed as of July 14. On July 20, the Fifth Circuit entered an order extending the administrative injunction for an additional seven days. *See* Order of July 20, 2023, ECF No. 83. Earlier today, July 28, the Fifth Circuit ordered that CCST's motion be "carried with the case," that the appeal be expedited, and that the administrative stay be continued pending further order of the court.

## LEGAL STANDARD

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) ("Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." (quotation omitted)).[3]  It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).  "[T]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, so the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Shemwell v. City of McKinney*, 63 F.4th 480, 483 (5th Cir. 2023) (quotation omitted). "[I]n examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

---

[3] Rule 12(a)(4) of the Federal Rules of Civil Procedure provides that the filing of a motion to dismiss under Rule 12 extends the deadline for filing a responsive pleading until 14 days after the court acts on the motion. *See, e.g., Mandawala v. Baptist Sch. of Health Pros.*, No. 19-cv-1415-JKP, 2022 WL 17835056, at *2 (W.D. Tex. Dec. 21, 2022), *reconsideration denied*, 2023 WL 2531738 (W.D. Tex. Mar. 14, 2023).  Though the Fifth Circuit does not appear to have addressed the question, the weight of authority holds that Rule 12(a)(4) applies even when the motion to dismiss addresses only some of the plaintiff's claims.  *See, e.g., Meraz v. M. Susan Rice, P.C.*, No. 09-cv-138-OG, 2009 WL 10669232, at *1 (W.D. Tex. May 15, 2009) ("[T]he majority of the courts to consider the issue hold that the filing of a motion addressing only part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."); *Banik v. Thompson*, No. 7:16-cv-00462, 2017 WL 11713709 (S.D. Tex. Dec. 11, 2017) (noting the same); *Montgomery v. Logsdon*, No. 20-cv-756, 2020 WL 13802092, at *2 (E.D. La. Nov. 12, 2020) (noting this rule); *Darden v. Mario Sinacola & Sons Excavating, Inc.*, No. 4:17-cv-389, 2017 WL 4583777, at *2 (E.D. Tex. Sept. 20, 2017) (adopting this rule), *report and recommendation adopted*, 2017 WL 4574583 (E.D. Tex. Oct. 13, 2017).  Plaintiffs will not be prejudiced by application of this rule given that the administrative record is scheduled to be produced on or before August 18, 2023.  Nevertheless, if the Court is inclined to disagree with the authorities cited above, Defendants respectfully request that any order requiring Defendants to file a responsive pleading as to the remaining counts in the complaint permit any such pleading to be filed with 14 days of the date of that order.

Thus, when reviewing a motion under Rule 12(b)(1), the court may consider "(1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts." *Norwood v. Williamson Cty.*, No. 1:22-CV-819, 2023 WL 4375514, at *2 (W.D. Tex. July 6, 2023) (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).

## ARGUMENT

For many of the same reasons that CCST could not meet its burden to show irreparable harm at the preliminary-injunction stage of this case, the Court should now dismiss CCST's claims against the Rule's closed-school-discharge provisions. CCST has failed to establish standing to raise its challenges to the closed-school-discharge provisions. And even assuming CCST could show standing, its claims would still be unripe. Accordingly, CCST's claims concerning the closed-school-discharge provisions should be dismissed for lack of jurisdiction.

## I.     CCST lacks standing to challenge the closed-school-discharge provisions.

**1.** The "irreducible constitutional minimum" of standing requires that a plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Importantly, "standing is not dispensed in gross," and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

When the plaintiff is an association like CCST, it "may have standing either by showing it can sue on behalf of its members ('associational' standing) or sue in its own right ('organizational' standing)." *Tex. State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022). To establish associational standing, an association-plaintiff must show that (1) its members themselves would have standing; (2) the interests it seeks to protect are germane to its organizational purpose; and (3) participation of its

members is not required.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  And for organizational standing, the organization must satisfy the same standing requirements that apply to individuals.  *See Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020) (quotations omitted).

