IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS,<br><br>                      Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION *et al.*,<br><br>                      Defendants. | Case No. 23-cv-433-RP |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS IN PART**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

ARGUMENT......................................................................................................................................2

    I.   CCST Lacks Associational Standing........................................................................................2

    II.  CCST Lacks Organizational Standing. ...................................................................................8

    III  CCST'S Claims Are Not Ripe. ................................................................................................9

CONCLUSION..................................................................................................................................10

i

## INTRODUCTION

The reasons for granting Defendants' motion to dismiss flow straightforwardly from the Court's decision declining to enter a preliminary injunction. As the Court noted, CCST does not "identify any specific plans" of a CCST-member school "that have been or may be delayed or abandoned" due to the Rule's amendments to the closed-school-discharge regulations that govern when federal-student-loan borrowers may be relieved of their repayment obligations following the closure of their school. *CCST v. U.S. Dep't of Education*, --- F. Supp. 3d ----, 2023 WL 4291992, at *7 (W.D. Tex. June 30, 2023). CCST also fails to plead facts that "explain why" those amendments in particular "would necessitate any such changes in the first place." *Id.* And even if CCST had identified some other concrete harm attributable to the Rule's closed-school-discharge provisions that CCST or its members might suffer (CCST did not), it would still be clear that "*any*" such injury "remains several steps away" and is contingent on discretionary choices by both Defendants and federal-student-loan borrowers. *Id.* Given all of this, CCST has not carried its burden to clearly allege that it or an identified member school has suffered a concrete, particularized, and actual or imminent injury that is fairly traceable to the closed-school-discharge provisions CCST challenges and redressable by a favorable ruling in this case. Nor has CCST shown that it would have standing to proceed in its own right as an organization. CCST similarly has failed to establish that its closed-school-discharge claims are ripe. These failings independently warrant dismissal of CCST's closed-school-discharge claims for lack of jurisdiction.

Nothing in CCST's opposition alters that conclusion. Whatever injuries CCST or its members may suffer from the Rule's provisions about borrower-defense claims, CCST cannot rely on those injuries for standing in gross to challenge unrelated aspects of the Rule. And with respect to the closed-school-discharge provisions, the threat of new liabilities that CCST claims its members face is not sufficiently concrete and imminent to support associational standing. Similarly, the other burdens

1

on schools that CCST points to are either self-inflicted or unconnected to the closed-school-discharge provisions. And because neither CCST nor its members would face any significant hardship from allowing the closed-school-discharge provisions to take effect, CCST's claims are not yet ripe for adjudication. Defendants' motion to dismiss should be granted.[1]

## ARGUMENT

### I. CCST lacks associational standing.

As Defendants have explained, CCST cannot challenge the Rule's closed-school-discharge provisions as a representative of its members' interests because it has not met its burden to "clearly allege facts demonstrating each element" of associational standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). In maintaining otherwise, CCST first suggests that the Court has already rejected Defendants' standing arguments through its finding that "at least one CCST member likely face[s] [new regulatory] burdens under the Rule," CCST Opp'n, ECF No. 91-1, at 13 (citing *CCST*, 2023 WL 4291992, at *5), given that "[t]he Rule, of course, includes the closed-school-discharge provisions," *id.* at 3. But "standing proceeds claim by claim," *All. for Hippocratic Med. v. FDA*, --- F.4th ----, 2023 WL 5266026, at *16 (5th Cir. Aug. 16, 2023), and so CCST cannot smuggle its assorted claims into federal court by blurring the distinctions among them and treating "the Rule" as an indivisible source of injury. *See, e.g.*, Defs.' Br., ECF No. 85, at 15. Rather, CCST "must establish standing for each and every provision" it challenges, *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019), at a

---

[1] On August 7, 2023, after Defendants filed their motion to dismiss, the Fifth Circuit granted CCST's emergency motion for an injunction pending appeal and stayed the effective date of the Rule's "borrower-defense and closed-school provisions." *See* ECF No. 87. The Fifth Circuit's order contains no reasoning concerning CCST's standing to challenge the closed-school-discharge provisions. Oral argument on the merits of CCST's preliminary-injunction appeal will be held in November. While the preliminary-injunction appeal proceeds, this Court retains jurisdiction to decide Defendants' motion to dismiss. *See Clower v. Wells Fargo Bank*, N.A., 381 F. App'x 450, 452 (5th Cir. 2010); *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1145 (5th Cir. 1982).

