**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as the Secretary of Education,<br><br>     Defendants. | Case No. 1:23-cv-00433-RP |

**PLAINTIFF'S CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS IN PART**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 3

BACKGROUND ........................................................................................................... 4

   I.   Closed-School-Discharge Provisions ................................................................. 4

      A.   Lookback Period Increased by 50% for Certain Loans ................................. 6

      B.   Closure Date Made Potentially Earlier ........................................................ 7

      C.   Previously Ineligible Borrowers Are Now Eligible for Discharge.............................. 8

      D.   Automatic, Complete Loan Discharge Guaranteed for More Borrowers.................... 9

  II.  Previous Closed-School Determinations and CCST Members ......................... 10

  III.  Proceedings ................................................................................................... 10

ARGUMENT ............................................................................................................. 11

   I.   CCST Has Standing....................................................................................... 12

      A.   CCST Has Associational Standing ............................................................. 12

      B.   Organizational Standing ............................................................................ 18

  II.  The Closed-School-Discharge Claims Are Ripe ............................................ 19

CONCLUSION............................................................................................................ 20

## PRELIMINARY STATEMENT

The Court previously, and correctly, rejected the Department's arguments as to CCST's purported lack of standing when it properly concluded that CCST likely has standing to challenge the Rule. *See* Order, ECF No. 74 ("PI Order"). The Rule, of course, includes the closed-school-discharge provisions therein (the "Closed-School-Discharge Provisions"). The Court correctly reasoned that "[t]here is no real dispute that CCST's member schools are among the objects of the regulation at issue." *See id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) ("[W]e find no reason to depart from the ordinary rule that [plaintiffs], as objects of the Regulation, may challenge it."). CCST's challenges to those provisions—which involve purely legal questions, and delay of which would pose hardship to schools—are also ripe.

In its newly filed motion to dismiss, the Department repeats the same misplaced arguments, but only as to the Closed-School-Discharge Provisions. The Rule's amendments to the Closed-School-Discharge Provisions improperly expand the Department's ability to grant complete, automatic loan discharges for borrowers and, correspondingly, impose greater liability against schools than under the existing regulations. Indeed, the Department views recoupment from schools as mandated by statute. *See* Mot. 2. The resulting broadened liability exposure to schools, including the members of CCST that participate in Title IV ("Participating Schools"), is evidenced by the Department's unambiguous intent to "increase the number of closed school discharges." 87 Fed. Reg. 65904, 65969 (Nov. 1, 2022).

Because schools, including many of CCST's members, are the objects of the Closed-School-Discharge Provisions, and suffer operational injury resulting from those provisions, CCST has standing. Moreover, the purely legal issues presented are fit for judicial decision, and it would

pose extraordinary hardship to deny review until schools are actually closed and the provisions are enforced against them. This Court should deny the Department's motion to dismiss.

## BACKGROUND

### I.     Closed-School-Discharge Provisions

Under the existing regulations, the Department's Closed-School-Discharge Provisions provide for loan discharges when a Title IV school is deemed to have closed one of its locations and certain criteria are met.[1] *See* 34 C.F.R. § 685.214 (as applied to Direct Loans).[2] Specifically, loan discharges may be granted to certain students who were enrolled at the location on its closure date, or who withdrew within a certain period before the closure date (the "Lookback Period"). The Rule, however, makes significant changes to these provisions that both expand eligibility for discharge and increase the number of eligible borrowers who receive complete loan discharges, automatically and without filing an application.

By necessarily increasing the number of discharges and establishing a framework that emphasizes recoupment as a "critical tool," the Rule necessarily exposes schools that have closed schools (or will close schools) to recoupment liability. This is because, according to the Department's reading of the HEA, recoupment is required for every discharge awarded under the Closed-School-Discharge Provisions. *See* Mot. 2.

---

[1] Unless otherwise noted, "discharge" in this brief refers both to the discharge of outstanding debt as well as the refund of loan payments already made. *See* 34 CFR § 685.214(b)(1)-(2) (providing for both).

