**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION *et al.*,<br><br>Defendants. | Case No. 23-cv-433-RP |

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

I.      Pre-OBBBA Statutory Background ............................................................. 2

II.     Pre-OBBBA Procedural History .................................................................. 6

III.    In the OBBBA, Congress Restores and Revives the 2019 Regulations as They
        Were in Effect on July 1, 2020. .................................................................... 7

IV.     Post-OBBBA Procedural History ................................................................. 7

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

I.      The Court Should Dismiss Plaintiffs' Claims Against the 2019 Regulations. .................... 9

        A.      This Court Lacks Subject Matter Jurisdiction to Review the 2019
                Regulations. ................................................................................................ 9

                1.      Plaintiffs' Challenge to the Validity of Defendants' Promulgation
                        of the 2019 Regulations is Mooted by Congress's Directives in
                        OBBBA. ........................................................................................ 9

                2.      Plaintiffs' APA Claims Against the 2019 Regulations Are Not
                        Redressable Because the Only Remedy Available is Foreclosed by
                        the OBBBA. ................................................................................ 10

        B.      Count Ten Should be Dismissed Because OBBBA § 85001 Ratifies the
                2019 Regulations. ......................................................................................11

II.     Plaintiffs' Challenges to the 2022 Regulations, which Congress has Rendered
        Ineffective for the Foreseeable Future, Are Nonjusticiable. ................................11

        A.      Plaintiffs Cannot Show Imminent Enforcement of the Provisions Subject
                to OBBBA §§ 85001(a) and 85002(a). ..................................................... 12

        B.      Plaintiffs' Challenges to the 2022 Regulations are not Ripe. ............................. 14

CONCLUSION................................................................................................................. 18

## TABLE OF AUTHORITIES

**CASES**

*A & R Eng'g & Testing, Inc. v. Scott*,
  72 F.4th 685 (5th Cir. 2023)................................................................................ 12

*Action All. of Senior Citizens of Greater Phila. v. Heckler*,
  789 F.2d 931 (D.C. Cir. 1986)............................................................................. 17

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
  827 F.3d 100 (D.C. Cir. 2016)............................................................................. 16

*Alaska v. U.S. Dep't of Agric.*,
  17 F.4th 1224 (D.C. Cir. 2021) ........................................................................... 16

*Am. Bar Ass'n v. Fed. Trade Comm'n*,
  636 F.3d 641 (D.C. Cir. 2011)............................................................................... 9

*Biden v. Nebraska*,
  600 U.S. 477 (2023)............................................................................................... 2

*Blanchette v. Conn. Gen. Ins. Corps.*,
  419 U.S. 102 (1974)............................................................................................. 17

*California v. Texas*,
  593 U.S. 659 (2021)....................................................................................... 12, 14

*CCST v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024), *cert. dismissed*, 146 S. Ct. 59 (2025) (mem.)....................... 12, 13

*Choice Inc. of Tex. v. Greenstein*,
  691 F.3d 710 (5th Cir. 2012)............................................................................... 14

*City of Hou. v. Dep't of Hous. & Urb. Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994).............................................................................. 18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................................. 12

*Clean Fuels All. Am. v. EPA*,
  169 F.4th 307 (D.C. Cir. 2026) ........................................................................... 16

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022)................................................................................ 10

*Den Norske Stats Oljeselskap As v. HeereMac Vof,*
  241 F.3d 420 (5th Cir. 2001), *cert. denied sub nom.*
  *Statoil ASA v. HeereMac V.O.F.,* 534 U.S. 1127 (2002)......................................... 8

*Department of Education v. CCST*,
  145 S. Ct. 1039 (2025) (mem.) ................................................................................ 7

*Dep't of Educ. v. CCST*,
  146 S. Ct. 59 (2025) (mem.) ............................................................................... 7, 12

*Devia v. Nuclear Regul. Comm'n*,
  492 F.3d 421 (D.C. Cir. 2007)................................................................................ 17

*Equal Means Equal v. Ferriero*,
  3 F.4th 24 (1st Cir. 2021) ...................................................................................... 13

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022)...............................................................................10, 11

*Friends of the Earth v. Haaland*,
  No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023) ....................................... 9

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
  143 F.3d 1006 (5th Cir. 1998)................................................................................... 8

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021)..................................................................................... 14

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)................................................................................................ 13

*In re McCoy*,
  810 F. App'x 315 (5th Cir. 2020)........................................................................... 15

*International Liquid Terminals Ass'n v. U.S. Department of Homeland Security*,
  No. 1:18-cv-00467 (LMB/IDD), 2018 WL 8667001 (E.D. Va. Sep. 17, 2018) ....................... 15

*Kirby v. Siegelman*,
  195 F.3d 1285 (11th Cir. 1999) ........................................................................ 15, 17

*Lopez v. City of Hou.*,
  617 F.3d 336 (5th Cir. 2010).................................................................................. 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................... 12, 13

*Monk v. Huston*,
  340 F.3d 279 (5th Cir. 2003).................................................................................. 14

*Neese v. Becerra*,
  123 F.4th 751 (5th Cir. 2024), *cert. denied sub nom.*
  *Neese v. Kennedy*, 146 S. Ct. 104 (2025)............................................................... 12

*Neitzke v. Williams*,
490 U.S. 319 (1989) ............................................................................................................. 8

*Nuclear Energy Inst., Inc. v. EPA*,
373 F.3d 1251 (D.C. Cir. 2004) ...................................................................................... 9, 10

*Reno v. Cath. Soc. Servs., Inc.*,
509 U.S. 43 (1993) ............................................................................................................ 14

