**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| CAREER COLLEGES<br>& SCHOOLS OF TEXAS and<br>CAREER EDUCATION COLLEGES<br>AND UNIVERSITIES,<br><br>              Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION and LINDA E. McMAHON,<br>in her official capacity as the Secretary of<br>Education,<br><br>           Defendants. | CASE NO. 1:23-CV-433 |

**<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**
**<u>THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

A.    The Higher Education Act And The History Of Borrower Defenses To
      Repayment ............................................................................................................ 2

B.    The 2019 Rule...................................................................................................... 3

C.    The 2022 Rule ...................................................................................................... 4

D.    This Lawsuit.......................................................................................................... 5

E.    Developments After The Fifth Circuit's Decision............................................... 7

ARGUMENT .................................................................................................................. 8

I.    The OBBBA Did Not Moot Plaintiffs' Challenges To The 2019 Rule Or
      Foreclose The Remedy Of Vacatur....................................................................... 9

      A.    The Plain Text Of The OBBBA Confirms That The 2019 Rule Was
            Restored As A Regulation, Not Enacted As A Statute ............................... 9

      B.    The History And Structure Of The OBBBA Confirm That Congress Did
            Not Codify The 2019 Rule........................................................................... 11

      C.    Because The OBBBA Did Not Enact Or Ratify The Substance Of The
            2019 Rule, There Is No Basis For Dismissing Challenges To That Rule.............. 13

      D.    The Recent Summary Order In *New York Legal Assistance Group v.
            McMahon* Does Not Support A Contrary Result.................................................. 14

II.   The OBBBA Did Not Deprive This Court Of Jurisdiction Over The Challenges
      To The 2022 Rule ............................................................................................... 15

      A.    Plaintiffs Have Standing To Challenge The 2022 Rule........................................ 16

      B.    Plaintiffs' Challenges To The 2022 Rule Are Ripe For Adjudication.................. 16

      C.    Because The 2022 Rule Is Scheduled To Take Effect Again In The Future,
            The Department Cannot Show That This Case Is Moot....................................... 17

      D.    Plaintiffs Are Experiencing Ongoing Harm ....................................................... 19

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Career Colleges & Schs. of Tex. v. Dep't of Educ.*,
681 F. Supp. 3d 647 (W.D. Tex. 2023)............................................................................16, 19

*Carr v. Alta Verde Indus., Inc.*,
931 F.2d 1055 (5th Cir. 1991) ...................................................................................2, 16, 17

*CCST v. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) ..................................................1, 6, 7, 16, 17, 19

*Ctr. for Biological Diversity, Inc. v. BP America Prod. Co.*,
704 F.3d 413 (5th Cir. 2013) .............................................................................................17

*Dada v. Mukasey*,
554 U.S. 1 (2008)...............................................................................................................11

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)...........................................................................................................20

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) .............................................................................................14

*Freedom from Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) .............................................................................................18

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...........................................................................................................18

*George v. McDonough*,
991 F.3d 1227 (Fed. Cir. 2021)..........................................................................................11

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987)...............................................................................................................2

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999).............................................................................................................9

*Int'l Liquid Terminals Ass'n v. Dep't of Homeland Sec.*,
No. 18-cv-467, 2018 WL 8667001 (E.D. Va. Sept. 17, 2018) ..............................................20

*Kirby v. Siegelman*,
195 F.3d 1285 (11th Cir. 1999) .........................................................................................20

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010) .............................................................................................17

*Louisiana Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986)...........................................................................................................12

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018)......................................................................................................18, 19

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021).................................................................................................10

*Nuclear Energy Inst., Inc. v. EPA*,
    373 F.3d 1251 (D.C. Cir. 2004)........................................................................13, 18

*NYLAG v. Cardona*,
    No. 20-cv-1414, 2025 WL 871371 (S.D.N.Y. Mar. 20, 2025)................................14

*NYLAG v. Cardona*,
    No. 21-888, 2026 WL 1408439 (2d Cir. May 20, 2026).....................................14, 15

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998).................................................................................................19

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)...................................................................................................16

*Sample v. Morrison*,
    406 F.3d 310 (5th Cir. 2005) ...................................................................................20

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).................................................................................................17

*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ...................................................................................19

*Texas v. Yellen*,
    105 F.4th 755 (5th Cir. 2024) ..................................................................................14

*United States v. Lemus*,
    93 F.4th 1255 (9th Cir. 2024) ..................................................................................11

*United States v. Veal*,
    322 F.3d 1275 (11th Cir. 2003) ...............................................................................20

**STATUTES**

2 U.S.C. § 644.............................................................................................................7

2 U.S.C. § 645.............................................................................................................7

5 U.S.C. § 703...........................................................................................................14

20 U.S.C. § 1087.........................................................................................................5

20 U.S.C. § 1087e.......................................................................................................3

One Big Beautiful Bill Act of 2025,
    Pub. L. No. 119-21, 139 Stat. 72 (2025)......................................1, 7, 8, 9, 10, 11, 12

**REGULATIONS**

34 C.F.R. § 668.71......................................................................................................4

34 C.F.R. § 668.75......................................................................................................4

34 C.F.R. § 674.33......................................................................................................5

34 C.F.R. § 682.402 ........................................................................................................5

34 C.F.R. § 685.206 (1995) ............................................................................................3

34 C.F.R. § 685.206 (2020) ............................................................................................4

34 C.F.R. § 685.206 ......................................................................................................12

34 C.F.R. § 685.214 ........................................................................................................5

34 C.F.R. § 685.219 ........................................................................................................5

34 C.F.R. § 685.401 ........................................................................................................5

34 C.F.R. § 685.405 ........................................................................................................5

34 C.F.R. § 685.406 ........................................................................................................5

