**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| CAREER COLLEGES & SCHOOLS OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION *et al*., <br><br> Defendants. | Case No. 23-cv-433-RP |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.      The Court Should Dismiss Plaintiffs' Claims Against the 2019 Regulations. ..................... 2

II.     The Court Should Dismiss Plaintiffs' Claims Against the 2022 Regulations. ..................... 6

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967)............................................................................................ 10

*Am. Ass'n of Nurse Pracs. v. McMahon*,
   --- F. Supp. 3d ---, 2026 WL 1826176 (D.D.C. June 24, 2026) ................................... 4

*Anderson v. Green*,
   513 U.S. 557 (1995)............................................................................................. 8

*Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund v. PBGC*,
   136 F.4th 26 (2d Cir. 2025)................................................................................... 6

*Boelens v. Redman Homes, Inc.*,
   759 F.2d 504 (5th Cir. 1985)................................................................................. 7

*BP PLC v. Mayor & City Council of Balt.*,
   593 U.S. 230 (2021)............................................................................................. 4

*Brown v. United States*,
   602 U.S. 101 (2024)............................................................................................. 4

*California v. Texas*,
   593 U.S. 659 (2021)............................................................................................. 9

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)............................................................................................. 9

*Cont'l Air Lines, Inc. v. Dep't of Transp.*,
   843 F.2d 1444 (D.C. Cir. 1988).............................................................................. 4

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991)............................................................................................... 7

*Davis v. A.G. Edwards & Sons, Inc.*,
   823 F.2d 105 (5th Cir. 1987)................................................................................. 9

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
   344 F.3d 1263 (11th Cir. 2003) ............................................................................. 7

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*,
   146 S. Ct. 1546 (2026)...................................................................................... 5, 6

*Fund Tex. Choice v. Deski*,
No. 1:22-cv-859, 2024 WL 5355826 (W.D. Tex. Oct. 29, 2024) ................................................ 7

*G&E Real Est., Inc. v. Avison Young—Wash., DC, LLC*,
168 F. Supp. 3d 147 (D.D.C. 2016) ........................................................ 7

*GAF Bldg. Materials Corp. v. Elk Corp. of Dall.*,
90 F.3d 479 (Fed. Cir. 1996) ........................................................ 7

*Gas Transmission Nw., LLC v. FERC*,
157 F4th 674 (5th Cir. 2025) ........................................................ 8

*Harrell v. The Fla. Bar*,
608 F.3d 1241 (11th Cir. 2010) ........................................................ 9, 10

*Hunter v. Branch Banking & Tr. Co.*,
No. 3:12-cv-2437, 2013 WL 4052411 ........................................................ 7

*Interstate Consol. St. Ry. Co. v. Massachusetts*,
207 U.S. 79 (1907) ........................................................ 4, 5

*Mink v. Suthers*,
482 F.3d 1244 (10th Cir. 2007) ........................................................ 7

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ........................................................ 2

*N.Y. Legal Assistance Grp. v. Cardona*,
2024 WL 64220 (2d Cir. Jan. 5, 2024) ........................................................ 3

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ........................................................ 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ........................................................ 8, 10

*Neese v. Becerra*,
123 F.4th 751 (5th Cir. 2024) ........................................................ 10

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
833 F.2d 583 (5th Cir. 1987) ........................................................ 8

*New York Legal Assistance Group v. McMahon*,
No. 21-888, 2026 WL 1408439 (2d Cir. May 20, 2026) ........................................................ 1, 3

*New York v. EPA*,
413 F.3d 3 (D.C. Cir. 2005) ........................................................ 4

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) ................................................................... 7

*Nuclear Energy Inst., Inc. v. EPA*,
  373 F.3d 1251 (D.C. Cir. 2004) .................................................................. 3

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998) .......................................................................... 8, 9, 10

*Pugin v. Garland*,
  599 U.S. 600 (2023) .................................................................................... 2

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) .................................................................................... 3

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) .................................................................................... 7

*Royal Canin USA, Inc. v. Wullschleger*,
  604 U.S. 22 (2025) ...................................................................................... 7