**2.**  CCST has failed to establish associational standing with respect to its claims against the closed-school-discharge provisions.  In particular, CCST has not identified any injuries to its members that are sufficiently "concrete, particularized, and actual or imminent" to support the challenges CCST asserts against those provisions.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).  And even setting aside the sufficiency of its injury allegations, CCST similarly fails to establish that the injuries it does allege are traceable to the closed-school-discharge provisions, or redressable by the relief CCST seeks.  Each of these failures independently defeats CCST's claim to associational standing.  *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010).

This Court already recognized the absence of any cognizable injury from the Rule's closed-school-discharge provisions when it concluded at the preliminary-injunction stage that "any concrete harm that CCST's members might suffer from the closed school discharge provisions remains several steps away."  *CCST*, 2023 WL 4291992, at *7.  As the Court noted then, no CCST member school is alleged to be a closed school or to be planning to close.  *See id.*  Thus, there can be no credible suggestion that the regulatory provisions allowing for closed-school discharges currently are being or imminently will be applied to one of CCST's members.  *See, e.g., E.T. v. Paxton*, 41 F.4th 709, 716 (5th Cir. 2022) (noting that although the concept of "imminence" is "elastic," "it 'has been stretched beyond the breaking point where, as here, the plaintiff alleges only an injury at some indefinite future time'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992))); *Clapper*, 568 U.S. at 410 (rejecting probabilistic approach based on "an objectively reasonable likelihood" that the named plaintiffs would suffer injury from the challenged policy as "inconsistent with [the] requirement that

12

threatened injury must be certainly impending" (quotation omitted)). And any potential second-order consequences of a closed-school discharge, like the imposition of recoupment liability, is even more speculative and remote in time. *See CCST*, 2023 WL 4291992, at *7 (noting that "the imposition of closed school liability against apparently open schools based on hypothetical future plans to build, expand, or consolidate campuses could occur only after DOE prevails in an administrative proceeding, after having granted relief to eligible borrowers" (quotation omitted)).

In contending to the contrary, CCST principally asserts that the closed-school-discharge provisions will "affect[] the practical operation of schools in an ever-changing economic environment" by expanding institutions' potential liability in recoupment proceedings. Compl. ¶ 257. In particular, CCST argues, "some" schools "may" opt to continue operating programs and facilities that they would otherwise close in response to market pressures in order to avoid the "risks" of liability under the (allegedly) "vague definition of what constitutes a closure" of a school for purposes of 34 C.F.R. § 685.214(a)(2)(i). *Id.*; *see also id.* ¶ 258. But these allegations do not demonstrate any concrete and particularized injury traceable to the closed-school-discharge provisions. *See Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683, 700 (5th Cir. 2000) ("It is the reality of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." (quotation omitted)). If anything, they are akin to those found insufficient to support standing in *Clapper v. Amnesty International USA*. There, the Supreme Court rejected the plaintiffs' "contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid [was] not certainly impending." 568 U.S. at 416. The Court reasoned that plaintiffs should not be permitted to "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending" nor fairly traceable to the challenge regulation. *Id.* So too here. And that conclusion is only reinforced by the fact that the Department has expressly disavowed any intent to apply the closed-school-discharge provisions

in the manner CCST fears. *See, e.g.*, 87 Fed. Reg. 65904, 65966 ("A school that has remained open would not be considered a closed school."); *id.* at 65968 ("The Department has clarified the definition of closure date to capture that this would only apply when a school has in fact closed.").

The course of the preliminary-injunction proceedings underscores the parallels with *Clapper*. During the evidentiary hearing, CCST offered testimony from a representative of one of its member schools in order to substantiate the claims of injury relating to the closed-school-discharge provisions. *See, e.g.*, Tr. at 9:24-10:1. But as it turned out, that witness simply confirmed that the school's adjustment of its planned expansion was motivated by a desire to conserve funds in preparation for potential future recoupment actions, not the Rule's amendments to the substantive provisions governing closed school discharge. *CCST*, 2023 WL 4291992, at *7. Thus, any injury suffered by that school was not traceable to the closed-school-discharge regulations. *Cf. Clapper*, 568 U.S. at 413 (finding that where a party "can only speculate as to whether any (asserted) [injury] would be under [the challenged regulation] or some other authority, they cannot satisfy the 'fairly traceable' requirement").