2

"granular[]" level, notwithstanding that "separate legal requirements are grouped together" in the Rule, *id.* at 162 n.4.[2]

Under that approach, it is clear that the Court's preliminary-injunction findings provide no support for CCST's claim to associational standing for its closed-school-discharge claims. The concrete injuries the Court previously identified—specifically, two CCST-member schools' expenditures of time to conduct "'preparatory activities' to ensure compliance" and "mitigate future liability," *CCST*, 2023 WL 4291992, at *5—stem from the Rule's borrower-defense provisions, not the provisions concerning closed-school discharges. *See id.* (citing new prohibitions imposed by the borrower-defense provisions on "aggressive recruitment"). And whatever "degree of preparatory analysis, staff training, and reviews of existing compliance protocols" might be required for CCST-member schools to comply with borrower-defense provisions of the Rule, *id.*, no such compliance burdens can be said to arise from provisions that only establish borrowers' eligibility to have their loan-repayment obligations discharged. .[3] *Compare id.* (crediting allegations of injury from provisions of the Rule that impose "new prohibitions" and "broaden[] the kinds of school actions that can give rise to a borrower defense claim (and potentially recoupment)"), *with, e.g.*, 87 Fed. Reg. 65,904, 65,965 (extending "Lookback Window" for determining certain borrowers' eligibility for closed-school discharge).

---

[2] This principle is all the more important to enforce here, given that the Department has long maintained severability clauses applicable to its closed-school-discharge regulations. *See, e.g.*, 34 C.F.R. § 685.223 (applicable to Direct Loans).

[3] As Defendants have noted, the reasoning of the Court's order denying a preliminary injunction underscores the weakness of CCST's allegations of harm from the closed-school-discharge provisions. In particular, the Court's order notes both the absence of specific allegations connecting those provisions to any injuries suffered by an identified CCST-member school and the clear indications that the injuries CCST relies upon more plausibly stem from unrelated regulatory provisions. *See CCST*, 2023 WL 4291992, at *7.

CCST spills considerable ink declaring that "schools, including many of CCST's members, are the objects of the Closed-School-Discharge Provisions," CCST Opp'n at 3, but that observation is not the slam-dunk that CCST portrays it to be. *See id.* at 12–13. Even if schools could in some sense be "objects" of the closed-school-discharge provisions, that would not confer standing for CCST's claims. Indeed, the test for standing "would be meaningless if the Court's standing inquiry simply asked whether the plaintiff was the subject of an allegedly" unlawful regulation. *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, --- F. 4th ----, 2023 WL 5184844, at *8 (4th Cir. Aug. 14, 2023) (acknowledging the plaintiffs' allegations that the challenged education policies were "mandatory and apply to all students" yet "disagree[ing] that such allegations are enough to confer standing"); *Arizona v. EPA*, --- F. 4th ----, 2023 WL 5156689, at *4 (D.C. Cir. Aug. 11, 2023) (noting that "the fact that [a] rule *applies* to a party hardly makes self-evident that party's standing to challenge the rule"). Even "objects" of allegedly unlawful regulations still bear the burden of clearly alleging the concrete, particularized, and actual or imminent injuries they suffer from such regulations. *Cf. Contender Farms, LLP v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015) (requiring object of regulation to "demonstrate a concrete injury resulting from the Regulation that would be redressable by a favorable decision of th[e] Court"); *Markle Interests, LLC v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 462 (5th Cir. 2016) (claim of "increased regulatory burden" could not support standing where burden was "purely speculative"), *vacated on other grounds sub nom. Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018).