[2] The Rule also makes analogous amendments to the Close-School-Discharge Provisions that apply to other loan programs. *See* 34 C.F.R. §§ 674.33(g), 682.402(d). For simplicity, citations throughout are limited to the Provisions that apply to Direct Loans.

| **Under the 2019 Regulations**<br>(citations to 34 C.F.R. on July 1, 2020) | **Under the Rule**<br>(citations to 34 C.F.R. currently) |
| --- | --- |
| Lookback Period:<br>• 120 days before closure date (loans disbursed before July 1, 2020). § 685.214(c)(1)(i)(B).<br>• 180 days before closure date (loans disbursed on or after July 1, 2020). § 685.214(c)(2)(i)(B). | Lookback Period:<br>• 180 days before closure date (all loans). § 685.214(d)(1)(i)(B). |
| Closure date:<br>• The date the location closes, when all instruction at the location has ceased. § 685.214(a)(2)(i). | Closure date:<br>• "[T]he earlier of: the date, determined by the Secretary, that the school ceased to provide educational instruction in programs in which most students at the school were enrolled, or a date determined by the Secretary that reflects when the school ceased to provide educational instruction for all of its students . . . ." § 685.214(a)(2)(i). |
| Ineligible borrowers:<br>• Completed program "through a teach-out at another school[/location] or by transferring academic credits or hours earned at the closed school to another school" (loans disbursed before July 1, 2020). § 685.214(c)(1)(i)(C).<br>• Completed program "or a comparable program" through a teach-out or by transferring credits (loans disbursed on or after July 1, 2020). § 685.214(c)(2)(ii). | Ineligible borrowers:<br>• Completed program "at another branch or location of the school or through a teach-out agreement at another school, approved by the school's accrediting agency and, if applicable, the school's State authorizing agency." § 685.214(d)(1)(i)(C). |

| Automatic discharge guaranteed:<br>• 3 years after closure date if student did not enroll at a "title IV-eligible institution" during that time, and if closure date was on or after November 1, 2013, and before July 1, 2020. § 685.214(c)(3)(ii). | Automatic discharge guaranteed:<br>• 1 year after closure date if student does not accept a "program at another branch or location of the school or through a teach-out agreement at another school" with the same accreditation and state authorization, or 1 year after last date of attendance at such continuation program if student fails to complete their education for any reason. § 685.214(c). |
|---|---|

The Department expressly adopted the rule to "increase the number of closed school discharges." 87 Fed. Reg. at 65969. It does so by (1) expanding the Lookback Period for loans disbursed prior to July 1, 2020; (2) allowing for an earlier closure date of a school; (3) making more borrowers who complete their education eligible for discharges; and (4) providing automatic discharge for a much broader swath of borrowers. Perhaps the most significant change is the amendment to the automatic-discharge provisions, which was motivated by the Department's belief "that there are far too many borrowers missing out of [sic] closed school discharges that should be captured by an automatic process." 87 Fed. Reg. at 65964.

## A.    Lookback Period Increased by 50% for Certain Loans

The Rule, which applies retroactively, expands to 180 days the Lookback Period for loans disbursed before July 1, 2020. As a result, students who withdrew between 120 and 180 days before a school's closure date will be newly eligible for a discharge. This potentially includes a significant number of additional borrowers because, as the Department intended, it includes students who withdrew a full semester before the location closed. *See* 87 Fed. Reg. at 65965. For example, if a location ceased instruction at the end of its spring semester, a student who decided to withdraw at the end of the preceding fall semester would be newly eligible for a discharge. Under the 120-day

6

period, only students who withdrew after starting the spring semester would be eligible. Borrowers who withdrew for reasons unrelated to the impending closure would nonetheless qualify for a closed school discharge.

Because the Closed School Discharge regulations do not include a limitations period, a discharge can be awarded, and a recoupment proceeding initiated, at any time. So, for a school that has already closed a location, this change to the Lookback Period potentially exposes the school to additional liability from that closure.

### B. Closure Date Made Potentially Earlier

The Rule also redefines the date on which a location is considered "closed" for purposes of determining a borrower's eligibility for discharge. Under the Rule, a location's closure date is the date on which it ceases instruction "in programs in which most students . . . were enrolled." 34 C.F.R. § 685.214(a)(2)(i). This means that the Lookback Period may, in reality, extend much further than 120 or 180 days before all instruction at the location ceases.