*Rhodes v. Stewart*,
488 U.S. 1 (1988) ........................................................................................................ 13, 14

*Roman Cath. Diocese of Dall. v. Sebelius*,
927 F. Supp. 2d 406 (N.D. Tex. 2013) ............................................................................. 17

*Sample v. Morrison*,
406 F.3d 310 (5th Cir. 2005) ................................................................................... 2, 14, 17

*Shrimpers and Fishermen of the RGV v. U.S. Army Corps of Eng'rs*,
849 F. App'x 459 (5th Cir. 2021) ..................................................................................... 17

*Sierra Club v. Morton*,
405 U.S. 727 (1972) .......................................................................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .............................................................................................................. 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......................................................................................................... 13

*Texas v. Biden*,
20 F.4th 928 (5th Cir. 2021) .............................................................................................. 10

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) .......................................................................................................... 14

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*,
5 F.4th 666 (6th Cir. 2021) ................................................................................................ 11

*Toilet Goods Ass'n v. Gardner*,
387 U.S. 158 (1967) ..................................................................................................... 14, 17

*United States v. Heinszen*,
206 U.S. 370 (1907) ........................................................................................................... 11

*United States v. Veal*,
322 F.3d 1275 (11th Cir. 2003) .................................................................................... 14, 17

*United Transp. Union v. Foster*,
 205 F.3d 851 (5th Cir. 2000) ................................................................................. 16

*Voluntary Purchasing Grps., Inc. v. Reilly*,
 889 F.2d 1380 (5th Cir. 1989) .................................................................................. 8

*Webb v. Dep't of Health & Hum. Servs.*,
 696 F.2d 101 (D.C. Cir. 1982) ................................................................................ 18

*Whole Woman's Health v. Jackson*,
 595 U.S. 30 (2021) .................................................................................................. 12

**STATUTES**

5 U.S.C. § 702 ............................................................................................................. 9

5 U.S.C. § 704 ............................................................................................................. 9

5 U.S.C. § 706 .................................................................................................... *passim*

5 U.S.C. § 5514 ........................................................................................................... 2

20 U.S.C. §§ 1070 *et seq.* .......................................................................................... 2

20 U.S.C. § 1080a ....................................................................................................... 2

20 U.S.C. § 1082 ......................................................................................................... 2

20 U.S.C. § 1087 ...................................................................................................... 3, 6

20 U.S.C. § 1087a ....................................................................................................... 3

20 U.S.C. § 1087e .................................................................................................... 3, 6

20 U.S.C. § 1087dd ..................................................................................................... 6

20 U.S.C. § 1095 ......................................................................................................... 2

20 U.S.C. § 1099c ....................................................................................................... 3

20 U.S.C. § 1221e-3 .................................................................................................... 2

20 U.S.C. § 3441 ......................................................................................................... 2

20 U.S.C. § 3471 ......................................................................................................... 2

31 U.S.C. § 3711 ......................................................................................................... 2

31 U.S.C. § 3716 ......................................................................................................... 2

31 U.S.C. § 3720B ............................................................................................................ 2

31 U.S.C. § 3720D ............................................................................................................ 2

Student Loan Reform Act of 1993,
   Pub. L. No. 103-66, 107 Stat. 312 (codified at 20 U.S.C. § 1087e(h)) ....................................... 3

One Big Beautiful Bill Act ("OBBBA"),
   Pub. L. No. 119-21, 139 Stat. 72 (2025) ........................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................. 8

**REGULATIONS**

34 C.F.R. § 685.214 (2020) .............................................................................................. 6

Federal Direct Student Loan Program,
   59 Fed. Reg. 42,646 (Aug. 18, 1994) ......................................................................... 3, 4

William D. Ford Federal Direct Loan Program,
   59 Fed. Reg. 61,664 (Dec. 1, 1994) ................................................................................ 3

Office of Postsecondary Education,
   60 Fed. Reg. 37,768 (July 21, 1995) ............................................................................... 3

Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family
   Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher
   Education Assistance for College and Higher Education Grant Program,
   81 Fed. Reg. 75,926 (Nov. 1, 2016) ................................................................................ 4

Student Assistance General Provisions, Federal Family Education Loan Program, and
   William D. Ford Federal Direct Loan Program,
   84 Fed. Reg. 49,788 (Sep. 23, 2019) ........................................................................... 4, 9

Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student
   Assistance General Provisions; Federal Perkins Loan Program; Federal Family Education
   Loan Program; and William D. Ford Federal Direct Loan Program,
   87 Fed. Reg. 65,904 (Nov. 1, 2022) ............................................................................. 5, 6

**OTHER AUTHORITIES**

Settlement Agreement, *Sweet v. Cardona*, No. 4:19-cv-3674 (N.D. Cal.),
   https://perma.cc/XDG9-AHNH ........................................................................................ 5

**INTRODUCTION**

Plaintiffs Career Colleges & Schools of Texas ("CCST") and Career Education Colleges and Universities have filed an Amended Complaint seeking judicial review and "vacatur" under the Administrative Procedure Act, 5 U.S.C. § 706, of regulatory provisions issued by the Department of Education (the "Department") in 2019 (the "2019 regulations") and in 2022 (the "2022 regulations") relating to borrower defenses to repayment and to closed school discharges.

On July 4, 2025, the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72, became law.  In OBBBA, Congress intervened in this area and provided regulatory certainty for at least a decade.  Specifically, Congress directed that, with respect to loans that first originate before July 1, 2035, the 2019 borrower defense regulations "are restored and revived as such regulations were in effect on [July 1, 2020]." OBBBA § 85001(b).  Moreover, for loans originating over the next decade, the 2022 regulations "shall not be in effect."  *Id*. §§ 85001(a); 85002(a).