59 Fed. Reg. 61,671 (Dec. 1, 1994) ...............................................................................3

60 Fed. Reg. 37,768 (July 21, 1995) ..............................................................................3

81 Fed. Reg. 75,926 (Nov. 1, 2016).................................................................................3

84 Fed. Reg. 49,788 (Sept. 23, 2019) .....................................................................3, 4, 5

87 Fed. Reg. 65,904 (Nov. 1, 2022)...................................................................3, 4, 5, 12, 19

**LEGISLATIVE MATERIAL**

H.R. 1, 119th Cong. (2025)..............................................................................................7

**OTHER AUTHORITIES**

Consumer Financial Protection Bureau, *How long does it take to pay off a student loan?*
(Apr. 15, 2024), https://www.consumerfinance.gov/ask-cfpb/how-long-does-it-take-
to-pay-off-a-student-loan-en-621/...............................................................................20

David Morgan, *Trump Pushes Congress to Pass His "Big Beautiful Bill" as Debate
Clouds Path Forward*, Reuters (June 24, 2025) ...........................................................7

*Restore*, Merriam-Webster, https://www.merriam-webster.com/dictionary/restore
(last visited June 13, 2026) ..........................................................................................10

*Revive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/revive
(last visited June 13, 2026) ..........................................................................................10

**INTRODUCTION**

Career Colleges & Schools of Texas ("CCST") filed this suit in 2023 to challenge the Department of Education's sweeping 2022 overhaul of the federal borrower-defense regulatory regime. The Fifth Circuit subsequently found that the 2022 Rule is "almost certainly unlawful" and ordered entry of a preliminary injunction against its enforcement pending final judgment. *CCST v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("*CCST (CA5)*").

Following the Fifth Circuit's decision, Congress enacted the One Big Beautiful Bill Act of 2025 ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (2025). As relevant here, the OBBBA further delayed enforcement of the 2022 Rule through 2035, *see id.* § 85001(a), and in the meantime temporarily "restored and revived" a prior set of regulations (the "2019 Rule") as they had been in effect before adoption of the 2022 Rule, *id.* § 85001(b). In light of those developments, CCST— now joined by Career Education Colleges and Universities ("CECU")—amended its complaint to maintain the existing challenges to the 2022 Rule and add challenges to the 2019 Rule as well.

Unable to defend either Rule on the merits in light of the Fifth Circuit's decision, the Department instead moves to dismiss on jurisdictional or quasi-jurisdictional grounds. The Court should deny that motion in its entirety. With respect to the 2019 Rule, the motion rests on the premise that the OBBBA codified the 2019 Rule into statute and placed it beyond challenge under the Administrative Procedures Act ("APA"). That premise, however, is wrong. It conflicts with the OBBBA's plain meaning, which describes restoration of a regulation in its prior (regulatory) form, not enactment of a new statutory standard. Indeed, elsewhere in the OBBBA, where Congress wished to give a regulation statutory force, it incorporated the regulation directly into the statutory text, confirming that the different language used for the borrower-defense provisions was a deliberate choice to leave the 2019 Rule as a regulation subject to ordinary APA review.

The Department's arguments with respect to the 2022 Rule are likewise flawed.  The Department contends that by delaying implementation until 2035, the OBBBA undermined Plaintiffs' standing to bring pre-enforcement challenges to the 2022 Rule or rendered such challenges unripe.  Standing and ripeness, however, are assessed based "'on the state of things at the time of the action brought'; if [jurisdiction] existed when the suit was brought, 'subsequent events' cannot 'oust' " the plaintiff of standing or alter the ripeness of its claims.  *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (alteration omitted) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 69 (1987) (Scalia, J., concurring)).  Here, the Fifth Circuit has already determined that CCST had standing and that its challenges were ripe, and the later enactment of the OBBBA provides no basis for revisiting those determinations.  Instead, the correct framework for addressing intervening developments like passage of the OBBBA is mootness.  *See id.*  The Department does not even *attempt* to satisfy the applicable mootness standard, however.  Nor could it:  That standard would require the Department to show that the 2022 Rule cannot reasonably be expected to recur, but such a showing would be impossible here because the OBBBA expressly anticipates that the 2022 Rule will return to effect in the future.

In any event, the effects of the 2022 Rule are still being felt, and a challenge would thus be ripe even if filed for the first time today.  For example, because the 2022 Rule will apply to loans disbursed before its effective date if those loans are subsequently consolidated, schools must account for its provisions now even though those loans will not formally take effect until 2035.

For all of those reasons, the motion to dismiss should be denied.

## BACKGROUND

### A.    The Higher Education Act And The History Of Borrower Defenses To Repayment

The Higher Education Act ("HEA") establishes several student loan programs.  The three most relevant here are the William D. Ford Federal Direct Loan Program ("Direct Loans"), under

which the federal government lends money directly to students; the Federal Family Education Loan ("FFEL") Program, under which the federal government subsidizes loans made by private and state lenders; and the Perkins Loan Program, under which the federal government subsidized low-interest loans for students with exceptional financial need.  *See* 87 Fed. Reg. 65,904 (Nov. 1, 2022).  Section 455(h) of the HEA allows a student who borrows under the Direct Loan program to assert a "borrower defense to repayment" in some circumstances if her school engaged in certain harmful acts or omissions.  20 U.S.C. § 1087e(h).  Section 455(h) further authorizes the Department to promulgate regulations specifying the "acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of Direct Loans.  *Id*.

The Department first promulgated regulations based on that statutory authorization in the mid-1990s.  At the time, the Department explained that its regulations "did not 'provide a private right of action for a borrower and [were] not intended to create new Federal rights in this area.'" 60 Fed. Reg. 37,768, 37,769 (July 21, 1995).  Instead, a "defense" to repayment was exactly that— a defense, raised by a borrower, in a collection proceeding that the Secretary had already initiated. 59 Fed. Reg. 61,671, 61,696 (Dec. 1, 1994); *see* 34 C.F.R. § 685.206(c) (1995).