*Saavedra Bruno v. Albright*,
  197 F.3d 1153 (D.C. Cir. 1999) .................................................................. 8

*Satanic Temple Inc. v. Young*,
  681 F. Supp. 3d 685 (S.D. Tex. 2023) ........................................................ 7

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................... 8

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .................................................................................. 10

*Sweet v. Cardona*,
  121 F.4th 32 (9th Cir. 2024) ..................................................................... 10

*Umphress v. Hall*,
  133 F.4th 455 (5th Cir. 2025) ..................................................................... 8

*Walker v. Haynes*,
  659 F.2d 46 (5th Cir. 1981) ........................................................................ 7

*Walmart v. DOJ*,
  21 F.4th 300 (5th Cir. 2021) .................................................................... 8, 9

**STATUTES**

5 U.S.C. § 551(4) ............................................................................................ 9

5 U.S.C. § 702(1) .............................................................................................................. 8

**LEGISLATIVE MATERIALS**

An Act to amend the Clean Air Act, and for other purposes,
Pub. L. No. 95-95, § 129(a)(1), 91 Stat. 685, 745 (1977) ............................................ 4

H.R. 1, 119th Cong. § 30051(e) (2025) ........................................................................ 5

One Big Beautiful Bill Act,
Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025) ................................................ *passim*

**REGULATIONS**

34 C.F.R. § 685.206 (2020) .......................................................................................... 4, 6

87 Fed. Reg. 65,905 (Nov. 1, 2022) .............................................................................. 10

**OTHER AUTHORITIES**

2B Sutherland Statutory Construction § 49:1 (7th ed. Nov. 2025 Update) ..................... 3

*Effect*, The Oxford English Dictionary (online ed. 2026),
https://doi.org/10.1093/OED/7712376194 .................................................................. 3

*Revive*, Merriam-Webster,
https://www.merriamwebster.com/dictionary/revive ................................................... 3

**INTRODUCTION**

In May, the Second Circuit issued an opinion in *New York Legal Assistance Group v. McMahon*, No. 21-888, 2026 WL 1408439 (2d Cir. May 20, 2026). The *New York Legal Assistance Group* plaintiffs sought Administrative Procedure Act ("APA") review of the same 2019 regulations that Plaintiffs now challenge in this case. After the district court issued a final judgment partially vacating those regulations, the Second Circuit concluded that § 85001 of the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025), rendered the case moot. As the court explained, § 85001 renders the referenced 2019 regulations "beyond the scope of [a court's] judicial review under the APA[.]" *Id*. at *2. Plaintiffs provide no persuasive basis—because there is none—for this Court to depart from the Second Circuit's unanimous opinion, which was so uncontroversial that it was issued in an unpublished order.

Moreover, the Court should not grant Plaintiffs' demands for an advisory opinion with respect to regulations that shall not be in effect for any loans that first originate over the next decade. Plaintiffs' opposition asserts a novel theory under which their members must "modify their behavior now[.]" Opp'n to Defs.' Mot. to Dismiss the Am. Compl. at 20, ECF No. 124. That theory is not pleaded in the complaint. In fact, Plaintiffs have admitted the opposite: their members have until 2035 to conform to 2022 regulations. First Am. Compl. ¶ 33, ECF No. 122.

Unsurprisingly, Plaintiffs' theory provides no basis for pre-enforcement review in this action even if it were properly before the Court. Their theory is that loans that first originate now and are subsequently refinanced into mixed consolidation loans after 2035 will be subject to the 2022 regulations. But that theory is unavailing because it (1) is premised on impermissible speculation about future conduct by policymakers, (2) is not premised on any formalized agency interpretation of § 85001, and (3) is premised upon the Department of Education ("Department") exercising recoupment discretion in a manner that it has renounced.

1

**ARGUMENT**

**I.      The Court Should Dismiss Plaintiffs' Claims Against the 2019 Regulations.**

The Court should not depart from the Second Circuit's unanimous opinion in *New York Legal Assistance Group v. McMahon*.  Congress's intervention by way of § 85001 provides certainty in this area for at least a decade.  Plaintiffs' arguments to the contrary are unpersuasive.