Elsewhere in its pleadings, CCST attempts to rely more generally on the status of its member-schools as participants in the Direct Loan Program as a general basis for standing. In CCST's telling, *all* of its member-schools that are accredited and participate in the Direct Loan Program—at least 54 schools in CCST's estimation—are injured by the Rule and so have standing to challenge the Rule in their own right. *See* Compl. ¶ 25; *cf.* CCST Motion for Injunction Pending Appeal, Case No. 23-50491, Dkt. No. 12-1, at 23–24 (claiming that "all Title IV participants" face "comparable" injuries under the Rule's provisions). That is because, according to CCST, each of those members will be subject "to new and unlawful Departmental procedures that threaten unwarranted reputational injury and enormous financial liability" and be "require[d] . . . to take immediate or imminent action to avoid reputational harms, liability, and exclusion from (or restrictions upon) participation in the federal

student loan program." *Id.* ¶ 27.

That approach runs afoul of bedrock standing principles. For one thing, generalized assertions cannot substitute for the "specific allegations" required to "establish[] that at least one identified [CCST] member ha[s] suffered or [will] suffer harm" from the closed-school-discharge provisions CCST challenges. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). And while it is generally more straightforward for a regulated party—i.e., the "object" of government action—to prove standing than it is for persons whose injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," *Lujan*, 504 U.S. at 561–62, a plaintiff does not automatically gain Article III standing simply by showing that it is a member of the regulated class. *See Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 266–67 (5th Cir. 2015) (where plaintiff was object of government action, plaintiff was still required to "demonstrate a concrete injury resulting from the Regulation that would be redressable by a favorable decision of th[e] Court"). Additionally, CCST's generalized claim of standing to challenge the Rule as a whole contravenes the principle against standing in gross, which requires a plaintiff to "demonstrate all the elements of standing for each provision they seek to challenge." *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019). "It is irrelevant for purposes of standing that separate legal requirements are grouped together." *Id.* Thus, CCST cannot, by treating the Rule as a singular source of injury, leverage harms that its members allegedly face from one provision of the Rule, such as one of the regulations governing borrower-defense adjudications, to assert claims against other regulatory provisions set out by the Rule.

Even setting aside the problems with CCST's theories of injury and traceability, CCST also fails to satisfy the requirement of redressability. Many of the substantive aspects of the Rule's closed-school-discharge provisions CCST challenges are longstanding features of those regulations. *See, e.g.*, 34 C.F.R. § 685.308(b) (effective July 1, 2020) (providing that closed-school-discharge recoupment procedures are set forth in 34 CFR part 668, subpart H). Thus, the relief CCST seeks—vacatur of the

Rule, *see* Compl. at 83—would leave those allegedly injurious regulations in place.

**3.** For similar reasons, CCST fails to establish that it has organizational standing to challenge the closed-school-discharge provisions. CCST alleges that its injuries come in the form of (1) a "frustrated" mission; (2) "reputational harm" as a representative of purportedly "disfavor[ed]" institutions; and (3) the diversion of resources to "identify" the effects of the Rule, to submit comments on the proposed rulemaking, and to "prepare for the future regulatory landscape." Compl. ¶¶ 22–23. But none of these constitutes an injury in fact, nor has CCST shown that they are somehow specifically traceable to the closed-school-discharge provisions.

With respect to CCST's mission, CCST contends that the challenged provisions will "ultimately reduc[e] access to career education and hinder[] workforce development." *Id.* ¶ 22. But this conclusory allegation of harm establishes nothing more than "simply a setback to the organization's abstract social interests," with no apparent relationship to the closed-school-discharge provisions. *City of Kyle*, 626 F.3d at 239. Similarly, for all the reasons stated *supra*, there is no basis to expect that the closed-school-discharge provisions will "hinder[]" CCST's operations by causing any of its member schools to close or inflicting any reputational injury to those institutions or the sector they comprise. Compl. ¶ 22. And CCST's allegations that it has expended resources to "identify" and "prepare for" the effects of the Rule, Compl. ¶ 23, fall far short of showing a "drain" on its resources significant enough to "perceptibly impair[]" its activities in support of member schools. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Ass'n for Retarded Citizens of Dallas*, 19 F.3d 241, 244 (5th Cir. 1994). Otherwise, "any sincere plaintiff could bootstrap standing by expending its resources in response to actions of another." Contrary to showing a drain on organizational resources and impairment of the organization's activities, actions such as advocating for and working

with member schools appear to align comfortably with CCST's ordinary activities.  *Cf. City of Kyle*, 626 F.3d at 238 ("Plaintiffs have not explained how the activities described above, which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances, differ from the HBA's routine lobbying activities.").