If anything, CCST gets the analysis backwards. It is hard to see how schools—rather than borrowers—are the object of the Rule's closed-school-discharge provisions.[4] Those provisions

---

[4] Defendants acknowledge the Court's observation that CCST's member schools are among the objects of "the regulation at issue." *CCST*, 2023 WL 4291992, at *5. Yet in explaining its observation, the Court discussed only the Rule's borrower-defense provisions. As Defendants have explained, the Rule contains numerous provisions governing myriad aspects of the federal student loan programs. And because it is irrelevant for purposes of standing that "separate legal requirements

4

merely amend preexisting standards for determining whether and when borrowers are eligible to have their loan-repayment obligations discharged based on the closure of their school. *See* 2022 Final Rule, 87 Fed. Reg. 65904, 65966 (Nov. 1, 2022); *see also* CCST Opp'n at 4–9 (detailing the challenged amendments). Such administrative borrower-eligibility standards do not prohibit or require any conduct by schools. Importantly, "for standing purposes, th[is] absence of coercive power . . . makes a difference." *United States v. Texas*, 143 S. Ct. 1964, 1971 (2023). Whereas an object of government action may make a straightforward showing to establish standing, "much more is needed" when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Because the injuries CCST alleges to schools from the closed-school-discharge provisions necessarily stem from Defendants "allegedly unlawful regulation (or lack of regulation) of someone else," *id.*, CCST's members are not entitled to any presumption of standing and CCST must instead meet a heightened standard to establish standing on behalf of its members, *Texas*, 143 S. Ct. at 1971.

In attempting to carry its burden, CCST claims that the closed-school-discharge provisions require all Title IV-participating schools "to conform to new operational restrictions and face significant new liabilities for failing to do so." CCST Opp'n at 13. That sweeping claim is baseless. As explained *supra*, the administrative standards concerning borrowers' eligibility for discharges do not constrain schools' conduct. Thus, even under the Rule's closed-school-discharge provisions, schools remain at liberty "to add or discontinue program offerings or school facilities in response to market demand and student needs." Compl. ¶ 257. Moreover, as the record regarding CCST's member schools demonstrates, even when a school does close, that school's closure will not necessarily result

---

are grouped together," *In re Gee,* 941 F.3d at 162 n.4, the status of CCST's members schools as objects of other provisions of the Rule, namely the Rule's borrower-defense provisions, is irrelevant for purposes of assessing their standing to challenge the closed-school-discharge provisions.

in any closed-school discharges or the imposition of institutional liability. *See, e.g.*, CCST Opp'n at 17–18 (discussing the closure of an ECPI campus in Charlotte, North Carolina, in 2016); PI Hearing Tr. at 23:17–19 ("Q. During your tenure with ECPI, has any branch or campus ever closed? A. Yes. Q. And in those circumstances, were students who wanted to continue with their program unable to access educational opportunities at the remaining branches? A. Every student was, you know, taken care of. Has any closed ECPI institution ever been subject to recoupment before? A. No."). Instead, in the event of any particular school closure, the need for closed-school discharges and assessments of discharge-related liabilities will depend in substantial part on the independent choices of borrowers concerning their education, as well as on discretionary decisions of the Department in determining how to address any discharged loan obligations. *See* 87 Fed. Reg. at 65968 (noting that "for the Department to hold a school liable for a closed school discharge, the Department would have to initiate an administrative process against the institution under 34 CFR part 668 to establish the liability"); *id.* at 66015 (stating that, historically, recovery rates for closed school discharges are particularly low); 34 C.F.R. § 685.214(d) (establishing the requirements for borrowers to apply for closed-school discharges). In light of the uncertainty that any closed CCST member school would face liability for closed-school discharges, the absence of any suggestion that a CCST member school actually plans to close, and the contingency of any trigger for liability on the decisions of independent student-loan borrowers, concerns about new closed-school-discharge liabilities are not sufficiently concrete and imminent to support associational standing for CCST.