This is illustrated by the hypothetical example below, where the more popular program (Autobody Repair) moves to a different location on July 1, 2025, which becomes the closure date despite the remaining program (Automobile Mechanics) not relocating until July 1, 2028.



Under the 2019 regulations, students who withdrew up to 180 days before Location A was shuttered completely on July 1, 2028, could apply for a closed school discharge if otherwise eligible. Under the Rule, any student who withdrew up to 3 ½ years before that actual closure is potentially eligible—including students in the Automobile Mechanics program.

### C.    Previously Ineligible Borrowers Are Now Eligible for Discharge

Under the 2019 regulations, a borrower is ineligible for a closed school discharge if they complete their program at a different location, through a teach-out plan at a different school, or by transferring credits to a different school. For loans disbursed after July 1, 2020, borrowers are also ineligible if they completed "a comparable program" through one of these methods. 34 C.F.R. § 685.214(c)(2)(ii) (July 1, 2020). For example, a student who transfers credits in Automobile Repair and earns a certificate in Vehicle Maintenance and Repair[3] at a different school may be ineligible. The 2019 regulations reflect Congress's policy judgment that closed-school discharges should be reserved for borrowers who were unable to complete their educations due to the closure of an institution. *See* 20 U.S.C. § 1087(c)(1) (requiring closed-school-discharge of federally insured loan when a student "is unable to complete the program in which such student is enrolled due to the closure of the institution").

Under the Rule, only students who complete a program at a different location of the same school, or who complete the same program through a teach-out agreement with a different school, are ineligible. Students who transfer credits to a different school on their own initiative are eligible for a full discharge, even if they successfully complete that program and incur no extra cost. Students are also eligible even if they complete a comparable but non-identical program through

---

[3] *See* Nat'l Ctr. for Educ. Stat., Detail for CIP Code 47.0600, https://nces.ed.gov/ipeds/cipcode/cipdetail.aspx?y=56&cipid=91553 (Vehicle Maintenance and Repair Technology/Technician, General) (last visited Aug. 11, 2023).

8

a teach-out agreement at a different school, so long as the new school's program has a different Classification for Instructional Programs ("CIP") code.

### D.     Automatic, Complete Loan Discharge Guaranteed for More Borrowers

Under the 2019 regulations, if borrowers meet the other criteria for a closed school discharge, they will receive an automatic discharge, if they do not enroll in another Title IV school within *three years* of the location's closure date. *See* 84 Fed. Reg. 49788, 49880 (Sept. 23, 2019). However, automatic discharge is possible only when the date of the school closure is on or after November 1, 2013, and before July 1, 2020. *See id.*

Under the Rule, all borrowers—regardless of when the location closed—will receive an automatic discharge one year after the newly defined closure date if the borrower chose not to attend a different location of the same school or a different school through a teach-out agreement. *See* 87 Fed. Reg. 65,964. Thus, if a borrower chose to continue at the new location or a teach-out school but did not finish the program, they would receive an automatic discharge one year after their last date of attendance at the new location or school. *See id.*

The Rule makes automatic discharge mandatory for a much larger group of borrowers, including borrowers who may have left their programs, or taken a one-year hiatus, for reasons unrelated to the location's closure. This group now also includes borrowers who transferred their credits to a different school and completed their educations that way, as well as borrowers who simply declined—for any reason—to finish at a different location or through a teach-out agreement. And borrowers who remained enrolled at a location more than one year after its retroactively determined "closure date" will receive an automatic discharge immediately when the location ceases operations, so long as the student has not yet accepted an opportunity to continue at a different location or through a teach-out agreement.