The OBBBA moots Plaintiffs' claims against the 2019 regulations.  The OBBBA directs the Department to apply the 2019 borrower defense regulations with respect to loans that originate before July 1, 2035.  There is thus no live controversy over whether the Department validly promulgated those regulations in 2019.  Even if the Department lacked authority to promulgate the regulations in the first place, Congress has now directed their implementation, mooting Plaintiffs' challenges to the regulations.  Plaintiffs' claims against the 2019 regulations fail on the merits for similar reasons.  Even if the Department lacked authority to promulgate the regulations or they were otherwise unlawful, Congress has now ratified the 2019 regulations in the OBBBA by directing that they "are restored and revived."  *Id.* § 85001(b).  OBBBA thus authorizes the Department to enforce the 2019 regulations.

The Court also lacks jurisdiction over Plaintiffs' claims against the 2022 regulations. Given Congress's instruction that the 2022 regulations "shall not be in effect" for loans that originate before July 1, 2035, Plaintiffs cannot show imminent enforcement of those provisions by the Department as required to establish standing. *Id*. §§ 85001(a); 85002(a). The OBBBA gives the Department or Congress a decade to supersede or further delay the 2022 regulations as applied

1

to loans originating after July 2035.  Thus, Plaintiffs and the Court can only speculate that the 2022 regulations will ever be applied to any loans.

Even if Plaintiffs could show pre-enforcement Article III standing, they cannot establish the more stringent requirements of the ripeness doctrine.  *See, e.g., Sample v. Morrison*, 406 F.3d 310, 311-12 (5th Cir. 2005) (challenge to agency policy unripe when it would not be applied to plaintiff until seven years after the case was before the Fifth Circuit).  The Court should therefore dismiss this action.

## BACKGROUND

### I.    Pre-OBBBA Statutory Background

The Department administers various student loan programs under Title IV of the Higher Education Act of 1965 ("HEA" or "the Act"), 20 U.S.C. §§ 1070 *et seq*.  The HEA grants the Secretary of Education substantial "powers and responsibilities," including the power to "prescribe such regulations as may be necessary to carry out the purposes" of the federal student loan programs, *id.* § 1082(a)(1), and to issue regulations "governing the manner of operation of, and governing the applicable programs administered by, the Department," *id.* § 1221e-3; *see id.* §§ 3441, 3471.  In addition to those general authorities, the Act specifically provides the Secretary with the ability to collect on defaulted loans through a variety of administrative enforcement mechanisms, *see id.* § 1080a(c)(4); 31 U.S.C. § 3711(e) (credit bureau reporting); 5 U.S.C. § 5514 (federal salary offset); 20 U.S.C. § 1095; 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (federal payment offset).  And the Act permits the Secretary to "compromise, waive, or release any right, title, claim, lien, or demand" acquired in the Secretary's performance of her "functions, powers, and duties" in administering the Department's portfolio of loans. 20 U.S.C. § 1082(a)(6).

The HEA expressly "authorizes the Secretary to cancel or reduce loans" in "certain limited circumstances."  *Biden v. Nebraska*, 600 U.S. 477, 484 (2023).  Two such circumstances are relevant here.  First, in 1993, Congress amended the HEA to require the Secretary to "specify in regulations" "which acts or omissions of an institution of higher education a borrower may assert

2

as a defense to repayment of a [Direct] [L]oan." Student Loan Reform Act of 1993, Pub. L. No. 103-66, tit. IV, subtit. A, ch. 1, § 4021, 107 Stat. 312, 351 (codified at 20 U.S.C. § 1087e(h)). The amended Act further provides that a borrower asserting such a defense may not "recover from the Secretary, in any action arising from or relating to a loan made under this part, an amount in excess of the amount such borrower has repaid on such loan." *Id*. Second, the HEA directs the Secretary to discharge the loan of a borrower who is unable to complete the program in which she enrolled "due to the closure of the [borrower's] institution." 20 U.S.C. § 1087(c)(1). The statute further directs the Secretary to "subsequently pursue any claim available to such borrower against the institution and its affiliates and principals or settle the loan obligation pursuant to the financial responsibility authority under [20 U.S.C. § 1099c]." *Id*.

The Department of Education first promulgated permanent regulations implementing the Direct Loan program in 1994. William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61,664 (Dec. 1, 1994) ("1994 regulations"). In the notice of proposed rulemaking, the Department stated that it would permit borrowers to "request that the Secretary exercise [the] long-standing authority" previously exercised under the Family Education Loan program "to relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school." Federal Direct Student Loan Program, 59 Fed. Reg. 42,646, 42,649 (Aug. 18, 1994); *see* Office of Postsecondary Education, 60 Fed. Reg. 37,768, 37,769-70 (July 21, 1995) (clarifying that the regulations parallel the defenses to repayment available under the Family Education Loan Program). Doing so was consistent with Congress's mandate that Direct Loans "have the same terms, conditions, and benefits" as Family Education Loans. 20 U.S.C. § 1087a(b)(2).

To that end, the 1994 regulations stated that a borrower could assert as a defense to repayment "any act or omission . . . that would give rise to a cause of action against the school under applicable State law." 59 Fed. Reg. at 61,696. The 1994 regulations specified that those defenses could be raised "[i]n any proceeding to collect on a Direct Loan," including, but not limited to, federal administrative offset and wage garnishment proceedings. *Id*. The 1994 regulations also stated that, if a borrower's defense is successful, the Secretary "may initiate an

3

appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the loan to which the defense applies." *Id*.