The Department abandoned that understanding in 2016, when it authorized the affirmative assertion of "borrower defense" claims across a wide range of circumstances, untethered to any pending collection proceeding.  *See* 81 Fed. Reg. 75,926, 75,936 (Nov. 1, 2016) ("2016 Rule"). The 2016 Rule also made the new "borrower-defense" standards available to borrowers who had consolidated FFEL loans into the Direct Loan program (a process by which a borrower refinances existing federal loans into a new Direct Loan).  *See* 81 Fed. Reg. at 75,930-75,931.

**B.**    **The 2019 Rule**

In 2019, the Department promulgated a successor regulation applicable to loans "first disbursed on or after July 1, 2020."  84 Fed. Reg. 49,788, 49,788 (Sept. 23, 2019) ("2019 Rule").

3

The 2019 Rule reverted some of the 2016 Rule's overreaches, but it retained, and in certain respects expanded, the 2016 Rule's core departures from the original regulatory framework.

Chief among those departures was the Department's asserted authority to establish "a process for adjudicating" borrower defenses as freestanding affirmative "claims," rather than true defenses to collection. 84 Fed. Reg. at 49,788. In addition, the Department claimed the authority (after adjudicating a freestanding claim and approving a discharge) to recover the discharged amount directly from a school through a recoupment proceeding—in effect, holding the school financially liable for the borrower's debt. 34 C.F.R. § 685.206(e)(16) (2020); 84 Fed. Reg. at 49,788. The Department claimed similarly broad authority not only to define the categories of school conduct that could give rise to a borrower defense, but also to design and run the adjudicatory process through which those claims would be evaluated. 84 Fed. Reg. at 49,796. The 2019 Rule's adjudicatory procedure also allowed the Department to serve as its own fact-finder, "weigh[ing] information and evidence from all sides" outside any judicial or quasi-judicial process. 84 Fed. Reg. at 49,795, 49,830-49,831; 34 C.F.R. § 685.206(e)(10) (2020).

## C.    The 2022 Rule

The Department again amended its borrower-defense regulations with the promulgation of the 2022 Rule. *See* 87 Fed. Reg. 65,904. The 2022 Rule significantly broadened the substantive and procedural framework that the 2016 and 2019 Rules had established. Am. Compl. ¶¶ 68-87.

On the substance, the 2022 Rule relaxed the standards governing affirmative "borrower defense" claims. It eliminated the scienter requirement for misrepresentation claims, exposing schools to liability regardless of whether they intended to deceive. 34 C.F.R. § 668.71(c). It also replaced the 2019 Rule's misrepresentation standard, which had required a showing that the school's conduct was likely to mislead a reasonable person, with a broader and more easily satisfied standard. 34 C.F.R. § 668.75(e). And although Section 455(h) of the HEA applies by its

terms only to the Direct Loan Program, the 2022 Rule extended "borrower defense" claims to Perkins Loans and FFEL.  34 C.F.R. § 685.219(c)(3).

On procedure, the 2022 Rule's changes were equally stark.  Unlike the 2019 Rule, which guaranteed schools an opportunity to respond to borrower claims and submit their own evidence, 84 Fed. Reg. at 49,795, the 2022 Rule afforded schools no opportunity to conduct discovery, test the borrower's evidence, or cross-examine any borrower.  34 C.F.R. §§ 685.405, 685.406(b), (c).  It provided that borrowers may raise a defense "at any time," so long as any Direct Loan balance remains outstanding or *could* be consolidated into a different Direct Loan.  34 C.F.R. § 685.401(b).  Following a discharge determination, the Department may then initiate a recoupment proceeding against the school to recover the discharged amount.  87 Fed. Reg. at 65,913.  In that proceeding, the school has the burden to disprove the propriety of the discharge, without any right to discovery or cross-examination.  *Id*.  As a practical matter, therefore, the recoupment provisions require schools to maintain extensive records against accusations that may not arise for years, if at all.  *See* 87 Fed. Reg. at 65,913.

The 2022 Rule also dramatically expanded closed-school discharge eligibility.  Under the HEA, a borrower who is unable to complete her program because her school closes is entitled to have her loans discharged.  20 U.S.C. § 1087(c)(1).  The 2022 Rule broadened eligibility for that discharge by defining "closure" to encompass schools that cease to provide instruction to a majority of their students, even if the schools continue serving a substantial student population.  34 C.F.R. §§ 674.33(g)(1)(ii)(A), 682.402(d)(1)(ii)(A), 685.214(a)(2)(i).  The 2022 Rule allows recoupment claims against schools for the resulting discharges.  87 Fed. Reg. at 65,968.

### D.    This Lawsuit

CCST filed this lawsuit on February 28, 2023, roughly four months before the effective date of the 2022 Rule.  *See* 87 Fed. Reg. at 65,904. CCST asserted statutory and constitutional

challenges to the 2022 Rule and sought a preliminary injunction blocking it from taking effect. *See* Dkt. No. 23 (Apr. 5, 2023).  This Court denied a preliminary injunction after concluding that CCST had not established a likelihood of irreparable harm.  *See* Dkt. No. 74 (June 30, 2023).