First, Plaintiffs' interpretation violates the presumption against ineffectiveness. Congress's constitutional role is to set policy.  And OBBBA § 85001 set policy for loans that first originate before July 1, 2035.  Specifically, the 2019 regulations—as they were in effect prior to the 2022 amendments and the New York federal district court's vacatur order—are restored and revived and the 2022 regulations shall not be in effect.  *Id*.

But Plaintiffs argue that § 85001(b) did not set policy and is little more than a pointless reset.  ECF No. 124 at 10-15.  Under their theory, the federal district court that had already vacated the 2019 regulations could (and presumably would) re-issue its vacatur order.  *See id*.  Similarly, Plaintiffs necessarily argue that § 85001(b) does nothing but tee up the 2019 regulations for vacatur in light of the Fifth Circuit's reasoning from the preliminary injunction stage[1] and their claims in the Amended Complaint.  *See* Am. Compl. ¶¶ 291-95.  But courts do "not lightly conclude that Congress enacted a self-defeating statute." *Pugin v. Garland*, 599 U.S. 600, 607 (2023) (citation omitted).  Section 85001 is clear: the rights and obligations described in the Department's 2019 regulations are restored, revived, operative, and fully enforceable as they were prior to the New York federal district court's partial vacatur, as applied to borrower defense claims against repayment of any loans that first originate before July 1, 2035.  OBBBA § 85001(b).

Unsurprisingly, Plaintiffs are wrong to suggest that any other tools of statutory interpretation support their argument.  Plaintiffs' analysis of the text, ECF No. 124 at 10, essentially ignores the modifier "as such regulations were in effect on" July 1, 2020.  OBBBA

---

[1] The Government respectfully disagrees with the Fifth Circuit's opinion, which was only predictive and not a "final decision on any matter necessary to the ultimate judgment" in any event. *See Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (opinion of Alito, J.).

§ 85001(b); *see N.Y. Legal Assistance Grp.*, 2026 WL 1408439, at *2 n.2.  The ordinary meaning of "in effect" is "[t]he state or fact of being operative or in force."  *Effect*, The Oxford English Dictionary (online ed. 2026), https://doi.org/10.1093/OED/7712376194.  Thus, Congress provided that the 2019 regulations are revived as they were fully operative and enforceable before the 2022 changes and before a partial vacatur order rendered them only partially operative and enforceable.[2]

Plaintiffs' analysis is inconsistent with the dictionary definitions they invoke.  The 2019 regulations would be in an "unused state[,]" ECF No. 124 at 10 (quoting *Revive*, Merriam-Webster, https://www.merriamwebster.com/dictionary/revive), if the Court were to vacate them or issue declaratory or injunctive relief precluding Defendants from enforcing or implementing them.

The APA does not authorize Plaintiffs' demanded relief—such as vacatur or declaratory and injunctive relief—that would violate OBBBA § 85001.  The principle "of statutory construction that the specific governs the general" is "particularly true" where, as in § 85001(b), Congress has "deliberately targeted specific problems with specific solutions." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citations omitted).  Congress's specific solution in OBBBA § 85001—that the 2019 regulations are restored and revived with respect to borrower defense claims against repayment of loans that first originate before July 1, 2035—undoubtedly precludes the general provisions of the APA otherwise authorizing the Court to hold unlawful and set aside agency action not incorporated by reference in a statute.

Plaintiffs' objection that Defendants are treating OBBBA "as making permanent changes to the underlying statute[,]" ECF No. 124 at 11-12, is confused.  The issue is the plain meaning of Congress's intervention in OBBBA § 85001.  *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) (A document "enacted in accordance with the bicameralism and presentment requirements of" the Constitution is "a law[.]").  Amending the Higher Education Act

---

[2] The Court should not ignore the import of the New York federal district court's vacatur order.  That order was issued after the Second Circuit's January 2024 remand to the district court for consideration of partial vacatur.  *See N.Y. Legal Assistance Grp. v. Cardona*, 2024 WL 64220, at *4 (2d Cir. Jan. 5, 2024).  Statutes "cannot be divorced from the historical framework in which they exist."  2B Sutherland Statutory Construction § 49:1 (7th ed. Nov. 2025 Update).

is unnecessary for Congress to set policy in this area for loans first originating before July 1, 2035.