## II.     CCST's claims against the closed-school-discharge provisions are not ripe.

**1.**  Ripeness, like standing, is an "essential component[]" of "Article III's case-or-controversy requirement" because a court has no power to decide disputes that are not yet justiciable.  *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam).  The ripeness doctrine is also "drawn from prudential reasons for refusing to exercise jurisdiction."  *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).  The doctrine's purpose is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

The question whether a particular claim "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'" is necessarily claim-specific.  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas*, 473 U.S. at 580–81).  Thus, courts "assess ripeness claim by claim."  *Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 534 n.27 (5th Cir. 2021); *see also Severance v. Patterson*, 566 F.3d 490, 496–501 (5th Cir. 2009) (finding some claims ripe but not others).

To assess whether a particular claim is ripe for judicial review, courts consider both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration."  *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  Under these factors, a "court should dismiss a case for lack of ripeness when the case is abstract or hypothetical."  *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quotations omitted).  Thus, if a claim is "contingent

[on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation omitted). Even when "the question presented" is "purely legal," a claim remains unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003); *see also Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (finding legal issue not ripe where judicial review "would stand on a much surer footing in the context of an application to a specific factual framework").

**2.**  CCST's claims against the Rule's closed-school-discharge provisions fail both prongs of the ripeness inquiry.  First, they are not presently fit for judicial resolution because they require further factual development and are "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–581.  That much is apparent from the parties' very different expectations of how the closed-school-discharge provisions will be applied.  CCST's primary concern with respect to the closed-school-discharge provisions is its fear that the Department may, under some circumstance, allow for closed-school discharges to occur even while a school is still open. *See, e.g.*, Compl. ¶ 252.  Yet as explained above, the Department has been clear that, no matter how the date of a school's closure is ultimately determined, closed-school discharges (and related recoupment proceedings) are not available until an institution has genuinely closed its doors. *See, e.g.*, 87 Fed. Reg. 65904, 65968 ("The Department has clarified the definition of closure date to capture that this would only apply when a school has in fact closed.").  It is clear, then, "that further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812.  As the Court has already suggested, this conclusion is further buttressed by the fact that the Department has stated that it will provide further administrative guidance on those provisions. *See CCST*, 2023 WL 4291992, at *7; *see also* 87 Fed. Reg. at 41,924; Compl. at 72 n.4.

Second, neither CCST nor its members will suffer any hardship from withholding judicial review until CCST's claims against the closed-school-discharge provisions have ripened. Nothing in those provisions requires CCST or its members to make "an immediate and significant change" to their primary conduct under the threat of "serious penalties attached to noncompliance." *Cf. Abbot Laboratories*, 387 U.S. at 153. Indeed, there is no certainty that a CCST member school participating in the Direct Loan Program will close, so there is no need for pre-enforcement review. *See Tex. Indep. Producers & Royalty Owners Ass'n v. Envtl. Protection Agency*, 413 F.3d 479, 482 (5th Cir. 2005). And even if it could be assumed that the regulations will someday be applied to a CCST member school, any concrete effect on that school would remain uncertain given the availability of extensive administrative and judicial review procedures. The lack of ripeness here is especially clear as to CCST's constitutional claims against the closed-school-discharge regulations, which center on CCST's due-process concerns. "Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such a claim before the process is complete." *Wiley v. Tex. State Univ.*, No. 1:18-cv-930-RP, 2019 WL 317247, at *4 (W.D. Tex. Jan. 24, 2019).

## CONCLUSION

For the reasons stated herein, the Court should dismiss CCST's claims against the Rule's closed-school discharge provisions (Counts Seven, Eight, and Nine) for lack of jurisdiction.

Dated: July 28, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Cody T. Knapp*
CHRISTINE L. COOGLE
CODY T. KNAPP
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically via the Court's

ECF system, which sent notification of such filing to counsel of record.

*/s/ Cody T. Knapp*