Many of the same problems undermine CCST's claim that its members face "retroactive liability" for past school closures. *See* CCST Opp'n at 17–18. Any new closed-school discharges based on past closures will only occur if eligible borrowers take steps to apply, and even if a borrower were to apply, that application and discharge alone would cause no harm to any school. CCST appears to contend that the Rule's "automatic" discharge provisions make discharge and liability certain in cases

6

of past school closures, but that is incorrect; the Department applies those provisions only prospectively in cases where a school has closed following the effective date of the Rule. *See* 87 Fed. Reg. at 65992 (stating that, with respect to the automatic discharge of loans in past cases of closed schools, the Department "is unable to retroactively implement the regulation"); *see also* FSA, *Automatic Closed School Loan Discharge*, https://studentaid.gov/manage-loans/forgiveness-cancellation/closed-school ("If your school closes on or after July 1, 2023, and you meet the eligibility requirements for a closed school discharge of your loans obtained to attend the closed school, you will generally receive an automatic closed school discharge one year after the date ED establishes as the school's official closure date."). Moreover, while the Department addresses closed-school-discharge liabilities as appropriate, recoupment is not "required" in all circumstances, contrary to CCST's suggestion. *See* CCST Opp'n at 13; *see, e.g.*, 87 Fed. Reg. at 66,005 (acknowledging that "recovery amounts" may differ from "discharge amounts"). Thus, the mere fact some borrower might newly qualify for discharge, *cf.* CCST Opp'n at 17–18, is insufficient to establish that the closed-school-discharge provisions will imminently be applied in a manner that causes concrete harm to a CCST member school.[5]

Unable to show that the closed-school-discharge provisions directly constrain its members or inflict any imminent threat of liability based on past or future closures, CCST also attempts to divine a "present injury" from an alleged chill on its members' operational and business activities due to the "contingent liability" fixed upon them by the potential for closed-school discharges. CCST Opp'n at 14. Here too, CCST misses the mark. Among other things, this purported injury is based entirely on CCST-member schools' "subjective apprehensions," yet the schools' apprehensions lack foundation

---

[5] Even if identifying a newly eligible borrower were enough to show injury to that borrower's school, CCST would face yet other hurdles to establish associational standing. The only borrower CCST identifies appears to have attended a school in North Carolina. *See* CCST Opp'n at 17. Given that CCST's mission is to represent "the interests of Texas career education schools," Compl. ¶ 22, seeking redress from liabilities imposed on a North Carolina school do not appear germane to CCST's organizational purpose.

7

in any threat of concrete injury. *Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683, 700 (5th Cir. 2000) ("It is the reality of the threat of [impending] injury that is relevant to the standing inquiry . . . ."). CCST cannot rely on the generalized notion that "the need to close a location is a constant risk for every school." CCST Opp'n at 14; *see Lujan*, 504 U.S. at 562 ("'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury"). And no CCST-member school is alleged to be closed or planning to close—nor does the wider availability of closed-school discharges make closures more likely—so the future application of the closed-school-discharge provisions to a situation involving a CCST-member school is purely hypothetical. Similarly, even though the availability of closed-school discharges is longstanding, CCST makes no allegations suggesting that prior experience bears out its members' liability concerns. Indeed, just the opposite appears to be true. *See* PI Hearing Tr. at 23:17–19. In these circumstances, the subjective chill CCST asserts that its member schools face is, at most, a self-inflicted injury based on fears of "hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

## II.     CCST lacks organizational standing.

With respect to organizational standing, CCST's claim of injury turns entirely on the effect of the closed-school-discharge provisions on its member schools: According to CCST, the closed-school-discharge provisions have chilled its member schools' plans to open new locations, and those members' failure to open new locations deprives CCST of dues. *See* CCST Opp'n at 18. Of course, CCST's subjective-chill theory fails for all the reasons discussed *supra*. But CCST's theory also fails for lack of traceability to the closed-school-discharge provisions. CCST's only relevant allegations concern ECPI's purportedly abandoned plans to open a new Dallas location, yet the Court already concluded that those plans were not abandoned because of the Rule's changes to the closed-school-discharge provisions. *See* CCST, 2023 WL 4291992, at *7 (citing PI Hearing Tr. 27:1–4). Because

CCST offers no other basis to support standing in its own right, CCST has failed to establish organizational standing to challenge the closed-school-discharge provisions.