## II.    Previous Closed-School Determinations and CCST Members

As of August 14, 2023, the Department has determined that over 10,000 school locations have closed since 2010[4] (which amounts to approximately one school closure for every eight schools each year[5]). As reflected in the Department's published list, among the Department-determined closed schools are former campuses of several CCST members. *Compare* ECF No. 2-1 (list of CCST's Title IV members) *with* U.S. Dep't of Educ., Federal Student Aid, *Closed School Search Page*, https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx (Aug. 14, 2023) (listing the locations, and the schools operating them, that the Department has designated as "closed," as well as the designated closure date).

## III.    Proceedings

CCST challenges the Rule's Closed-School-Discharge Provisions on several grounds, including that they exceed the Department's authority, violate the APA, and are unconstitutional (violate due process). *See, e.g.,* Compl. ¶¶ 252-66. In responding to CCST's motion for preliminary injunction, the Department argued that the Court lacked jurisdiction to hear these and other claims because CCST lacked standing and the claims were unripe. The Court rejected these arguments, finding that CCST demonstrated that it would likely have standing to challenge the rule. *See* PI Order 8-10.

CCST noticed its appeal of the Court's order denying the request for preliminary injunction. ECF No. 75. On June 30, 2023, the Court of Appeals issued a temporary administrative

---

[4] *See* U.S. Dep't of Educ., Federal Student Aid, *Closed School Search Page* at rows 19532-44 https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx (Aug. 14, 2023) (listing the number of closure dates occurring between 2010 and 2022, inclusive).

[5] *Cf.* U.S. Dep't of Educ., Federal Student Aid, *2023-24 Federal School Code List (August 2023)*, available at https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-08-10/2023-24-federal-school-code-list-participating-schools-august-2023 (listing 6,154 Title IV schools).

stay of the Rule's effective date as applied to CCST and its members. ECF No. 77. On August 7, the Court of Appeals fully granted CCST's motion for injunction pending appeal, staying the effective date of the Rule's Closed School Discharge and borrower defense provisions nationwide. ECF No. 87. In granting the requested injunction, the Court of Appeals implicitly accepted that CCST had adequately shown a likelihood of harm resulting from both the borrower-defense and closed-school provisions.

On July 28, 2023, the Department filed the instant motion to dismiss in part, limited to the issue of CCST's standing vis-à-vis the Rule's Closed-School-Discharge Provisions. ECF No. 85. The Department has not answered the complaint or moved to dismiss any other claims.

## ARGUMENT

"A motion under 12(b)(1) should be granted *only if it appears certain* that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n, Miss. v. City, Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (emphasis added). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561-62 (cleaned up); *South Austin Coalition Comm. v. SBC Communications*, 274 F.3d 1168, 1171 (7th Cir. 2001) ("[c]omplaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be alleged generally"). Although the complaint allegations alone suffice, CCST also identifies closed-school evidence from the Department of Education of which this Court may take judicial notice, in addition to declarations submitted by CCST's member schools. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) ("[U]nder Rule 12(b)(1), the court may find a

plausible set of facts by considering … the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

## I.      CCST Has Standing.

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (internal quotation marks omitted). For the reasons stated herein, as well as those presented in its motion for preliminary injunction, CCST has both associational and organizational standing.

### A.      CCST Has Associational Standing

As a trade association, CCST has Article III standing to bring suit on behalf of its member schools because (1) at least one member school would have standing; (2) CCST's challenge to the Rule, including its Closed-School-Discharge Provisions, is germane to CCST's purpose, *see* Compl. ¶¶ 10, 25; and (3) the participation of CCST's individual members is not required because the Rule applies equally to all of them and all of the challenges brought are legal in nature. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 181 (2000).

The Department disputes only the first element, asserting that no CCST member would have standing individually. As the Court has already tentatively concluded, that argument is misplaced.

*First*, there is no dispute that CCST's member schools are "objects of the [r]egulation" at issue. *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015). The

Department does not dispute this, nor can it. As objects of the regulation, schools are required to conform to new operational restrictions and face significant new liabilities for failing to do so.