In the early years of the Direct Loan program, relatively few borrowers presented repayment defenses to the Department.  Even so, "throughout the history of the [original] borrower defense repayment regulation," the Department administratively evaluated and approved defenses presented to the Department, before default and outside of collection proceedings.  Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788, 49,796 (Sep. 23, 2019).

Beginning in 2015—after revelations of widespread fraud led to the collapse of Corinthian Colleges, one of the country's largest chains of for-profit colleges—there was an unprecedented "flood of borrower defense claims."  Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75,926, 75,926 (Nov. 1, 2016).  In response, the Department promulgated regulations that (i) revised the set of acts or omissions that could be asserted as a defense to repayment to create a uniform federal standard that did not rely upon state law, *id*. at 75,935-59, and (ii) formalized administrative procedures that the Department would use to review borrower defense claims submitted to it, *see id*. at 75,959-64.  Those procedures included a process for the Department to consider together defenses asserted by similarly situated borrowers. *See id*. at 75,964-74.  In 2019, the Department again revised the set of acts and omissions the Department would recognize as a defense, as well as the procedures the Department would use to review borrowers' requests to be relieved of their repayment obligations based on those defenses. *See* 84 Fed. Reg. at 49,788.  The preamble to the 2019 regulations reaffirmed the Department's authority to resolve borrower defense requests administratively before default, *id*. at 49,796, but the Department eliminated the provision for consideration of such defenses on a group basis, *see id*. at 49,798.

Unfortunately, the sustained deluge from the borrower defense floodgates first opened by

4

the collapse of Corinthian Colleges outpaced the Department's capacity to timely adjudicate all the applications.  By June 2019, the Department's backlog of claims had grown to more than 210,000 pending applications, giving rise to a class-action suit alleging that the Department was unreasonably delaying adjudications of the pending claims.  *See Sweet v. Cardona*, No. 4:19-cv-3674 (N.D. Cal.) ("*Sweet*").  To resolve that litigation and address its extensive backlog, the Department agreed to settle the class action by granting automatic discharges to a certain group of class members and by reviewing the claims of remaining class members using streamlined procedures under specified deadlines.  *See* Settlement Agreement, *Sweet*, ECF No. 246-1, https://perma.cc/XDG9-AHNH. The settlement did not, however, resolve the operational difficulties that led to the suit.

In 2022, the Department once again revised its regulations in this area.  The 2022 regulations established a uniform standard defining the acts and omissions that a borrower can assert as a defense to repayment, regardless of when the borrower's loans were first disbursed.  *See* Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family Education Loan Program; and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 65,904, 65,992-93 (Nov. 1, 2022). The regulations specify several categories of acts or omissions that can give rise to a defense to repayment, *see id*. at 66,068-69, and provide that a borrower can obtain a loan discharge based on those asserted defenses if the Department concludes "by a preponderance of the evidence" that (i) the borrower's school committed an act or omission falling within the specified categories, (ii) the misconduct caused the borrower detriment, and (iii) the totality of the circumstances, including the "nature and degree of the acts or omissions" and the borrower's overall detriment, warrant a discharge.  *Id*. The 2022 regulations eliminated certain procedural steps required by the 2019 regulations, *see id*. at 65,912, reinstated a group application process, *see id*. at 65,937, and created a process to screen facially deficient applications for relief so that the Department could focus its resources on defenses more likely to have merit, *see id*. at 65,943.

Like the Department's prior regulations, the 2022 regulations provided that the Department

5

may initiate appropriate proceedings to recoup funds from a school when its misconduct resulted in the discharge of the loans of a student at the school, 87 Fed. Reg. at 66,041, 66,072-73, so long as the "actions or omissions that led to" the Department's approval of a discharge based on a borrower defense "would also have violated the borrower defense regulations in effect when those loans were first disbursed," *see id*. at 65,913, 65,951.

The 2022 regulations also revised provisions defining when a student borrower is "unable to complete the program in which such student is enrolled due to the closure of the institution" for the purpose of reviewing requests for closed-school discharges under the Act.  20 U.S.C. § 1087(c)(1); *see id.* §§ 1087e(a)(1), 1087dd(g)(1); 87 Fed. Reg. at 65,966, 66,049.  Previously, those regulations specified that a borrower who attended a school that ceased providing educational instruction is eligible for loan discharge if the borrower "[d]id not complete the program of study at that school because the school closed while the student was enrolled, or the student withdrew from the school" within a short period of time—either 120 or 180 days, depending on the date of the loan's disbursement—before the school closed. 34 C.F.R. § 685.214(c)(1)(i)(B), (c)(2)(i)(B) (2020).  The 2022 regulations amended those provisions to provide that borrowers who attended a closed school would also be eligible for a closed-school discharge if the borrower "[d]id not complete the program of study at that school because" the student withdrew from the now-closed school not more than 180 days before "the school had ceased to provide educational instruction for most of its students." 87 Fed. Reg. at 65,966, 66,061.

## II.     Pre-OBBBA Procedural History

Plaintiff CCST is a trade association for Texas-based, for-profit higher education institutions.  First Am. Compl. ¶ 13, ECF No. 122 ("Am. Compl.").  Five months after the 2022 regulations were issued, CCST initiated this action to challenge the 2022 regulations and moved for a preliminary injunction.  ECF Nos. 1, 23.  This Court denied the motion, ECF No. 74, and CCST appealed, ECF No. 75.