The Fifth Circuit reversed.  *See CCST (CA5)*, 98 F.4th at 226.  Considering justiciability first, the Fifth Circuit held that "the challenged provisions of the Rule impose an immediate increase in regulatory burden on the plaintiffs, which is neither speculative nor contingent nor dependent on . . . independent acts," and that as a result "CCST has standing to sue." *Id.* at 234. Turning next to irreparable harm, the Fifth Circuit found that CCST had established "specific, immediate, and irreparable injuries" flowing from the 2022 Rule, including "increased costs of compliance, necessary alterations in operating procedures, and immediate threats of unlawful adjudications of liability." *Id.* at 235.  Finally, considering the merits, the Fifth Circuit found "a strong likelihood that the plaintiffs will succeed . . . in demonstrating the [2022] Rule's numerous statutory and regulatory shortcomings." *Id.* at 226.  On the core question of statutory authority, the court held that Section 455(h) "does not authorize the Department to draft regulations spelling out affirmative 'claims' that borrowers can assert against schools to avoid their obligations," because a "'defense' is a reactive measure, not a proactive basis for a borrower's suit." *Id.* at 240- 41.  The court further held that the Department lacked authority to adjudicate borrower-defense claims or recoupment claims against schools, reasoning that Section 455(h)'s grant of rulemaking authority "speaks only to the Secretary's power to promulgate *regulations*—not the power to *adjudicate* cases." *Id.* at 247.  The court also found that the Rule's strict-liability standards, which impose liability "without any level of intent," were in tension with Section 455(h)'s requirement that the Department "specify" the acts or omissions that give rise to a borrower defense. *Id.* at 245.  And the court concluded that the closed-school discharge provisions likely exceeded the

6

Department's statutory authority, too, by redefining "closure" in a manner that "contradict[s] the clear text of the statute." *Id.* at 251-52.

Following the Fifth Circuit's decision, the Department filed a petition for a writ of certiorari, which the Supreme Court granted. *See* Dkt. No. 105 (Jan. 14, 2025).

**E.      Developments After The Fifth Circuit's Decision**

On July 4, 2025, while the case was pending in the Supreme Court, President Trump signed into law the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (2025). The OBBBA originated in the House of Representatives as a budget-reconciliation measure. As relevant here, the House version would have provided that the borrower-defense and closed-school discharge provisions of the 2022 Rule "are repealed and shall have no legal effect." H.R. 1, 119th Cong. § 30051(c) (2025). It would also have barred the Department from promulgating any "substantially similar" regulation absent explicit congressional authorization. *Id.* § 30051(e).

Those provisions, which would have resulted in a permanent change to the regulatory landscape, did not survive the Senate. Under the so-called "Byrd Rule," provisions of a budget-reconciliation bill that lack a sufficient budgetary nexus are subject to a point of order requiring sixty votes to overcome. *See* 2 U.S.C. §§ 644, 645. Accordingly, after objections to the House's borrower-defense and closed-school discharge provisions were raised with the Senate Parliamentarian, the Senate removed the House version's full repeal of the relevant portions of the 2022 Rule and substituted provisions that merely delayed their effective dates. *See* H.R. 1 (Engrossed Amendment Senate ), 119th Cong. §§ 85001-85002 (2025).[1]

---

[1] David Morgan, *Trump Pushes Congress to Pass His "Big Beautiful Bill" as Debate Clouds Path Forward*, Reuters (June 24, 2025), http://reuters.com/legal/transactional/trump-pressures-congress-his-big-beautiful-bill-debate-clouds-path-forward-2025-06-24/.

Two provisions of the OBBBA, as ultimately enacted, are central here.  The first, entitled "Delay of Rule Relating to Borrower Defense to Repayment," states that, "for loans that first originate before July 1, 2035, the provisions of subpart D of part 685 of title 34, Code of Federal Regulations (relating to borrower defense to repayment), as added or amended by the final regulations published by the Department of Education on November 1, 2022, . . . shall not be in effect."  OBBBA § 85001(a).  During that period, "any regulations relating to borrower defense to repayment that took effect on July 1, 2020"—*i.e.*, the 2019 Rule—"are restored and revived as such regulations were in effect on such date."  *Id.* § 85001(b).  A second provision, entitled "Delay of Rule Relating to Closed School Discharges," provides that, "for loans that first originate before July 1, 2035, the provisions of sections 674.33(g), 682.402(d), and 685.214 . . . [relating to closed-school discharges], as added or amended by the final regulations published by the Department of Education on November 1, 2022, . . . shall not be in effect."  *Id.* § 85002(a).  As to such loans, those provisions "shall be in effect as if the amendments made by" the 2022 Rule "had not been made."  *Id.* § 85002(b).

Following the OBBBA's enactment, the parties stipulated to dismissal of the writ of certiorari.  The case then returned to this Court, and on February 20, 2026, CCST—now joined by CECU—filed the operative Amended Complaint, which maintains CCST's existing challenges to the 2022 Rule and adds challenges to the 2019 Rule.  *See* Dkt. No. 118 ("Am. Compl.").  The Department moved to dismiss the Amended Complaint on May 5, 2026.  *See* Dkt. No. 123.

## ARGUMENT

The Department identifies no sound basis for dismissing Plaintiffs' claims.  As to the challenges to the 2019 Rule, the Department's motion rests entirely on the premise that the OBBBA codified the 2019 Rule into statute.  That premise, however, is wrong.  Instead, the OBBBA's text and structure confirm that the 2019 Rule retains its character as an agency

regulation.  As to the challenges to the 2022 Rule, meanwhile, the Department argues that by delaying implementation, the OBBBA deprived Plaintiffs of standing and rendered the challenges unripe.  Standing and ripeness, however, are assessed at the time a suit is filed, and do not depend on intervening developments like passage of the OBBBA.  Instead, courts assess the effect of such developments under the doctrine of mootness, which requires the *defendant* to establish that there is no reasonable possibility that the controversy will recur.  The Department cannot satisfy that more demanding standard here, which presumably explains why it does not even try.