Plaintiffs are wrong to assert that Congress may not establish policy by reference to a previously promulgated regulation. ECF No. 124 at 11. On the contrary, Congress may "explicitly incorporat[e] . . . references to agency regulations[.]" *Cont'l Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1454 (D.C. Cir. 1988).[3] True, Congress could have "incorporat[ed]" regulatory language "directly into statutory text." *See* ECF No. 124 at 11. But the Court is "best served by focusing on the language [that Congress] *did* employ." *See BP PLC v. Mayor & City Council of Balt.*, 593 U.S. 230, 240 (2021). Because OBBBA § 85001(b) "instead of writing out the requirements of" the 2019 regulations "referred specifically to" and incorporated them—declaring them restored as they were in effect on July 1, 2020—the statute has "the same effect as if it itself contained the words." *See Interstate Consol. St. Ry. Co. v. Massachusetts*, 207 U.S. 79, 84-85 (1907) (opinion of Holmes, J.). Congress "in effect cuts and pastes the referenced" document. *See Brown v. United States*, 602 U.S. 101, 116 (2024) (citation omitted).[4]

That the referenced document is a regulation is irrelevant. As long as "the document [is] identified" by Congress, "it [does] not matter what its own nature or effect might be, as the force given to it by reference and incorporation [is] derived wholly from the" statute. *See Interstate Consol. St. Ry.*, 207 U.S. at 84-85 (opinion of Holmes, J.).

Lacking a sufficient textual argument, Plaintiffs resort to legislative history. ECF No. 124 at 11-12. But it favors the Second Circuit's interpretation. The house bill had stated:

Prohibition—The Secretary of Education may not implement any rule, regulation,

---

[3] *See also e.g., New York v. EPA*, 413 F.3d 3, 19 (D.C. Cir. 2005) (citing An Act to amend the Clean Air Act, and for other purposes, Pub. L. No. 95-95, § 129(a)(1), 91 Stat. 685, 745 (1977)); *Am. Ass'n of Nurse Pracs. v. McMahon*, --- F. Supp. 3d ---, 2026 WL 1826176, at *1 (D.D.C. June 24, 2026) (citing Congress's incorporation by reference in OBBBA of 34 C.F.R. § 668.2 "as in effect on July 4, 2025").

[4] It is unsurprising that Congress chose incorporation by reference, given that the regulations that were in effect on July 1, 2020, provide a complex framework for analyzing borrower defense claims that works in concert with regulations originally promulgated in 1994 and 2016 depending on the disbursement date of the loan at issue. *See* 34 C.F.R. § 685.206(c)-(e) (2020).

4

policy, or executive action *specified in this section* (or a substantially similar rule, regulation, policy, or executive action) unless authority for such implementation is explicitly provided in an Act of Congress.

H.R. 1, 119th Cong. § 30051(e) (2025) (as engrossed by the House, May 22, 2025) (emphasis added). And one set of regulations that was specified in subsection (d) of said § 30051 of the bill was the 2019 regulations. *See id*. § 30051(d). Subsection (d) largely mirrored the language in the final OBBBA § 85001(b), restoring and reviving the 2019 regulations "as such regulations were in effect on" July 1, 2020, but without limitation to loans first originating before July 2035. *Id*. Under Plaintiffs' reading, the language of subsection (d) does not compel or authorize the Department to implement the policy in the 2019 regulations because it does not "mak[e] permanent changes to the underlying statute[,]" ECF No. 124 at 12, presumably referring to the Higher Education Act. But that reading is in direct conflict with subsection (e), which would have *prohibited* the Department from implementing any rule specified in the section—including the 2019 regulations specified in subsection (d). Only if subsection (d)—now essentially the final statutory language—is understood as itself providing express authority for the 2019 regulations can subsection (e) be given a sensible meaning: the 2022 regulations specified in subsection (c) could not be implemented absent further express authorization from Congress like that expressly provided in subsection (d) or in OBBBA § 85001(b).