### III. CCST's claims are not ripe.

Even if CCST could overcome the hurdles to establishing its standing, its claims concerning the closed-school-discharge provisions would still be subject to dismissal because they are not ripe. With respect to the fitness of the issues for judicial resolution, CCST simply maintains that its claims are "purely legal." CCST Opp'n at 19. But "even purely legal issues may be unfit for review." *CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 987 (D.C. Cir. 2008). Where a claim "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all,'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)), that claim is not yet ripe for adjudication. Such is the case here: However "purely legal" CCST's facial challenges to the closed-school-discharge provisions may be, they rest on inchoate fears that, among other things, a CCST-member school may close; that the Secretary may establish a school-closure date that increases the number of borrowers who are potentially eligible for discharge; that one of those potentially eligible borrowers will be unable to complete their program of study following the school's closure and be found eligible for a closed-school discharge; and that the Department will subsequently initiate proceedings to recoup the discharged loan amounts from the school or its affiliates. As the Department's past practice and CCST-member schools' prior experiences with school closures confirm, *see, e.g.*, PI Hearing Tr. at 23:17–24:1, it is likely that one or more of those future events "may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300. And even if it could be assumed that some CCST member might some day be aggrieved by a particular application of the closed-school-discharge provisions, the substantive and procedural legality of that action and the underlying regulations will be more clearly assessed, and the scope of the dispute rendered more manageable, in the light of that concrete factual context.

Similarly, CCST has failed to identify any significant hardship that compels judicial review in this pre-enforcement posture. Unlike in cases like *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), and *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985), the closed-school-discharge provisions at issue here do not regulate any primary conduct of a CCST member school—schools are free to manage their program offerings as they see fit. And while CCST asserts that, absent pre-enforcement review, its member schools will be forced to "operate for years or decades under the threat" liability, resulting in "distort[ed] decisions about optimal program offerings and location management," CCST Opp'n at 20, claims of such an operational chilling effect absent immediate judicial review are belied by past experience. Indeed, CCST could likely make the same claim about the regulatory state of affairs now; the Department's regulations already permit borrowers to obtain closed-school discharges. Accordingly, even if the availability of closed-school discharges may weigh on some schools' operational planning, CCST-member schools face no special hardship from continuing to operate, as they already do, notwithstanding the possibility that some borrowers may someday obtain discharges following a school closure. Further, as explained *supra*, no CCST-member school faces "immediate" and "retroactive[]" liability, CCST Opp'n at 20, based on the modest expansion of borrowers' eligibility for discharge based on past school closures. Finally, the absence of any meaningful hardship is reinforced by the availability of extensive administrative and judicial review procedures that ensure no CCST member school will be directly injured in a manner connected to the closed-school-discharge provisions without ample opportunity to press the substantive and procedural claims that it raises here. *See* CCST, 2023 WL 4291992, at *7.

## CONCLUSION

For the reasons stated herein, and in Defendants' motion to dismiss, the Court should dismiss CCST's claims against the Rule's closed-school discharge provisions (Counts Seven, Eight, and Nine) for lack of jurisdiction.

10

Dated: August 28, 2023                                Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Principal Deputy Assistant
                                                  Attorney General

                                                  MARCIA BERMAN
                                                  Assistant Branch Director

                                                  */s/ Cody T. Knapp*
                                                  CHRISTINE L. COOGLE
                                                  CODY T. KNAPP
                                                  Trial Attorneys
                                                  U.S. Department of Justice
                                                  Civil Division
                                                  Federal Programs Branch
                                                  1100 L St. NW
                                                  Washington, D.C. 20005
                                                  Telephone: (202) 532-5663
                                                  Facsimile: (202) 616-8470
                                                  E-mail: cody.t.knapp@usdoj.gov

                                                  *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically via the Court's ECF system, which sent notification of such filing to counsel of record.

/s/ Cody T. Knapp