*Second*, the Rule will subject several CCST members to expanded liability for locations they have already closed. Because much of this liability results from mandatory automatic discharges under the Rule, and because the Department believes it is required by statute to recoup those amounts from schools, the injuries posed by this expanded liability pose a "substantial risk" of harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

## 1. Regulatory Burdens and Costs Imposed on CCST Schools

As the Court already concluded, "[t]here is no real dispute that CCST's member schools are among the objects of the regulation at issue." PI Order, ECF No. 74, at 9. And "[w]hen a challenged regulation applies to a plaintiff directly, 'there is ordinarily little question' that the plaintiff has standing." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). A party subject to new regulations is almost always subject to new regulatory burdens, including the need to take steps to avoid new penalties or liabilities. *See id*. at 10; *Contender Farms*, 779 F.3d at 266. The Court found that at least one CCST member likely faced such burdens under the Rule. PI Order, ECF No. 74, at 10.

Even minor regulatory burdens are sufficient injuries for purposes of standing. For example, in a decision endorsed by the Fifth Circuit, the D.C. Circuit found sufficient injury in "the necessity of complying with two sets of regulations enforced by two federal agencies" instead of one, "regardless of the content of either set of regulations." *Ass'n of Am. Railroads v. Dep't of Transp.*, 38 F.3d 582, 585 (D.C. Cir. 1994); *see Contender Farms*, 779 F.3d at 266 (approving this holding). Yet the Department argues that no CCST member would have standing to challenge the Rule's Closed-School-Discharge Provisions because no CCST member plans imminently to close a location. *See* Mot. 12.

*First*, such a showing is not required. In *Contender Farms*, horse-show competitors challenged a Department of Agriculture rule enforcing a ban on the "soring" of horse's legs. 779 F.3d at 262 & n.1. As a result of the rule, in order to participate in a horse show, competitors had to agree to mandatory minimum penalties for soring, along with specific appeal procedures. *Id.* at 263. Importantly, the plaintiffs did not allege that they sored horses or that they planned to do so, but the Court of Appeals nonetheless found standing based on the rule's added regulatory burdens. *Id.* at 266. Specifically, the plaintiffs "face[d] harsher, mandatory penalties," requiring them to "take additional measures to avoid even the appearance of soring." *Id.* They also lost their ability to choose competitions with less risky penalties and procedures. *See id.*

Here, each CCST member school similarly faces harsher, mandatory liabilities for closing a location. Because the need to close a location is a constant risk for every school, and because the Rule expands the costs associated with that risk, the Rule immediately affects how CCST's member schools make operational and business decisions, regardless of whether they imminently plan to close a location. In other words, the Rule affixes a contingent liability upon schools that causes present injury by constraining current operating decisions in program offerings and decisions to open and close schools.

The Complaint contains detailed allegations of such injuries. *See, e.g.*, Compl. ¶ 257 (alleging that the Closed-School-Discharge Provisions "affect[] the practical operation of schools" by constraining "decisions to add or discontinue program offerings or school facilities in response to market demand and student needs," and that the vague definition of when a school is closed "risks penalizing schools that adjust their programming to reflect market shifts," and may lead schools to "keep old programs afloat simply to avoid school loan liability"); *id.* ¶ 258 (alleging that the Provisions "introduce[] considerable financial risk to what should be an efficient and

flexible use of facilities to meet program demands as they ebb and flow"); *id.* ¶ 27 (alleging that "the Final Rule requires participating member schools to take immediate or imminent action to avoid . . . liability . . . under the Final Rule.").

CCST has also submitted evidence detailing the actual present injury of members that have altered their behavior in response to the risks posed by the new Closed-School-Discharge Provisions. *See, e.g.*, ECF No. 25 at App-33 ¶¶ 17-18, App-41-43 ¶¶ 22-26.[6] Indeed, the Court heard testimony that ECPI University had abandoned plans to open a location in Dallas because of the need to conserve resources in anticipation of increased liability. *See* Prelim. Inj. Hr'g Tr. 9:12-10:8. The new Closed-School-Discharge Provisions contribute significantly to a school's liability risk.