On April 4, 2024, the Fifth Circuit granted CCST's motion for an injunction pending appeal and enjoined the regulations on a universal basis, ECF No. 95, and the Supreme Court granted

6

Defendants' petition for a writ of certiorari, *Department of Education v. CCST*, 145 S. Ct. 1039 (2025) (mem.).

### III.    In the OBBBA, Congress Restores and Revives the 2019 Regulations as They Were in Effect on July 1, 2020.

On July 4, 2025, the President signed the OBBBA into law.  For all loans originating before July 1, 2035, OBBBA § 85001(a) provides that the 2022 regulations "shall not be in effect" as of July 4, 2025.  For those loans, OBBBA § 85001(b) "restored and revived" the 2019 regulations "as such regulations were in effect on" July 1, 2020:

> (b) EFFECT.—Beginning on the date of enactment of this section, with respect to loans that first originate before July 1, 2035, any regulations relating to borrower defense to repayment that took effect on July 1, 2020, are restored and revived as such regulations were in effect on such date.

*Id.* § 85001(b).

In addition, for student loans first originating before July 1, 2035, OBBBA § 85002(a) stated that the 2022 Rule's provisions relating to closed school discharges "shall not be in effect," and OBBBA § 85002(b) instead instructed that the closed-school discharge provisions in the 2019 regulations "shall be in effect."

### IV.    Post-OBBBA Procedural History

After the President signed the OBBBA into law, Defendants voluntarily dismissed the appeal pending before the Supreme Court.  *See Dep't of Educ. v. CCST*, 146 S. Ct. 59 (2025) (mem.).  This Court then issued an order delaying until final judgment the effective date of the borrower defense and closed school discharge provisions of the 2022 regulations.  ECF No. 116.

On March 6, 2026, CCST filed an Amended Complaint.  ECF No. 122.  The Amended Complaint joins another Plaintiff, Career Education Colleges and Universities.  *Id*.  The Amended Complaint includes eleven counts.  *Id*. ¶¶ 291-335.  Each count arises under 5 U.S.C. § 706(2). *Id*.  In Counts One, Two, and Three, the Amended Complaint alleges that 2022 regulatory provisions addressing borrower defenses to repayment are not authorized under the HEA, are arbitrary and capricious in violation of the APA, and violate the Fifth Amendment.  *Id*. ¶¶ 291-305.  In Counts Four, Five and Six, Plaintiffs allege that certain provisions of the 2022 regulations

addressing pre-dispute arbitration agreements governing borrower defense claims violate the HEA, are arbitrary and capricious in violation of the APA, and violate the Spending Clause. *Id*. ¶¶ 306-16. In Counts Seven, Eight, and Nine, Plaintiffs allege that certain provisions of the 2022 regulations concerning closed-school loan discharges violate the HEA, are arbitrary and capricious, and violate the Fifth Amendment. *Id*. ¶¶ 317-26. Finally, in Counts Ten and Eleven, Plaintiffs allege that provisions of the 2019 regulations regarding borrower defenses to repayment violate the HEA and the Fifth Amendment. *Id*. ¶¶ 327-35.[1]

**LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). A district court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on any one of three separate bases: (a) "the complaint alone[;]" (b) "the complaint supplemented by undisputed facts evidenced in the record[;]" or (c) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied sub nom. Statoil ASA v. HeereMac V.O.F.,* 534 U.S. 1127 (2002); *see Voluntary Purchasing Grps., Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir. 1989). The Court must assure itself of jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate where the pleadings fail to state a claim upon which relief may be granted. "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

---

[1] The original Complaint did not assert any claims against the 2019 regulations.

## ARGUMENT

**I.  The Court Should Dismiss Plaintiffs' Claims Against the 2019 Regulations.**

> **A.  This Court Lacks Subject Matter Jurisdiction to Review the 2019 Regulations.**
>
> > **1.  Plaintiffs' Challenge to the Validity of Defendants' Promulgation of the 2019 Regulations is Mooted by Congress's Directives in OBBBA.**

The Court should dismiss Counts Ten and Eleven (the only counts that challenge the 2019 borrower defense regulations) because they seek APA "vacatur" of regulations that Congress has expressly restored by statute.  Congress transformed the borrower defense regulatory scheme into a statute through a static cross-reference to a regulation.  The APA permits review of "agency action," not statutes.  5 U.S.C. §§ 702, 704, 706.  The enactment of a new law that resolves the parties' dispute regarding the validity of agency action typically renders a proceeding for judicial review of the agency action moot.  *See, e.g. Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) ("*NEI*") ("Where Congress enacts intervening legislation that definitively resolves the issues a litigant seeks to put before us, the claims are moot and we are precluded from deciding them."); *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Friends of the Earth v. Haaland*, No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023).

The OBBBA resolves the parties' dispute regarding the validity of the 2019 borrower defense regulations and has removed any basis for Plaintiffs' APA-based claims.  There is no question that the OBBBA is a law, enacted in accordance with the bicameralism and presentment requirements of the Constitution.  *See NEI*, 373 F.3d at 1309.  And the meaning of OBBBA § 85001(b) is clear on its face.  With respect to loans originating before July 1, 2035, the 2019 borrower defense regulations "are restored and revived as such regulations were in effect on" July 1, 2020.  OBBBA § 85001(b).  On July 1, 2020, the 2019 borrower defense regulations were enforceable and not subject to an APA "vacatur" order.  *See* 84 Fed. Reg. at 49,788 ("These regulations are effective July 1, 2020.")  "The practical effect of the legislation is to conclude"

further regulatory uncertainty as to loans originating prior to July 1, 2035, and to permit the Department to enforce and regulated entities to comply with the 2019 regulations for the next decade. *See NEI*, 373 F.3d at 1310. Because implementation of the 2019 regulations is now compelled by statute, Plaintiffs' claim that the agency improperly promulgated the regulations is irrelevant and thus moot.