## I.    The OBBBA Did Not Moot Plaintiffs' Challenges To The 2019 Rule Or Foreclose The Remedy Of Vacatur.

The Department advances three arguments for dismissal of Counts X and XI, which challenge the 2019 Rule.  It contends that the OBBBA (1) mooted Plaintiffs' APA challenge by directing implementation of the 2019 Rule; (2) foreclosed the remedy of vacatur; and (3) ratified the 2019 Rule as a matter of substantive law.  Mot. 9-11.  All three arguments depend on the same flawed premise:  That in temporarily restoring and reviving the 2019 Rule, the OBBBA "transformed the borrower defense regulatory scheme into a statute," Mot. 9, thereby placing it beyond APA challenge.  That premise is irreconcilable with the text and structure of the OBBBA.

### A.    The Plain Text Of The OBBBA Confirms That The 2019 Rule Was Restored As A Regulation, Not Enacted As A Statute.

"As in any case of statutory construction, our analysis begins with the language of the statute."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (citation and internal quotation marks omitted).  Here, Section 85001(b) of the OBBBA states that, "with respect to loans that first originate before July 1, 2035," the borrower-defense provisions of the 2019 Rule "are *restored and revived as such regulations were in effect on* [July 1, 2020]."  OBBBA § 85001(b) (emphasis added).  A parallel provision addressing closed-school discharges states that

9

the relevant sections of the Code of Federal Regulations shall "be in effect as if the amendments made by [the 2022 Rule] . . . had not been made." *Id.* § 85002(b).

Interpreting those provisions according to their "ordinary meaning," *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021), they make clear that Congress did not convert the 2019 Rule from an agency regulation into a statutory command. To "restore" something is to "bring back to or put back into a former or original state." *Restore*, Merriam-Webster, https://www.merriam-webster.com/dictionary/restore. To "revive" something is to "restore from a depressed, inactive, or unused state; to bring back." *Revive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/revive. Both words describe a return to a prior condition, not the creation of a new legal status. And Congress was explicit about the condition to which it was returning the "regulations" that made up the 2019 Rule—namely, the condition in which those "regulations were in effect on [July 1, 2020.]" OBBBA § 85001(b). On July 1, 2020, the 2019 Rule was not a statute; it was a regulation, subject (like any other regulation) to judicial review and potential vacatur under the APA. Indeed, on July 1, 2020, the 2019 Rule was the subject of a pending APA challenge. *See* pp. 14-15, *infra*. Thus, reviving the 2019 Rule "as . . . in effect" on July 1, 2020, means reviving it as a regulation subject to APA challenge, not transmogrifying it into a statute immune from such challenge.

The text of the closed-school discharge provision points to the same conclusion.[2] Congress directed that the provisions of the 2019 Rule "shall be in effect as if the amendments [from the 2022 Rule] had not been made." OBBBA § 85002(b). That language does only what it says: It suspends the 2022 Rule's relevant amendments, leaving the underlying 2019 Rule provisions in

---

[2] Plaintiffs have not challenged the closed-school discharge provisions of the 2019 Rule, but the OBBBA's treatment of those provisions reinforces the conclusion that Congress was not codifying any part of the 2019 Rule.

place as they stood before those amendments were made.  And merely suspending regulatory amendments does not change the original (regulatory) nature of the underlying provisions.

When Congress actually intends to give a regulation the force of statute, by contrast, it codifies the regulation by incorporating its standards directly into statutory text.  *See, e.g.*, *Dada v. Mukasey*, 554 U.S. 1, 14 (2008) (holding that by directly incorporating a regulation's time limits and restrictions on filing of motions to reopen, a statute "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available"); *George v. McDonough*, 991 F.3d 1227, 1237 (Fed. Cir. 2021) (discussing amendment in which Congress acted to "codify the existing regulation" governing review of veterans' benefits decisions) (alteration and citation omitted).  Indeed, in a preceding provision of the OBBBA, Congress added a new subsection to the HEA defining the statutory term "professional student" to mean a student in a program awarding "a professional degree, as defined under section 668.2 of title 34, Code of Federal Regulations," OBBBA § 81001(2), thereby adding the regulatory standard directly to the U.S. Code.  The provisions addressing the 2019 Rule do nothing like that.  They define no statutory term by reference to the 2019 Rule and incorporate none of its substance; they simply "restore[] and revive[]" the 2019 Rule "as such regulations were in effect" on July 1, 2020.  And the fact that "Congress knows how to write a statute exactly like [the Department] would have [this Court] read" the OBBBA, but instead "chose different language [for Sections 85001(b) and 85002(b),] only strengthens" the conclusion that Congress did not intend to codify the provisions of the 2019 Rule.  *United States v. Lemus*, 93 F.4th 1255, 1261 (9th Cir. 2024).

**B.     The History And Structure Of The OBBBA Confirm That Congress Did Not Codify The 2019 Rule.**

The OBBBA's history and structure further confirm that Congress did not make permanent statutory changes to the regulatory regime at issue.  As discussed, *see* pp. 9-11, *supra*, the House

11

version of the bill would have repealed the 2022 Rule outright and prohibited the Department from promulgating materially similar regulations. But because making those substantive changes would have triggered a 60-vote requirement under the Byrd Rule, the Senate replaced them with provisions that—as their titles indicated—merely "[d]elay[ed]" the effective date of the 2022 Rule. *See* OBBBA § 85001 ("Delay of Rule Relating to Borrower Defense to Repayment"); *id.* § 85002 ("Delay of Rule Relating to Closed School Discharges"). The Department's attempt to treat those provisions as making permanent changes to the underlying statute thus disregards not only their text (and titles) but also the process by which they were enacted.