Plaintiffs' legislative history narrative—that OBBBA § 85001(a) merely delayed the 2022 regulations because the Byrd Rule precluded their repeal outright, ECF No. 124 at 11-12—does not help their arguments. First, the statute Congress enacted—not the putative reason for why it was enacted—is what counts. *See FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 146 S. Ct. 1546, 1557 (2026) ("[W]e are governed by laws, not by the intentions of legislators." (citation omitted)). Plaintiffs' theory "depends on the fictional premise that hundreds of legislators (not to mention the President) shared a unified private view of how the statute should apply in a contested circumstance." *Id*. In any event, their theory purports to explain only § 85001(a); it has nothing to say about the provision reviving the 2019 regulations as they were in effect prior to the New York district court's vacatur, § 85001(b). On the contrary, the best reading of both the House

5

Bill § 30051(d) and OBBBA § 85001(b) is that they reflect considered judgment about what policy should govern in this area, at least for the foreseeable future. *See supra* at pp. 2-5.

Plaintiffs' last putative "structural" argument is hard to follow. ECF No. 124 at 12. The OBBBA provides that the 2019 regulations are restored, revived, and in effect to address loans that first originate before July 2035. Take, for example, the limitations period provision. *Id*. If a loan first originated before 2035, a borrower "defense to repayment" of that loan "under this paragraph (e)" must be raised "within 3 years from the date the student is no longer enrolled[,]" *see* 34 C.F.R. § 685.206(e)(6), because this provision is "restored and revived as such regulations were in effect" in July 2020 for those loans, *see* OBBBA § 85001(b).  In contrast—unless the Department or Congress make further changes in the interim—a borrower defense to repayment for any loan that first originates on or after July 1, 2035, will not be subject to the limitations period because OBBBA § 85001 is silent as to those loans; the statute does not preclude the Department's enforcement of any superseding regulations. Plaintiffs' arguments about the future repeal of "provisions of the 2019 Rule[,]" ECF No. 124 at 12, is thus confused. OBBBA merely intervenes to provide that the referenced 2019 regulations are in effect with respect to loans that first originate before July 1, 2035. The "legal force of an incorporated reference derives from the statute making the reference, not from the document being incorporated." *Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund v. PBGC*, 136 F.4th 26, 30 (2d Cir. 2025).

## II.   The Court Should Dismiss Plaintiffs' Claims Against the 2022 Regulations.

Plaintiffs' challenge to the 2022 regulations should be dismissed. The OBBBA does not require a mootness analysis;[5] the statute predates the Amended Complaint and underscores what was true when the Amended Complaint was filed: that Plaintiffs fail to plausibly allege imminent enforcement of the 2022 regulatory provisions and that the regulations are ripe for review.

Plaintiffs are wrong to argue that the Court should disregard the facts as they exist when

---

[5] Defendants decline to address mootness arguments raised in opposition to a motion that did not invoke mootness as grounds for dismissal. ECF No. 124 at 17-19. Defendants do not concede argument on this issue, which is not properly before the Court.

the Amended Complaint was filed.  ECF No. 124 at 15-16.  "[J]urisdiction follows from (and only from) the operative pleading."  *Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).  "[A]mendments to pleadings [are] potentially jurisdiction-changing events.  The amended complaint becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction."  *Id*.  "[T]he new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'"  *Id*. (citation omitted).  The new complaint "effectively remake[s] the suit" including "its jurisdictional basis."  *Id*.[6]

Thus, courts look to the operative complaint rather than the original complaint to evaluate standing if the original complaint has been superseded.  For example, in *Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007), events between the filing of the original complaint and an amended complaint clarified that the plaintiff no longer faced imminent enforcement sufficient to justify pre-enforcement standing.  *Id*. at 1254.  In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court looked to standing based on "the time the second amended complaint was filed" and determined that it had standing because three plaintiffs—who were not even parties at the outset of the litigation—had standing at that time.  *Id*. at 48-49, 51.  In *Walker v. Haynes*, 659 F.2d 46 (5th Cir. 1981), plaintiffs initiated litigation about their treatment as jail inmates and then filed an amended complaint when they were no longer inmates.  *Id*. at 47.  The Fifth Circuit concluded that "the plaintiffs had no standing . . . at the [time of] filing of the amended complaint[.]"  *Id*. at 48.  Other lower courts—including this Court—look to the operative complaint to determine standing if the original complaint was superseded.[7]

---

[6] *See also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985).