The Department relies heavily on *Clapper v. Amnesty International*, 568 U.S. 398 (2013), for the proposition that injury to at least one CCST member school is speculative and thus insufficient under Article III. Such reliance is misplaced. In *Clapper*, a group of lawyers, human-rights workers, and others challenged a law permitting expanded government surveillance of communications with persons abroad. *See id.* The Supreme Court held that the plaintiffs lacked standing because it was purely speculative that their communications would be targeted for surveillance and plaintiffs could not trace any potential injury to the statute. *See id.*

*Clapper* is distinguishable on several grounds. First, the plaintiffs there were not objects of the challenged regulation, a fact that was significant to the Court's reasoning. *See id.* at 419 (noting that the challenged policy "does not regulate, constrain, or compel any action on [the plaintiffs'] part."); *id.* at 420 (noting that the plaintiffs were not "unquestionably regulated by the relevant

---

[6] Notwithstanding the Department's assertions, the substance of paragraph nos. 252-266 and Counts Seven through Nine of the Complaint challenge the Rule's Closed-School-Discharge Provisions and the liability of schools and controlling (or affiliated) persons for those discharges.

statute"). Second, *Clapper* was decided after summary judgment, during which a plaintiff faces a higher burden of proof. *See id.* at 412. Third, the Court in *Clapper* found it speculative that the plaintiffs' communications would be surveilled under a statute that merely permitted the government to do so. Here, there is no question that the new Closed-School-Discharge Provisions will entitle more borrowers to automatic discharge, which the Department believes it then has a statutory duty to recoup. *See* 87 Fed. Reg. at 65969.

Indeed, the Court in *Clapper* made clear that injuries of the kind CCST has alleged are sufficient:

> Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a "substantial risk" that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm.

568 U.S. at 414 n.5; *see also Driehaus*, 573 U.S. at 158 (confirming that "a substantial risk" of harm is sufficient for standing); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir.1998) (reasoning that "[a] probabilistic harm, if nontrivial, can support standing"). At the pleading stage, CCST has more than satisfied that standard. CCST has alleged, and the evidence further supports, that its members are incurring costs and avoiding beneficial business decisions (in the form of program or facility reorganizations) as a result of risks of closed-school-discharge liability.

*Second*, even if CCST were required to allege or show the impending closure of a member's location, CCST *has* made such a showing. At the preliminary-injunction hearing, Mark Dreyfus, President of ECPI University, testified that ECPI planned to close a location in Richmond, Virginia, but that the Rule had constrained its ability to do so.[7] PI Tr. 11:4-12:2.

---

[7] ECPI University – San Antonio is a member of CCST, and the San Antonio campus is part of ECPI University, which is a single entity whose interests are represented by CCST in this litigation. Arthur Decl. ¶ 4; PI Tr. 97:13-20. An injury to ECPI (whether directly or through one or more of its locations) is an injury to a CCST member.

In sum, CCST is not required to allege an imminent school closure, just as the *Contender Farms* plaintiffs were not required to allege that they planned to sore horses. Nevertheless, CCST has already made such a showing. "Causation and redressability then flow naturally from the injury." *Contender Farms*, 779 F.3d at 266. Vacatur of the Rule would redress the injuries it causes.

### 2.    Additional Liabilities and Costs for Previously Closed Locations

The Rule also imposes retroactive liability on several CCST members that the Department has already found to have closed locations. Because the Department has made clear its intention to seek recoupment of all closed school discharges—indeed, it believes the HEA requires it to do so—the Rule's changes to the Closed School Discharge regulations pose an immediate threat of liability to these CCST schools.

For example, according to the Department's list of school closures, Concorde Career Colleges has closed four Texas locations: a location in Arlington in 2014, a location in Dallas in 1993, and two Houston locations in 1992. *See* U.S. Dep't of Educ., Federal Student Aid, *Closed School Search Page*, https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx (Aug. 14, 2023). The Department's list also indicates several closures across the country by Pima Medical Institute, Vogue College of Cosmetology, Fortis College, Southern Careers Institute, and ECPI University, among others. *Id.*; *see also* ECF No. 2-1 (list of CCST's Title IV member schools).