The APA, 5 U.S.C. § 706, "contemplates the possibility of actions challenging" certain final agency actions. *See NEI*, 373 F.3d at 1312. But § 706 can play no role "when, as a result of intervening legislation, a *particular* [civil] action challenging a *particular* [agency action] becomes moot and therefore unreviewable." *Id*. The OBBBA includes an explicit instruction to the Department and to the courts to effectuate the regulatory provisions governing borrower defenses to repayment originally promulgated in 2019 with respect to loans originating prior to July 1, 2035.

### 2. Plaintiffs' APA Claims Against the 2019 Regulations Are Not Redressable Because the Only Remedy Available is Foreclosed by the OBBBA.

OBBBA § 85001 renders the APA challenges pleaded in Counts Ten and Eleven incapable of being redressed by a court order. The Fifth Circuit has held that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022). And under the Fifth Circuit's understanding of "vacatur," vacating a provision of a regulation renders the provision "void." *See Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859-60 (5th Cir. 2022) (quoting *Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021)). But an order rendering "void" the borrower defense provisions of the 2019 borrower defense regulations challenged in Counts Ten and Eleven, Am. Compl. ¶¶ 327-35, would violate Congress's command in OBBBA § 85001(b) that those very regulations "are restored and revived as such regulations were in effect on" July 1, 2020. On July 1, 2020, the 2019 regulations were not vacated or void. *Id.* ¶ 106 (citation omitted).

Because the Court lacks a statutory basis to vacate regulations that Congress has provided shall be restored and revived as they were in effect on July 1, 2020—when they were not subject

to a vacatur order—Plaintiffs' 5 U.S.C. § 706 claims pleaded in Counts Ten and Eleven must be dismissed. *Cf. Franciscan All.*, 47 F.4th at 374-75. The point is that if this Court were to "set aside" the agency's 2019 action, that would have no impact on the Department's obligation to see that OBBBA §§ 85001-02 is faithfully executed today.

**B.**   **Count Ten Should be Dismissed Because OBBBA § 85001 Ratifies the 2019 Regulations.**

If not analyzed in terms of justiciability, Plaintiffs' claims in Count Ten should be dismissed because the OBBBA ratifies the 2019 regulations. Even if the Fifth Circuit correctly analyzed CCST's likelihood of success on the merits and the HEA did not authorize the 2019 regulations when they were promulgated in 2019, Congress ratified the 2019 regulations in OBBBA § 85001(b). Congress's "power of ratification as to matters within [is] authority" is "elementary." *United States v. Heinszen*, 206 U.S. 370, 382 (1907). "Congress has the power to ratify the acts which it might have authorized in the first place[.]" *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666, 673 (6th Cir. 2021) (citation omitted). Regardless of whether it was originally authorized by the HEA, "Congress gave force" to the 2019 borrower defense regulations, "both retrospectively and prospectively, blessing" them as applied to all loans originating before July 1, 2035. *See id.*; *see also* OBBBA § 85001(b).

**II.**   **Plaintiffs' Challenges to the 2022 Regulations, which Congress has Rendered Ineffective for the Foreseeable Future, Are Nonjusticiable.**

For at least two reasons, the OBBBA also means that Plaintiffs cannot show that this Court has subject matter jurisdiction over the claims pleaded in Counts One through Nine, which challenge regulations that no longer apply to loans originating before July 1, 2035. First, Plaintiffs cannot show any imminent enforcement of these regulations as required to establish standing. And even if Plaintiffs could show sufficiently imminent enforcement to satisfy Article III's standing requirement, Plaintiffs cannot satisfy the more stringent requirements of the ripeness doctrine.

11

### A. Plaintiffs Cannot Show Imminent Enforcement of the Provisions Subject to OBBBA §§ 85001(a) and 85002(a).

Plaintiffs cannot establish pre-enforcement standing to challenge the 2022 regulations at issue in Counts One through Nine. There is no "unqualified right to pre-enforcement review[.]" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Rather, the "right to pre-enforcement review is qualified and permitted only 'under circumstances that render the threatened enforcement sufficiently imminent.'" *Neese v. Becerra*, 123 F.4th 751, 753 (5th Cir. 2024) (citation omitted), *cert. denied sub nom. Neese v. Kennedy*, 146 S. Ct. 104 (2025). Plaintiffs must "assert an injury that is the result of a [legal code's] actual or threatened *enforcement*[.]" *California v. Texas*, 593 U.S. 659, 670 (2021). And, again, that enforcement must be "sufficiently imminent." *Neese*, 123 F.4th at 753. Imminence requires the threatened enforcement to "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no [enforcement-caused] injury would have occurred at all." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992).[2] Where a plaintiff fails to allege such imminent enforcement, "the Supreme Court has instructed [courts] to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace an injury to the government." *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (quoting *Clapper*, 568 U.S. at 410).