Treating the "Delay of Rule" provisions as codifying the 2019 Rule into statute would also conflict with the OBBBA's structure. Sections 85001(a) and 85002(a) both anticipate that the 2022 Rule—an agency regulation—will return to effect in 2035 for "loans that first originate [on or after] July 1, 2035." OBBBA §§ 85001, 85002. When it does so, it will repeal or modify multiple substantive provisions of the 2019 Rule. For example, the 2019 Rule requires borrowers to file borrower-defense claims within three years. 34 C.F.R. § 685.206(e)(6). The 2022 Rule eliminates that limitations period entirely. *See* 87 Fed. Reg. at 65,991. The 2019 Rule also requires a showing that an "act[] or omission by an eligible school . . . was made with knowledge of its false, misleading, or deceptive nature, or with a reckless disregard for the truth." 34 C.F.R. § 685.206(e)(3). The 2022 Rule removes that requirement, too. *See* 87 Fed. Reg. at 65,991.

There is nothing remarkable about such regulatory rescissions if the 2019 Rule remains a collection of agency regulations. But if the OBBBA elevated the 2019 Rule to a statute (as the Department now contends), then it would be impossible for the Department's 2022 Rule to rescind portions of the 2019 Rule in the manner that the OBBBA anticipates. *See Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374-75 (1986) (observing that an agency lacks the "power to

12

override Congress"). The Department's interpretation would render the OBBBA's own sunset mechanism incoherent. The only reading that makes the statute internally consistent is instead the straightforward one: that the OBBBA temporarily suspended one set of agency regulations and restored another, leaving both subject to the ordinary operation of administrative law.

### C.    Because The OBBBA Did Not Enact Or Ratify The Substance Of The 2019 Rule, There Is No Basis For Dismissing Challenges To That Rule.

Because the OBBBA did not codify the 2019 Rule, the Department's arguments for dismissal of Counts X and XI fail. Congress's revival of the 2019 Rule as it stood on July 1, 2020 does not moot all challenges to the rule, endorse its substance, or foreclose any possible remedy.

Taking the mootness argument first, the Department relies on *Nuclear Energy Institute, Inc. v. EPA*, 373 F.3d 1251 (D.C. Cir. 2004) ("*NEI*"), which held that "[w]here Congress enacts intervening legislation that definitively resolves the issues a litigant seeks to put before [the court], the claims are moot and [the court is] precluded from deciding them," *id.* at 1309. But *NEI* is inapposite. In that case, Congress enacted a joint resolution approving the Department of Energy's recommendation of Yucca Mountain as a nuclear waste repository (a specific, discrete agency adjudication), and it was that congressional approval of the specific decision at issue that definitively resolved the underlying legal dispute. *Id.* at 1263. Here, by contrast, the OBBBA did not approve any specific agency decision. It just adjusted the regulatory landscape by delaying one set of regulations and temporarily reviving another. Nothing about that limited congressional action "definitively resolves" Plaintiffs' challenges to the 2019 Rule. *Id.* at 1309.

The Department's ratification and remedy arguments fail for similar reasons. As discussed above, *see* pp. 9-11, ratification requires Congress to actually endorse or codify a regulation. Because the OBBBA instead simply restored the 2019 Rule to its regulatory status on July 1, 2020, *without* codifying the 2019 Rule's substance, it does not foreclose an APA challenge. And

13

contrary to the Department's argument (at 10-11), vacating provisions of the 2019 Rule would not conflict with the OBBBA's command that the 2019 Rule is "restored and revived" to the state it was in on July 1, 2020, because on that date, it could have been challenged under the APA and, if the challenge was successful, vacated.  In any event, the Amended Complaint seeks relief other than vacatur—namely, a declaration that the borrower-defense provisions of the 2019 Rule are invalid and an injunction barring enforcement of such provisions.  *See* Am. Compl. at 90.  The APA expressly contemplates that relief.  *See* 5 U.S.C. § 703 (endorsing APA "actions for declaratory judgments or writs of prohibitory or mandatory injunction").[3]  And entry of declaratory or injunctive relief would not conflict in any way with the OBBBA.

> **D.    The Recent Summary Order In *New York Legal Assistance Group v. McMahon* Does Not Support A Contrary Result.**

The recent summary order in *New York Legal Assistance Group v. McMahon* does not support a different result.  *See* No. 21-888, 2026 WL 1408439 (2d Cir. May 20, 2026).  In that case (filed in February 2020), the New York Legal Assistance Group ("NYLAG") challenged the 2019 Rule under the APA.  The district court eventually vacated the three-year limitations period for certain defensive borrower claims as procedurally defective.  *NYLAG v. Cardona*, No. 20-cv-1414, 2025 WL 871371 (S.D.N.Y. Mar. 20, 2025).  While that judgment was on appeal, Congress enacted the OBBBA.  The Second Circuit thereafter dismissed the appeal as moot, concluding in

---

[3] The Department relies on the statement in *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation," *id.* at 374-75.  But in *Franciscan Alliance*, the regulation at issue had already been rescinded, so there was no possibility of injunctive or declaratory relief.  The Department points to no decision holding that declaratory or injunctive relief other than vacatur is unavailable in APA challenges to live regulations—and, indeed, courts have routinely granted permanent injunctions in such suits.  *See, e.g.*, *Texas v. Yellen*, 105 F.4th 755, 761-62 (5th Cir. 2024) (affirming permanent injunction barring enforcement of regulation against plaintiff States).

a footnote that by restoring the 2019 Rule as it existed on July 1, 2020, Congress had ratified or codified the Rule and thereby immunized it from APA challenge. 2026 WL 1408439, at *2 n.2.