[7] *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-45 (9th Cir. 2015); *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003); *GAF Bldg. Materials Corp. v. Elk Corp. of Dall.*, 90 F.3d 479, 483 (Fed. Cir. 1996); *Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 692 (S.D. Tex. 2023). *G&E Real Est., Inc. v. Avison Young—Wash., DC, LLC*, 168 F. Supp. 3d 147, 158-60 (D.D.C. 2016); *Fund Tex. Choice v. Deski*, No. 1:22-cv-859, 2024 WL 5355826, at *5-6 (W.D. Tex. Oct. 29, 2024) (Pitman, J.); *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-cv-2437, 2013 WL 4052411, *3 at n.4 (N.D. Tex. Aug. 12, 2013).

Insofar as the Court analyzes this issue through the lens of the more stringent ripeness doctrine, the import of amendment is irrelevant.  Ripeness is governed by "the situation now rather than the situation" at any earlier time.  *Anderson v. Green*, 513 U.S. 557, 559 (1995) (citation omitted); *Gas Transmission Nw., LLC v. FERC*, 157 F4th 674, 697 (5th Cir. 2025); ("Even if a case was ripe when filed," intervening events are considered.); *Walmart v. DOJ*, 21 F.4th 300, 313 & n.15 (5th Cir. 2021) (considering "standpoint of the present" despite "enforcement" being "impending" when "case was filed"); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 n.2 (5th Cir. 1987).[8]

Properly analyzed, Plaintiffs' opposition effectively concedes that the Amended Complaint includes no allegations satisfying ripeness or pre-enforcement standing doctrine.  Plaintiffs' only substantive argument is that their members must change their conduct now because it "will eventually be evaluated against the 2022 Rule's standards" based on speculation that "the 2022 Rule will apply to any loan consolidated after" June 30, 2035, "even if the loan was originally disbursed before 2035."  ECF No. 124 at 19.  This theory fails for several reasons.

*First*, it suffers from the "legally fatal problem" that it first appears in a brief; the Amended Complaint "does not include such claims."  *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 738 (1998); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (operative complaint must clearly allege the facts supporting theory of standing).  In fact, Plaintiffs allege the opposite— that "[e]ach participating member school is required to conform" with the "substantive provisions of the 2022" regulations "*by 2035*"—not by any time before 2035.  Am. Compl. ¶ 33 (emphasis added).  These allegations are "judicial admissions *conclusively* binding on the part[ies] that made

---

[8] Unable to articulate any serious ripeness argument, Plaintiffs assert that the Court "need not consider" the issue.  ECF No. 124 at 17 n.4.  Not so.  Defendants invoked "traditional equitable or 'prudential'" ripeness, ECF No. 123 at 14, which in any event is considered on a Court's "own motion."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Moreover, the APA articulates a clear "duty to dismiss any action or deny relief on any" "appropriate legal or equitable ground[,]" 5 U.S.C. § 702(1), including equitable or prudential ripeness, *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 & n.1 (D.C. Cir. 1999).  The Court has a virtually unflagging obligation to enforce such a statutory duty.  Even outside of APA cases, the Fifth Circuit "continue[s] to recognize the doctrine."  *Umphress v. Hall*, 133 F.4th 455, 468 (5th Cir. 2025).

them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (citation omitted).

*Second*, Plaintiffs' theory is premised on impermissible speculation about future conduct by policymakers—that neither Congress nor the Department will supersede the 2022 regulations before they govern loans that first originate after June 30, 2035. Plaintiffs do not dispute that their allegations raise doubts that the 2022 regulations will ever be applied to any loans. Defs.' Mot. to Dismiss the Am. Compl. at 16-17, ECF No. 123; ECF No. 124. Contrary to Plaintiffs' suggestions, ECF No. 124 at 19, their members may not create pre-enforcement standing, let alone establish ripeness, by incurring preparatory costs now that are based on a fear of future enforcement after 2035 that is not imminent. *California v. Texas*, 593 U.S. 659, 669-70 (2021); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).[9] In the speculative possibility that the 2022 regulations are not superseded, Plaintiffs will "have ample opportunity later to bring [their] legal challenge at a time when harm is more imminent and more certain." *Ohio Forestry*, 523 U.S. at 734.