As another example, ECPI has identified two borrowers who are newly eligible for automatic discharge as a result of the Rule's changes to the Closed-School-Discharge Provisions. Arthur Decl. ¶ 8. The newly eligible borrowers withdrew their enrollment from ECPI's location in Charlotte, North Carolina, more than 120 days but less than 180 days before the Department's listed closure date of June 30, 2016. Under the 2019 regulations, absent an exceptional

circumstance, these borrowers would be ineligible for a closed-school discharge because they withdrew more than 120 days before the closure date. But under the Rule, they are newly entitled to an *automatic* discharge because (1) they withdrew less than 180 days before the closure date; (2) they did not subsequently complete their programs at a different location of the same school; and (3) more than one year has passed since the closure date. If the Department decides to set an earlier closure date under the Rule, the number of newly eligible borrowers may be even higher.

The identification of these borrowers is more than sufficient (though unnecessary) for standing. But there are likely many other newly eligible borrowers who attended locations that were closed by CCST members. Indeed, the very aim of the Rule's Closed-School-Discharge Provisions is to make more borrowers eligible—and to grant more discharges automatically. The imposition of retroactive liability for these CCST member schools is potentially substantial, would directly result from the Rule's changes to the Closed-School-Discharge Provisions, and would be redressed by a vacatur.

### B.        Organizational Standing

 CCST also has organizational standing apart from its members. CCST is funded by dues and fees from member schools. *See* ECF No. 25 at App-27-28 ¶¶ 28, 33-35. When schools refuse to open new locations, CCST suffers concrete injury. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459–60 (1958); *Constr. Indus. Ass'n of Sonoma Cnty. v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975) (economic injury-in-fact to association from loss of dues); Compl. ¶ 22. These injuries, caused and threatened by the Rule's Closed-School-Discharge Provisions, would be redressed by vacating the challenged Rule.

**II.      The Closed-School-Discharge Claims Are Ripe**

In assessing ripeness, courts consider (1) a claim's fitness for judicial determination and (2) the hardship to the plaintiff if such a determination is withheld. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated in other respects by Califano v. Sanders*, 430 U.S. 99 (1977).

*First*, CCST's claims are fit for judicial determination because they are purely legal and do not involve factual or technical questions that would benefit from further pre-judicial development. *See id.* at 149. The Department points to no factual or technical questions implicated by the Closed-School-Discharge Provisions at all—let alone any such questions that would benefit the adjudication of the purely legal questions at issue. CCST's challenges—to the definition of a closure date before actual closure; to the rule's retroactivity; to extending relief to students who are not "unable to complete the program in which such student is enrolled *due to the closure* of the institution," 20 USC § 1087(c)(1) (emphasis added); to the lack of procedures to contest liability; and to controlling-person liability, are "purely legal, and will not be clarified by further factual development," *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985); *see* Compl. ¶¶ 252-265.

*Second*, restricting challenges to post-enforcement challenges, as the Department proposes, is an extraordinary hardship. Cognizable hardship includes "practical harms on the interests advanced by the party seeking relief[] and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 734 (1998)); *see also United Refining Co. v. Dep't of Energy*, 482 F. Supp. 1131, 1135 (W.D. Pa. 1980) (finding hardship from a pricing regulation's effect on the plaintiff's "day-to-day pricing decisions").

The Closed-School-Discharge Provisions cannot be enforced until a location actually closes. Requiring schools to operate for years or decades under the threat of potentially immense expanded liability for automatic discharges if a location closes, which distorts decisions about optimal program offerings and location management, is indisputably "palpable and considerable hardship." *Union Carbide*, 473 U.S. at 581 (citation omitted); *see also* 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.4 (3d ed. Apr. 2023 update) ("The most important aspect of the hardship determination is a clear recognition that a decision of legal relationships often should be available before irrevocable commitments are made."). As described above, the Rule's changes to the Closed-School-Discharge Provisions have already caused hardship by requiring "an immediate and significant change in [schools'] conduct of their affairs with serious penalties attached to noncompliance," meaning that "access to the courts under the Administrative Procedure Act . . . must be permitted." *Abbott Lab'ys*, 387 U.S. at 153.