The OBBBA precludes Plaintiffs from making these showings as to the claims they seek to press in Counts One through Nine. Am. Compl. ¶¶ 291-326. Pursuant to OBBBA, the 2022 regulations challenged in these counts cannot be enforced regarding any loans originating any time in the foreseeable future. Rather, "for loans that first originate before July 1, 2035," these

---

[2] A plaintiff cannot manufacture pre-enforcement standing by incurring costs that are based on a fear of future enforcement that is not imminent. *California*, 593 U.S. at 669-70; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). At the preliminary injunction stage, the Fifth Circuit concluded that Plaintiffs had shown that they incurred certain costs but did not address whether those costs were traceable to the provisions' imminent enforcement. *CCST v. U.S. Dep't of Educ.*, 98 F.4th 220, 234 n.9 (5th Cir. 2024) (clarifying "traceability of the injures . . . and redressability through judicial action, the other two elements of Art. III standing" were not addressed by the court), *cert. dismissed*, 146 S. Ct. 59 (2025) (mem.).

regulations "shall not be in effect."  OBBBA §§ 85001(a), 85002(a).  Plaintiffs are trade associations that must "identify members," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), that "would otherwise have [pre-enforcement] standing to sue in their own right[,]" *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).[3]  But the Amended Complaint does not identify a single member of either organization or plausibly allege facts suggesting that any such member would continue to be a member of either Plaintiff's organization in 2035.  ECF No. 122.  And even if it did, Plaintiffs offer no plausible allegations that, as of the date of the Amended Complaint, the Department's enforcement of the 2022 regulations against that member will proceed with a high degree of immediacy.  *See Lujan*, 504 U.S. at 564 n.2.  At the very least, the 2022 regulations will not be enforced until long after a school originates a loan for students on or after July 1, 2035.  OBBBA §§ 85001(a), 85002(a).  And there is a good chance that enforcement may never happen.  Congress may act again at some point in the next decade, as it did in the OBBBA, to further delay or otherwise supersede the 2022 regulations.  *See infra* at pp. 15-17.  The Department may also supersede the 2022 regulations over the next decade.  *See id*. Thus, any contention that the 2022 regulations will ever be enforced against one of Plaintiffs' unidentified members would require impermissible speculation about future actions by policymakers over the next decade.  *See id*.  As of the date the Amended Complaint was filed, the regulations governing loans originating on or after July 2035 hardly "impose an immediate increase in regulatory burden on the plaintiffs[.]"  *See CCST*, 98 F.4th at 234.

Indeed, any order vacating any challenged provision of the 2022 regulations would provide little more than an advisory opinion.  This Court lacks jurisdiction to enter prospective relief unless "it affects the behavior of the defendant toward the" identified member of the "plaintiff."  *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  Undoubtedly, vacating a regulation that, pursuant to

---

[3] Plaintiffs cannot show standing by expending resources engaging in issue advocacy regarding the regulations.  Am. Compl. ¶ 27; *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021).

statute, is unenforceable by the defendant for the foreseeable future would be ineffectual relief that is advisory in nature. *See id*.; *California*, 593 U.S. at 669-78.

### B.    Plaintiffs' Challenges to the 2022 Regulations are not Ripe.

Even if Plaintiffs could show sufficiently imminent enforcement to satisfy Article III's demands, they have not satisfied the more stringent requirements of the ripeness doctrine, which is rooted in both Article III principles as well as traditional equitable or "prudential" principles restraining issuance of discretionary relief. *See Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162-66 (1967).

To assess whether a particular claim is ripe for judicial review, courts consider both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Hou.*, 617 F.3d 336, 341 (5th Cir. 2010). Both prongs must be satisfied. "Unsuitability for review is determinative." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 435 n.30 (5th Cir. 2021). Similarly, a court need not "address the fitness of the issues for judicial decision" where a plaintiff "has not satisfied the hardship prong of the ripeness inquiry." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 718 (5th Cir. 2012). Under these factors, a "court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (citation omitted). Thus, if a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted).

Applying these principles, courts, including the Fifth Circuit, have dismissed as unripe claims involving statutes or agency policies that would not be applied to a plaintiff for a prolonged period. *See Sample*, 406 F.3d at 311-12 (challenge to agency policy regarding good time credit calculation unripe when it would not be applied to plaintiff until seven years after the case was before the Fifth Circuit); *United States v. Veal*, 322 F.3d 1275, 1278 (11th Cir. 2003) (holding challenge to statutes unripe when they would not affect the challenger for three years and whether those "statutes will remain in effect in their current form throughout [that period] is a matter of

14

speculation"); *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999) (concluding that whether a statute would "remain in effect and unamended" for a six-year period was "a matter of speculation"). Indeed, in rejecting the notion that a statute should be presumed to remain unaltered for twenty years, the Fifth Circuit has opined that "tax laws can and do change." *In re McCoy*, 810 F. App'x 315, 316 n.3 (5th Cir. 2020). The Fifth Circuit called any suggestion to the contrary "highly speculative[.]" *Id*. Whether the 2022 regulation will actually come into effect in 2035, requiring an unidentified member of either Plaintiff to comply, is speculative.

Plaintiffs' claims in Counts One through Nine are unripe for effectively the same reasons provided by the district court in *International Liquid Terminals Ass'n v. U.S. Department of Homeland Security*, No. 1:18-cv-00467 (LMB/IDD), 2018 WL 8667001 (E.D. Va. Sep. 17, 2018). The *International Liquid Terminals* plaintiffs sought judicial review of Coast Guard regulations promulgated in 2016. *Id*. at *1. But in 2018, the President signed into law a statute forbidding the Coast Guard from implementing those regulations until sixty days after a report assessing the program is submitted to Congress. *Id*. The parties anticipated that this would not occur "until well into 2019." *Id*. at *2 (citation omitted). In September 2018, the district court dismissed the case as unripe. *Id*. The Court explained that the 2016 regulations plaintiff challenged had "been suspended" and "there is also a substantial likelihood that Congress or defendants may amend or replace the regulation[,]" rendering the claims unfit for review. *Id*.