That order provides no persuasive basis for granting the Department's motion here. As a summary order, it carries no precedential weight even within the Second Circuit. *See* 2d Cir. IOP 32.1.1(b). More fundamentally, the court reached its cursory conclusion without engaging with any of the considerations discussed above: It did not examine the ordinary meaning of "restore[]" and "revive[]"; it did not consider the statutory phrase "as such regulations were in effect on such date"; and it did not address Congress's choice not to use the codification or ratification vocabulary it employs when it intends to elevate a regulation to statutory status. Moreover, the question the Second Circuit needed to answer, whether the OBBBA's revival of the 2019 Rule undid a prior vacatur of the limitations period, is not the question presented here. Any separate discussion of whether the 2019 Rule, once restored, remains subject to independent APA challenge was unnecessary to its decision. *See* 2026 WL 1408439, at *3. That question turns on the text and structure of the OBBBA, which (for the reasons set out above) compel the conclusion that the 2019 Rule remains a regulation and is challengeable as such.

## II.    The OBBBA Did Not Deprive This Court Of Jurisdiction Over The Challenges To The 2022 Rule.

The Department separately contends that the challenges to the 2022 Rule (Counts I-IX) must be dismissed on standing and ripeness grounds. Mot. 11-18. Those contentions fail as well. The Fifth Circuit has already determined that CCST's members faced concrete and irreparable harm at the outset of the suit, which was sufficient to establish CCST's standing to challenge the 2022 Rule and the ripeness of that challenge. The later enactment of the OBBBA does not change that, because courts assess standing and ripeness based "'on the state of things at the time of the action brought'; if [jurisdiction] existed when the suit was brought, 'subsequent events' cannot

15

'oust'" the plaintiff of standing or alter the ripeness of its claims. *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (alteration and citation omitted). Instead, any jurisdictional effect of the OBBBA's passage would be assessed through the lens of mootness. But the Department cannot carry its heavy burden to show that enactment of the OBBBA mooted the challenges to the 2022 Rule—and does not even try.

### A.    Plaintiffs Have Standing To Challenge The 2022 Rule.

The Department contends that Plaintiffs cannot demonstrate sufficiently imminent enforcement of the 2022 Rule to support standing. Mot. 12-14. That argument ignores black-letter law that standing is determined at the time a lawsuit is filed.

Both this Court and the Fifth Circuit already held that CCST demonstrated concrete and imminent injury sufficient to establish standing at the outset of this case. *See Career Colleges & Schs. of Tex. v. Dep't of Educ.*, 681 F. Supp. 3d 647, 654-56 (W.D. Tex. 2023); *CCST (CA5)*, 98 F.4th at 234. The Department cannot relitigate settled questions about CCST's standing by repackaging them as arguments about the effect of the OBBBA's later enactment, since "if [standing] existed when the suit was brought, subsequent events cannot oust the court of jurisdiction." *Carr*, 931 F.2d at 1061 (alteration, citation, and internal quotation marks omitted). And "because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006), this Court need not separately determine whether CECU has standing (though, for reasons discussed below, *see* pp. 19-20, *infra*, it does).

### B.    Plaintiffs' Challenges To The 2022 Rule Are Ripe For Adjudication.

The Department argues in the alternative that Plaintiffs' challenges to the 2022 Rule are not ripe. Mot. 14-18. That argument also cannot be squared with black-letter law and the Fifth Circuit's decision ordering this Court to issue a preliminary injunction.

16

Ripeness, like "all questions of subject matter jurisdiction except mootness," is "determined as of the date of the filing of the complaint." *Carr*, 931 F.2d at 1061.  And here, the Fifth Circuit determined at the outset of the case that CCST had established a threat of "specific, immediate, and irreparable injuries." *CCST (CA5)*, 98 F.4th at 235.  It then proceeded to analyze the merits of the parties' dispute, finding that the "provisions of the [2022] Rule that CCST challenges" are "almost certainly unlawful" and that this Court should enter a preliminary injunction barring their enforcement. *Id.* at 255.  That willingness to weigh in on the merits of the parties' challenge, and the finding that CCST's members faced immediate and irreparable injury in the absence of a preliminary injunction, necessarily reflected determinations that the issues were "fit[] . . . for judicial resolution" and that CCST would face "potential hardship" if the courts refused to consider CCST's claims. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  The challenges were thus ripe when filed, *see id.*, and "subsequent events"—like Congress's enactment of the OBBBA—cannot alter that conclusion, *Carr*, 931 F.2d at 1061.[4]

**C.      Because The 2022 Rule Is Scheduled To Take Effect Again In The Future, The Department Cannot Show That This Case Is Moot.**

Rather than evaluating post-filing developments through the lenses of standing or ripeness, the Supreme Court and Fifth Circuit have instead recognized that mootness provides the correct lens for analyzing the jurisdictional effect of "intervening circumstances." *Ctr. for Biological*

---

[4] Although the Department refers to "'prudential' principles" in its discussion of ripeness, Mot. 14, it makes no freestanding argument for dismissal on prudential grounds.  Instead, its motion to dismiss the challenges to the 2022 Rule rests entirely on an asserted lack of "subject matter jurisdiction over the claims pleaded in Counts One through Nine." Mot. 11.  This Court therefore need not consider whether, and to what extent, intervening events might be relevant to a prudential ripeness analysis in a case where, as here, the Fifth Circuit has already weighed in on the merits and ordered entry of a preliminary injunction.  Instead, as discussed next, the effect of the OBBBA's passage on justiciability is properly analyzed through the lens of mootness, particularly given the Supreme Court's doubts about "the continuing vitality of the prudential ripeness doctrine" as a whole. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).