*Third*, "[l]egal theories not accepted or pursued by the government cannot create . . . ripeness." *Walmart*, 21 F.4th at 313. And—absent any formalized agency statement addressing the issue—it is "speculative to assume" that the Department will construe OBBBA § 85001(b) not to govern loans that first originate before July 1, 2035, and are subsequently refinanced into a mixed consolidation loan after 2035.[10] *See Harrell v. The Fla. Bar*, 608 F.3d 1241, 1263 (11th Cir. 2010); 5 U.S.C. § 551(4). Plaintiffs have "within [their] grasp an easy means for" seeking such an agency statement. *See Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). Plaintiffs that do not "avail themselves of [such] administrative

---

[9] If it were otherwise, the *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) plaintiff could have avoided the need to show a real and immediate threat of being subjected to the challenged police chokehold procedure by planning to move outside of Los Angeles and claiming that the imminent injury of his moving costs were fairly traceable to a non-irrational fear of the challenged police chokehold policy—a procedure to which he, after all, had already been subjected.

[10] The 2019 regulations govern claims to a borrower defense to repayment "with respect to loans that *first originate* before July 1, 2035[.]" OBBBA § 85001 (emphasis added). Plaintiffs do not articulate how refinancing a loan that first originates before July 1, 2035 renders OBBBA § 85001(b) inapplicable to the Department's consideration of a defense to repayment of the loan.

9

procedures for obtaining a formal[ized]" agency action regarding an issue cannot satisfy ripeness by asserting a particular statutory construction. *See Harrell*, 608 F.3d at 1263.

*Fourth*, Plaintiffs' theory is premised on the Department's exercise of enforcement discretion in a manner it has renounced. Accepting Plaintiffs' speculation that the Department may, after 2035, invoke the 2022 regulations to discharge debt premised on loans that first originate now and are subsequently refinanced into mixed consolidation loans, that affects only the financial relationship between the borrower and the Department. Plaintiffs' members will be unaffected unless the Department subsequently exercises "discretion to initiate a separate proceeding against [a member] school for recoupment[,]" *Sweet v. Cardona*, 121 F.4th 32, 46 (9th Cir. 2024), even if the claim would not have been approved under OBBBA § 85001(b)'s standards. But Plaintiffs may not assert such a theory absent allegations that their members "face [such a] credible threat of enforcement." *Neese v. Becerra*, 123 F.4th 751, 754 (5th Cir. 2024).

Not only does the Amended Complaint entirely fail to allege such a "history of past enforcement" in any similar circumstance, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014), but the preamble statements that Plaintiffs invoke entirely undermine any such threat. *See* ECF No. 124 at 19 (citing 87 Fed. Reg. 65,905, 65,915-16 (Nov. 1, 2022)). The preamble statements are clear: "Institutions will only be subject to recoupment actions for claims that would be approved under the standard in place at the time the act or omission occurred." 87 Fed. Reg. at 65,915. And insofar as Plaintiffs' members are changing conduct now based only on abstract reputational interests associated with the basis of the Department's speculative post-2035 changes to the financial relationship between itself and third party borrowers, those are not the type of "serious penalties[,]" *see Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967), such as "criminal and civil" sanctions, *see Nat'l Park Hosp. Ass'n*, 538 U.S. at 810, that "traditionally would have qualified as harm" justifying pre-enforcement review under equitable or prudential principles, *see Ohio Forestry*, 523 U.S. at 733; *see also Sweet*, 121 F.4th at 45-47.

## CONCLUSION

For the reasons stated herein, the Court should dismiss this action.

10

Dated: August 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

 */s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 514-4964
Facsimile: (202) 616-8470
E-mail: liam.c.holland@usdoj.gov

*Counsel for Defendants*