Hardship also stems from the Provisions' immediate effect of retroactively subjecting at least one CCST member to new liability from locations that have already closed. *See* Arthur Decl. ¶¶ 7-8. Such liabilities, even if eventually reversible through judicial review, threaten such significant effects on a school's financial health—and its compliance with the Department's financial-responsibility regulations, *see* 34 C.F.R. § 668.171-75—that an after-the-fact review would impose a hardship that is both substantial and unnecessary.

## CONCLUSION

For the reasons stated herein, the Court should deny the Department's motion to dismiss, or alternatively give CCST leave to amend its complaint.

Dated:  August 24, 2023

Respectfully submitted,

 /s/ Allyson B. Baker
Allyson B. Baker (*pro hac vice*)
Meredith L. Boylan (*pro hac vice*)
Stephen B. Kinnaird (*pro hac vice*)
Michael Murray (*pro hac vice*)
Sameer P. Sheikh (*pro hac vice*)
Tor Tarantola (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20037
Telephone: (202) 551-1830
Fax: (202) 551-0330
Email:  allysonbaker@paulhastings.com

Philip Vickers (TX Bar No. 24051699)
Katherine Hancock (TX Bar No. 24106048)
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807
Email: pvickers@canteyhanger.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all

counsel of record via the Court's CM/ECF system on August 24, 2023.

/s/ Allyson B. Baker
Allyson B. Baker

# EXHIBIT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

CAREER COLLEGES & SCHOOLS
OF TEXAS,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
EDUCATION; MIGUEL CARDONA,
in his official capacity as the Secretary
of Education,

Defendants.

Case No. 1:23-cv-00433-RP

## DECLARATION OF JEFF ARTHUR
## (ON BEHALF OF ECPI UNIVERSITY)

I, Jeff Arthur, do hereby declare and state as follows:

1.     This declaration is based on my personal knowledge, and I could and would competently testify to its contents if called to do so.

2.     I am the Vice President of Regulatory Affairs and Chief Information Officer of ECPI University ("ECPI"). I previously provided a declaration in support of the motion for preliminary injunction filed by Career Colleges and Schools of Texas ("CCST"). *See* ECF No. 25 at App-37-46 (filed Apr. 5, 2023). I incorporate the statements made in that declaration.

3.     I now submit this declaration in support of CCST's brief in opposition to the Department's motion to dismiss.

1

4.      ECPI San Antonio ("ECPI Texas") is a member of CCST. The San Antonio campus is part of ECPI and not a separate entity. In representing the interests of its members in this litigation, CCST therefore represents the interests of ECPI Texas and ECPI.

5.      ECPI Texas is currently a Title IV participant, and ECPI Texas intends to continue participating in Title IV.

6.      I have read and am familiar with the Department of Education's recent amendments to the closed school discharge provisions, which the Department promulgated as part of the recent rulemaking published in the Federal Register. 87 Fed. Reg. 65904 (Nov. 1, 2022) (the "Rule"). The Rule makes changes to regulations that were last amended in 2019 (the "2019 regulations").

7.      According to the Department of Education's published "closed school list," which reflects the Department's determinations regarding locations that constitute "closed schools," ECPI has two "closed schools"—one in Newport News, Virginia, and one in Charlotte, North Carolina.[1] As of August 7, 2023, the Department's list shows their closure dates to be January 13, 2022, for the Newport News location and June 30, 2016, for the Charlotte location.

8.      Based on my review of the Rule, as well as my review of records for students enrolled at the Newport News and Charlotte locations, I can say with certainty that the Rule makes, at the very least, one borrower newly eligible for an automatic and complete discharge under the new closed school discharge regulations. I made this determination by identifying additional students who withdrew their enrollments from the Charlotte location between 120 and 180 days before the Department- listed closure date and who did not subsequently re-enroll at a

_____

[1] U.S. Department of Education, Closed School Search Page (August 7, 2023), https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx.

2

different ECPI location. Under the 2019 regulations, however, these same borrowers would not be eligible for a closed school discharge. When the Department exercises its enlarged discretion under the Rule to set earlier closure dates than what the existing regulations prescribe, it is highly likely that even more borrowers will be newly eligible for automatic and complete discharge.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this 21st day of August, 2023.

Jeff Arthur

3