Each of these factors apply with even greater force in this case. In *International Liquid Terminals*, the parties anticipated that the suspended regulations would take effect about a year after the Court issued the decision dismissing the case as unripe. *Id*. In this case, however, Congress has rendered the 2022 regulations unenforceable for about a decade. *See* OBBBA §§ 85001(a), 85002(a).

Second, the Amended Complaint's allegations suggest that Congress or the Department may amend or replace the 2022 regulations before they would otherwise go into effect in 2035. Recall that the OBBBA provides for regulatory relief in this area by treating loans differently based on whether they were first originated before or after July 1, 2035. For loans originating prior to

15

2035, Congress was clear that the Department must apply the 2019 regulations by stating that the 2019 regulations are "restored and revived as [they] were in effect on [July 1, 2020]." *Id.* § 85001(b). But Congress did not address the Department's discretion to supersede the 2022 regulations for loans originating on or after July 1, 2035. Rather, Congress merely provided that the 2022 regulations "shall not be in effect" for loans that originate before that date. *Id.* §§ 85001(a), 85002(a). That means that policymakers in both the Executive Branch as well as in Congress may consider superseding the 2022 regulations between now and 2035.

Plaintiffs' allegations in the Amended Complaint provide some reasons to believe that future policymakers at the Department or in Congress may decide to take an approach other than the 2022 regulations for loans originating on or after July 1, 2035. Plaintiffs explain that the House of Representatives had voted for a "full repeal" of the 2022 regulations and to reimpose by statute the 2019 regulations. Am. Compl. ¶¶ 102, 105. According to Plaintiffs, the reason that the OBBBA ultimately took a different approach to the 2022 regulations is not because policymakers wanted the 2022 regulations to go into effect in 2035, but rather because Senate rules of reconciliation foreclosed a full repeal of the regulations with votes available. *Id.* ¶ 104.

The support in the House of Representatives for a full repeal raises "doubts" that the 2022 regulations that Plaintiffs ask this Court to review will ever be applied to any loans. *Cf. Clean Fuels All. Am. v. EPA*, 169 F.4th 307, 313 (D.C. Cir. 2026). Indeed, "to determine whether the [2022 regulations] will be reapplied to" any of Plaintiffs' unidentified members "would require [the Court] to speculate about future actions by policymakers." *Cf. Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021). The Court should not speculate about "unpredictable" intervening events over the next decade, "such as elections or changes in policy priorities," and whether they will or will not result in a decision by Congress or the Department to revise or rescind the 2022 regulations before 2035. *Id.*; *see United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000) (claims unripe when the "legislature may amend" challenged statute or "repeal [it] in its entirety"); *cf. Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (describing the "well-settled principle of law" that "when an agency has rescinded and

16

replaced a challenged regulation, litigation over the legality of the original regulation becomes moot" even if the "new regulation" continues to be "contrary to" the plaintiff's "legal position").

A decade is too great a period for the Court to presume the 2022 regulations will remain on the books unchanged, rendering Plaintiffs' challenge unfit for review. *See Sample*, 406 F.3d at 311-12; *Veal*, 322 F.3d at 1278; *Kirby*, 195 F.3d at 1290. That the 2022 regulations will ever operate against Plaintiffs' unidentified members is thus hardly an "inevitability[.]" *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). And to issue an opinion as to the validity of the 2022 regulations a decade before they may take effect will do little more than provide an advisory opinion.

Nor can Plaintiffs show hardship from delay. A "general desire for certainty and long-term planning" are insufficient to demonstrate hardship. *Roman Cath. Diocese of Dall. v. Sebelius*, 927 F. Supp. 2d 406, 427 (N.D. Tex. 2013). And Plaintiffs concede that their members are not required to conform to any provision of the 2022 regulations before 2035. Am. Compl. ¶ 33. To permit this case to proceed based on such a remote obligation "would effectively create a rule where any future event, however remote and speculative, could constitute a burden when a plaintiff claims that it must prepare now for this future contingency." *Roman Catholic Diocese*, 927 F. Supp. 2d at 427 (citation omitted). To outweigh institutional interests in the deferral of review, "the impact of the administrative action [must] be felt immediately by those subject to it in conducting their day-to-day affairs." *Toilet Goods Ass'n*, 387 U.S. at 164; *see also Shrimpers and Fishermen of the RGV v. U.S. Army Corps of Eng'rs*, 849 F. App'x 459, 462 (5th Cir. 2021) ("[T]he necessary hardship" is "a 'direct or immediate impact.'" (citation omitted)); *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007) ("[T]he hardship to those affected by the agency's action must be immediate and significant" (quoting *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986))). Regulations that do not apply for a decade (and, indeed, may never become effective) can hardly be said to be felt immediately within the meaning of the ripeness doctrine.

A without prejudice ripeness dismissal would not foreclose Plaintiffs from pressing their

17

claims closer to 2035, if neither the Department nor Congress takes further action.  When the "only hardship" that a plaintiff "will endure as a result of delaying consideration of [an] issue is the burden of having to file another suit[,]" the plaintiff fails to show hardship sufficient to demonstrate a claim that is ripe for review.  *City of Hou. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1432 (D.C. Cir. 1994) (quoting *Webb v. Dep't of Health & Hum. Servs.*, 696 F.2d 101, 107 (D.C. Cir. 1982)).

## CONCLUSION

For the reasons stated herein, the Court should dismiss this action.

Dated: May 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 514-4964
Facsimile: (202) 616-8470
E-mail: liam.c.holland@usdoj.gov

*Counsel for Defendants*

18