*Diversity, Inc. v. BP America Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013); *see Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[M]ootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (citation omitted). And because "by the time mootness is an issue," abandonment of the case "may prove more wasteful than frugal," the burden of establishing that intervening developments have mooted a case rests on the defendant. *Friends of the Earth*, 528 U.S. at 191-92. As the Department itself acknowledges in its discussion of the 2019 Rule, a defendant can satisfy that burden by pointing to "intervening legislation" only where that legislation "definitively resolves the issues a litigant seeks to put before" the court. Mot. 9 (quoting *NEI*, 373 F.3d at 1309). But the Department cannot make that showing with respect to the 2022 Rule here—and, indeed, it does not try.

In contrast to its view of the 2019 Rule, the Department appears to concede that the OBBBA did not codify or otherwise endorse the 2022 Rule. *See* Mot. 15-17. Instead, the OBBBA merely delayed the 2022 Rule's effective date. *See id.* And the Supreme Court has squarely recognized that deferral of a rule's effective date does not moot a challenge to that rule. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018). To be sure, *rescission* might render a challenge to a rule moot, notwithstanding "the government's ability to reimplement the . . . regulation at issue" in the future, because the presumed good faith of "governmental entities" makes it likely "that the challenged conduct will not recur once the suit is dismissed as moot." *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (citation omitted). Here, though, the OBBBA expressly contemplates that the 2022 Rule will take effect in 2035. And while the Department asserts (at 13) that there is "a good chance" enforcement "may never

18

happen" because the 2022 Rule might be rescinded in the future, the fact that the 2022 Rule is still "on the books for now" ensures that the challenges to the 2022 Rule are not moot. *Nat'l Ass'n of Mfrs.*, 583 U.S. at 120 n.5 (holding that case was not moot even though the agency was actively considering changes to the rule). That presumably explains why the Department has instead attempted to shoehorn its justiciability challenge into the (inapposite) standing and ripeness frameworks discussed above.

### D.    Plaintiffs Are Experiencing Ongoing Harm.

In any event, even if Plaintiffs' challenges to the 2022 Rule had been raised for the first time following passage of the OBBBA, the case would still be justiciable because the 2022 Rule is causing current harm to Plaintiffs' members. Plaintiffs' members continue to be harmed—right now, today—because they are "being 'force[d] . . . to modify [their] behavior in order to avoid future adverse consequences.'" *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998)).

The Fifth Circuit observed at the preliminary injunction stage that the 2022 Rule caused redressable harm to CCST's members because they needed to undertake "'preparatory analysis, staff training, and reviews of existing compliance protocols'" before the 2022 Rule went into effect. *CCST (CA5)*, 98 F.4th at 234 (quoting *Career Colleges*, 681 F. Supp. 3d at 655). Nothing about that observation has changed: The OBBBA deferred the 2022 Rule's requirements, but it did not eliminate them. Moreover, the structure of the 2022 Rule makes it highly likely that schools' *current* conduct will eventually be evaluated against the 2022 Rule's standards. Specifically, the 2022 Rule will apply to any loan consolidated after its effective date, even if the loan was originally disbursed before 2035. *See* 87 Fed. Reg. at 65,915-65,916. And given that the standard repayment option for federal student loans is 10 years, it is virtually certain that many of the students and prospective students with whom Plaintiffs' members are currently interacting

19

will still have loans outstanding—and subject to consolidation—when the 2022 Rule takes effect again in 2035.[5]  Schools must therefore modify their behavior now to ensure that they do not face liability under the 2022 Rule when those students consolidate their loans in 2035 or later.[6]

The Department argues that, because the 2022 Rule has been deferred to 2035, Plaintiffs should simply refile in a few years.  Mot. 18.  But the cases the Department relies on are inapposite. In each, the regulated party faced no present obligation; any burden depended instead on a future contingent event that had not yet occurred.  *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (no ripe habeas claim until risk of unlawful retention was imminent); *United States v. Veal*, 322 F.3d 1275, 1278 (11th Cir. 2003) (no injury from the mere prospect of future placement on a sex offender registry); *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999) (no harm where prospective registration obligation remained years away); *Int'l Liquid Terminals Ass'n v. Dep't of Homeland Sec.*, No. 18-cv-467, 2018 WL 8667001, at *2 (E.D. Va. Sept. 17, 2018) (challenge unripe where regulation would not take effect unless a future study recommended no changes). Here, by contrast, the 2022 Rule imposes immediate obligations:  Member schools must modify their behavior today (including by retaining additional records) or face liability in the future.  For that reason, too, Plaintiffs' challenges to the 2022 Rule are justiciable.

## CONCLUSION

For the foregoing reasons, this Court should deny the Department's motion to dismiss.

---

[5] *See* Consumer Financial Protection Bureau, *How long does it take to pay off a student loan?* (Apr. 15, 2024), https://www.consumerfinance.gov/ask-cfpb/how-long-does-it-take-to-pay-off-a-student-loan-en-621/.

[6] While consolidation depends on the future choices of individual borrowers, the 2022 Rule's terms are so overwhelmingly favorable that eventual consolidation is a predictable, "commonsense economic reality" that easily satisfies Article III justiciability.  *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 116 (2025) (holding that courts may consider such realities in assessing standing and ripeness).

Dated: July 6, 2026

Respectfully submitted,

 */s/ Benjamin W. Snyder*
Allyson B. Baker (*pro hac vice*)
Benjamin W. Snyder (*pro hac vice*)
Michael Murray (*pro hac vice*)
Meredith Leigh Boylan (*pro hac vice*)
Sameer P. Sheikh (*pro hac vice*)
Paul Hastings LLP
2050 M Street NW
Washington, DC 20037
allysonbaker@paulhastings.com
(202) 551-1830

Philip Vickers
 Texas Bar No. 24051699
Katherine Hancock
 Texas Bar No. 24106048
Cantey Hanger LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

*Counsel for Plaintiffs*

21

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system on July 6, 2026.

/s/ *Benjamin W. Snyder*
Benjamin W. Snyder (*pro hac vice*)